**No. 15-12831**

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

CHARLES L. HILL, JR.,

Plaintiff-Appellee,

v.

SECURITIES AND EXCHANGE
COMMISSION,

Defendant-Appellant.

On Appeal from the United States District Court
for the Northern District of Georgia

## DEFENDANT-APPELLANT'S MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

BENJAMIN C. MIZER
  *Principal Deputy Assistant Attorney General*

JOHN A. HORN
  *Acting United States Attorney*

BETH S. BRINKMANN
  *Deputy Assistant Attorney General*

MARK B. STERN
MARK R. FREEMAN
MEGAN BARBERO
  *(202) 532-4631*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7226*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to 11th Cir. R. 26.1-1, the undersigned counsel certifies that, to the best of our knowledge, the following persons and entities may have an interest in the outcome of this case:

Barbero, Megan

Berns, Matthew J.

Brinkmann, Beth S.

Desai, Akash

Freeman, Mark R.

Grogg, Adam

Hartnett, Kathleen R.

Hill, Charles L., Jr.

Horn, John Andrew

Hudson, Stephen E.

Kilpatrick Townsend & Stockton, LLP

Lin, Jean

May, Leigh Martin, U.S. District Judge

Mizer, Benjamin C.

Myers, Steven A.

Ricketts, Jennifer

Rightler, Hillary D.

Sandberg, Justin M.

Securities And Exchange Commission

Sommerfeld, Lawrence R.

Stern, Mark B.

*s/ Megan Barbero*

MEGAN BARBERO

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

STATEMENT .........................................................................................................2

    A.    The Appointments Clause ...................................................................2

    B.    Statutory Background .........................................................................2

    C.    Prior Proceedings ...............................................................................4

ARGUMENT ..........................................................................................................6

THIS COURT SHOULD STAY THE PRELIMINARY INJUNCTION PENDING
APPEAL ................................................................................................................6

    A.    The District Court Lacks Jurisdiction Over SEC Administrative
           Proceedings, Which Are Subject To Direct Review In The Court
           of Appeals ..........................................................................................6

    B.    The SEC ALJs Are Employees, Not Inferior Officers............................13

    C.    The Balance of Harms and Public Interest Strongly Militate In
           Favor of A Stay ................................................................................16

CONCLUSION ..................................................................................................... 20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF CITATIONS

**Cases:** **Page(s)**

*Air Line Pilots Ass'n, Intl. v. Civil Aeronautics Bd.*,
  750 F.2d 81 (D.C. Cir. 1984) ........................................................... 9, 10

*Altman v. SEC*,
  687 F.3d 44 (2d Cir. 2012) (per curiam) ................................... 10, 11

*American Gen. Ins. Co. v. FTC*,
  496 F.2d 197 (5th Cir. 1974) ..............................................................9

*Bebo v. SEC*,
  No. 15-00003, 2015 WL 905349 (E.D. Wis. Mar. 3, 2015) .........................................11

*Bonner v. City of Prichard*,
  661 F.2d 1206 (11th Cir. 1981) (en banc) ........................................9

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ........................................................................... 2, 13

*Chau v. SEC*,
  __ F. Supp. 3d __, No. 14-CV-1903, 2014 WL 6984236
  (S.D.N.Y. Dec. 11, 2014) ..................................................................11

*Deaver v. Seymour*,
  822 F.2d 66 (D.C. Cir. 1987) ..........................................................17

*Doe v. FAA*,
  432 F.3d 1259 (11th Cir. 2005) .........................................................8

*Duka v. SEC*,
  No. 15 Civ. 357, 2015 WL 1943245 (S.D.N.Y. Apr. 15, 2015) ...................................11

*Elgin v. Department of Treasury*,
  132 S. Ct. 2126 (2012) .......................................................1, 7, 8, 17

_____
* Authorities upon which we chiefly rely are marked with an asterisk.

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*,
  561 U.S. 477 (2010) .............................................................................7, 11, 12

*Freytag v. Comm'r of Internal Revenue*,
  501 U.S. 868 (1991) .................................................................................. 6, 15

*Frito-Lay, Inc. v. FTC*,
  380 F.2d 8 (5th Cir. 1967) ........................................................................ 8, 9

*\*FTC v. Standard Oil Co.*,
  449 U.S. 232 (1980) ...........................................................................2, 16, 17

*George Kabeller, Inc. v. Busey*,
  999 F.2d 1417 (11th Cir. 1993) (per curiam) ................................................9

*Imperial Carpet Mills, Inc. v. Consumer Prod. Safety Comm'n*,
  634 F.2d 871 (5th Cir. 1981) (per curiam) .................................................16

*In re al-Nashiri*,
  No. 14-1203, 2015 WL 3851966 (D.C. Cir. June 23, 2015) .........................16

*INS v. Legalization Assistance Project*,
  510 U.S. 1301 (1993) ....................................................................................20

*Jarkesy v. SEC*,
  48 F. Supp. 3d 32 (D.D.C. 2014) ................................................................10

*LabMD v. FTC*,
  776 F.3d 1275 (11th Cir. 2015).....................................................................8

*\*Landry v. FDIC*,
  204 F.3d 1125 (D.C. Cir. 2000) ...................................................1, 6, 14, 15

*Public Utility Commissioner of Oregon v. Bonneville Power Administration*,
  767 F.2d 622 (9th Cir. 1985) .........................................................................9

*Ramspeck v. Fed. Trial Exam'rs Conf.*,
  345 U.S. 128 (1953) ............................................................................. 15, 16

*Schweiker v. McClure,*
　452 U.S. 1301 (1981) ...............................................................................20

*SEC v. R.A. Holman & Co.,*
　323 F.2d 284 (D.C. Cir. 1963) ...............................................................10

*Siegel v. LePore,*
　234 F. 3d 1163 (11th Cir. 2000) (en banc) (per curiam) ..............................17

*Spring Hill Capital Partners, LLC v. SEC,*
　Dkt. 23, No. 15-cv-4542 (S.D.N.Y June 29, 2015) ......................................11

*Telecommunications Research & Action Ctr. v. FCC,*
　750 F.2d 70 (D.C. Cir. 1984) .....................................................................9

*Thunder Basin Coal Co. v. Reich,*
　510 U.S. 200 (1994) .................................................................6, 7, 8, 13

*Tilton v. SEC,*
　Dkt. 24, No. 15-CV-2472 (S.D.N.Y. June 30, 2015) ...................................11

*Weiss v. United States,*
　510 U.S. 163 (1994) ................................................................................15

## Constitution:

U.S. Const. art. II, § 2, cl. 2.............................................................................2

## Statutes:

Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010,
　Pub. L. No. 111-203, 124 Stat. 1376 (2010) ................................................3

15 U.S.C. § 77i(a) ..........................................................................................4

15 U.S.C. § 78u(d) ........................................................................................2

15 U.S.C. § 78u-1 ..........................................................................................2

15 U.S.C. § 78u-2........................................................................................ 2, 3

iv

15 U.S.C. § 78u-2(a)(2)................................................................................3

15 U.S.C. § 78u-3.............................................................................2, 3, 4

15 U.S.C. § 78y(a)(1).....................................................................4, 10

15 U.S.C. § 78y(a)(2)................................................................................4

15 U.S.C. § 78y(a)(3)................................................................................4

15 U.S.C. § 78y(a)(4)................................................................................4

15 U.S.C. § 78y(c)(2)................................................................................4

**Regulations:**

17 C.F.R. § 201.101(a)(5).....................................................................3, 14

17 C.F.R. § 201.110................................................................................3

17 C.F.R. § 201.360................................................................................3

17 C.F.R. § 201.360(a)(1).....................................................................14

17 C.F.R. § 201.360(d)................................................................................3

17 C.F.R. § 201.360(d)(2).....................................................................14

17 C.F.R. § 201.400(a).....................................................................14

17 C.F.R. § 201.410................................................................................3

17 C.F.R. § 201.411(a).....................................................................3, 14

17 C.F.R. § 201.411(f).....................................................................14

17 C.F.R. § 201.452.....................................................................3, 14

**Legislative Materials:**

S. Rep. 101-337 (1990), *reprinted in* 1990 WL 263550 (Leg. Hist.)...................................18

*The Securities Law Enforcement Remedies Act of 1989; Hearings on S. 647*
   *Before the Subcomm. on Securities of the S. Comm. on Banking, Housing,*
   *and Urban Affairs*, 101st Cong. 34, 56-7 (1990) ...............................................................18

## INTRODUCTION

Defendant-appellant, the Securities and Exchange Commission, respectfully asks this Court to stay the district court's order of June 8, 2015. A motion for a stay pending appeal was filed in district court on June 24, 2015 and is still pending.

The court preliminarily enjoined ongoing SEC administrative enforcement proceedings against plaintiff Charles R. Hill, Jr. on the theory that the Administrative Law Judge who presides over the evidentiary hearing is an "inferior officer" within the meaning of the Appointments Clause of Article II and that the agency's method of appointing ALJs is therefore unconstitutional. That ruling misconstrues Supreme Court precedent and, as the district court acknowledged, conflicts with the D.C. Circuit's decision in *Landry v. FDIC*, 204 F.3d 1125 (D.C. Cir. 2000). As a threshold matter, moreover, the district court lacked jurisdiction to enter its order. Review of the Commission's administrative proceedings is vested exclusively in the court of appeals, and a district court has no authority to pretermit the court of appeals' direct review. *See Elgin v. Department of Treasury*, 132 S. Ct. 2126 (2012).

The district court similarly erred in weighing the balance of harms and the public interest. Congress authorized the SEC to proceed by administrative enforcement proceedings—as it has chosen to do in this case—or in district court as the Commission believes appropriate, an authorization that enhances enforcement of the federal securities laws. In contrast, as the Supreme Court and this Court have held, requiring a litigant to proceed in allegedly unlawful administrative proceedings

does not constitute irreparable injury that supports injunctive relief.  *See FTC v. Standard Oil Co.*, 449 U.S. 232, 244 (1980).

Because the district court's order casts a cloud on a crucial means of enforcing the federal securities laws, we also ask that the Court expedite the briefing of this case and schedule oral argument at its earliest convenience.

## STATEMENT

### A.    The Appointments Clause

The Appointments Clause provides that the President shall appoint all "Officers of the United States," whose appointments are not otherwise provided for in the Constitution, "but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."  U.S. Const. art. II, § 2, cl. 2.  The Appointments Clause speaks exclusively to "officers," a category that includes only persons who "exercis[e] significant authority pursuant to the laws of the United States," *Buckley v. Valeo*, 424 U.S. 1, 125-26 (1976), and does not include "lesser functionaries subordinate to officers of the United States," *id.* at 126 n.162.

### B.    Statutory Background

The Securities Exchange Act of 1934 (Exchange Act) authorizes the Commission to address potential violations by filing an enforcement action in federal district court or in proceedings before the agency.  *See, e.g.*, 15 U.S.C. §§ 78u(d), 78u-1, 78u-2, 78u-3.  The statute authorizes the SEC to institute administrative cease-and-

2

desist proceedings against "any person" for violating the Exchange Act, *id.* § 78u-3, and to impose civil monetary penalties in such proceedings, *id.* § 78u-2(a)(2). Prior to enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, 124 Stat. 1376, the SEC could impose monetary penalties in administrative proceedings only against regulated entities and persons associated with such entities. Section 929P of the Dodd-Frank Act, 124 Stat. at 1863, amended 15 U.S.C. § 78u-2 to authorize the Commission to impose civil penalties against non-regulated persons and entities in cease-and-desist proceedings as well.

The SEC's Rules of Practice specify that each proceeding will be presided over by the Commission itself or, if the Commission so decides, a "hearing officer." 17 C.F.R. § 201.110. The Commission may designate an ALJ, a panel of Commissioners, an individual Commissioner, or a duly authorized person to be the hearing officer. *Id.*; *see also id.* § 201.101(a)(5). An ALJ typically has 300 days from the date on which an action is instituted to issue an "initial decision." *Id.* § 201.360. If the Commission determines to review the ALJ's initial decision the Commission engages in de novo review which may include the submission of additional evidence where appropriate. *See id.* §§ 201.410, 201.411(a), 201.452. Regardless of whether further review is sought, the Commission alone has the authority to issue the final decision of the agency in the proceeding. *See id.* § 201.360(d).

The federal securities laws provide for review in the courts of appeals of final orders of the Commission. Section 25(a)(1) of the Exchange Act provides, in relevant

part, that "[a] person aggrieved by a final order of the Commission . . . may obtain

review of the order" in the D.C. Circuit or the appropriate regional circuit by filing a

petition for review.  15 U.S.C. § 78y(a)(1).[1]  The court of appeals has exclusive

jurisdiction to "affirm or modify and enforce or to set aside the order in whole or in

part."  *Id.* § 78y(a)(3).

The appellate review provisions of Section 25(a) also prescribe a

comprehensive process for seeking such review, including:  what constitutes the

agency record, 15 U.S.C. § 78y(a)(2); the standard of review of the Commission's

factual findings, *id.* § 78y(a)(4); and the process for seeking a stay of the Commission

order either before the Commission or in the court of appeals, *id.* § 78y(c)(2).

### C.    Prior Proceedings

1.    Plaintiff Charles R. Hill, Jr. is a self- employed real estate developer.  In

2011, Hill purchased and then sold a large quantity of stock in Radiant Systems, Inc.,

making a profit of approximately $744,000.  Add. 2.[2]  The SEC investigated these

transactions for nearly two years.  *Id.*

On February 17, 2015, the SEC initiated administrative enforcement

proceedings against Hill pursuant to Section 21C of the Exchange Act, 15 U.S.C.

§ 78u-3, alleging that Hill had made these transactions on the basis of material, non-

---

[1] *See also* 15 U.S.C. § 77i(a) (Securities Act of 1933); *id.* § 80b-13(a) (Investment Advisers Act of 1940); *id.* § 80a-42(a) (Investment Company Act of 1940).

[2] References to "Add. __" refer to the addendum to this motion.

public information about another company's potential acquisition of Radiant in

violation of Section 14(e) of the Exchange Act and Rule 14e-3. *See* Add. 2-3.

Hill moved for summary disposition, asserting three constitutional arguments:

that (1) the proceedings violate Article II of the Constitution because ALJs are

protected by two layers of tenure protection; (2) the proceedings violate the non-

delegation doctrine; and (3) the proceedings violate Hill's Seventh Amendment right

to jury trial.  In a May 14 ruling, the ALJ concluded that he did not have authority to

address the second and third issues.  The ALJ expressed doubt regarding his authority

to address the Article II question but rejected that claim on the merits.  Add. 10.

2.     On May 19, Hill filed this action in district court, asking to enjoin the

administrative proceedings on the basis of the same constitutional arguments that he

had raised in the administrative proceedings.  In an amended complaint, Hill added a

claim that the ALJ's appointment violated the Appointments Clause.  Add. 11.

On June 8, the district court issued a preliminary injunction.  Add. 44-45.  The

court first held that it had jurisdiction to consider plaintiff's constitutional claims,

even though review of those claims would be available on direct review in the court of

appeals at the conclusion of the administrative proceedings.  The court declared that

by following the prescribed route, "Plaintiff could raise his constitutional arguments

only after going through the process he contends is unconstitutional[.]"  Add. 15.

Addressing the merits, the court found plaintiff's non-delegation and Seventh

Amendment contentions to be unpersuasive, but concluded that plaintiff was likely to

prevail on his Appointments Clause challenge, finding that the role of the Commission's ALJs is not meaningfully distinguishable from that played by the special trial judges of the Tax Court at issue in *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868 (1991).  *See* Add. 38-41.  In so holding, the district court expressly rejected the reasoning of the D.C. Circuit in *Landry v. FDIC*, 204 F.3d 1125, 1133 (D.C. Cir. 2000) (holding that ALJs of the FDIC are not inferior officers).  The district court did not address plaintiff's Article II removal contentions, but expressed "serious doubts" that plaintiff could prevail on this argument because "ALJs likely occupy 'quasi-judicial' or 'adjudicatory' positions, and thus these two-layer protections likely do not interfere with the President's ability to perform his duties."  Add. 42 n.12.

The court preliminarily enjoined the SEC "from conducting the administrative proceeding brought against Plaintiff . . . including the hearing scheduled for June 15, 2015, before an Administrative Law Judge who has not been appointed by the head of the Department."  Add. 44.

## ARGUMENT

### THIS COURT SHOULD STAY THE PRELIMINARY INJUNCTION PENDING APPEAL

#### A.    The District Court Lacks Jurisdiction Over SEC Administrative Proceedings, Which Are Subject To Direct Review In The Court of Appeals

When a statute provides for direct appellate review "of final agency actions, we shall find that Congress has allocated initial review to an administrative body where such intent is 'fairly discernible in the statutory scheme.'"  *Thunder Basin Coal Co. v.*

6

*Reich,* 510 U.S. 200, 207 (1994) (citation omitted). "Whether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review." *Id.* (citation omitted); *see Elgin v. Department of Treasury,* 132 S. Ct. 2126, 2132-33 (2012) ("[T]he appropriate inquiry is whether it is 'fairly discernible' from [the statute] that Congress intended covered employees . . . to proceed exclusively through the statutory review scheme, even in cases in which the employees raise constitutional challenges to federal statutes."); *Free Enter. Fund v. Public Co. Accounting Oversight Bd.,* 561 U.S. 477, 489 (2010) (statutory review provisions are exclusive if "the 'statutory scheme' displays a 'fairly discernible' intent to limit jurisdiction, and the claims at issue 'are of the type Congress intended to be reviewed within th[e] statutory structure'") (alteration in original)).

In *Thunder Basin,* for example, the Supreme Court held that a district court lacked authority to enjoin enforcement proceedings of the Mine Safety and Health Administration. The Court explained that the comprehensive review structure established by the statute, which called for direct review of final action in the court of appeals, implicitly "demonstrate[d] that Congress intended to preclude challenges" prior to the completion of agency proceedings. 510 U.S. at 208. That preclusion, the Court held, extended to review of constitutional claims. *Id.* at 215. The Court reasoned that the Mine Act provided a "detailed structure," *id.* at 207, for review of enforcement actions and that, even if the petitioner's constitutional claim could not be

addressed by the agency in the first instance, it could be "meaningfully addressed in the Court of Appeals," *id.* at 215. Similarly, in *Elgin*, the Supreme Court held that the district court lacked jurisdiction over petitioners' constitutional challenges to various agencies' employment decisions based on petitioners' failure to register for the selective service. Holding that the review scheme of the Civil Service Reform Act was exclusive, the Court rejected the view of dissenting Justices that would have "carve[d] out for district court adjudication only facial constitutional challenges to statutes," *Elgin*, 132 S. Ct. at 2135, holding that the district court lacked jurisdiction over both facial and as-applied challenges, *id.*

Thus, as this Court has explained, in general, "all constitutional claims must be funneled through the direct-appeal process after a final agency action if that is the scheme created by Congress." *LabMD v. FTC*, 776 F.3d 1275, 1279 (11th Cir. 2015) (citing *Doe v. FAA,* 432 F.3d 1259, 1262-63 (11th Cir. 2005)). Applying this principle, the Court in *LabMD* held that a district court could not exercise jurisdiction over a claim that administrative proceedings had been instituted in retaliation for protected speech in violation of the First Amendment. *See also Frito-Lay, Inc. v. FTC*, 380 F.2d 8, 10 (5th Cir. 1967) ("[a]ll constitutional, jurisdictional, substantive, and procedural issues arising in Commission proceedings may be considered" on review of final agency decision "and this statutory right to review has long been viewed as

constituting a speedy and adequate remedy at law");[3] *American Gen. Ins. Co. v. FTC,* 496 F.2d 197, 199 (5th Cir. 1974) (affirming dismissal of action seeking to enjoin FTC proceeding on the ground that the agency was acting outside its authority).

These holdings are buttressed by the rule that "[w]here a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to *exclusive* review of the Court of Appeals." *George Kabeller, Inc. v. Busey,* 999 F.2d 1417, 1420 (11th Cir. 1993) (per curiam) (quoting *Telecommunications Research & Action Ctr. ("TRAC") v. FCC,* 750 F.2d 70, 75 (D.C. Cir. 1984)). Relying on the *TRAC* analysis, the Ninth Circuit in *Public Utility Commissioner of Oregon v. Bonneville Power Administration,* 767 F.2d 622 (9th Cir. 1985) (Kennedy, J.), held that a district court lacked jurisdiction to consider a constitutional challenge to an agency proceeding based on the asserted bias of the agency decision maker. The court explained that because "disposition of petitioners' claim of bias could affect our future statutory review authority, we have exclusive jurisdiction to consider it." *Id.* at 627. The Ninth Circuit determined it would consider the challenge to the fairness of the proceeding only on review of final action, noting that doing so would "avoid the disruption, delay, and piecemeal review that accompany interference with pending administrative proceedings." *Id.* at 629. The D.C. Circuit reached the same conclusion in *Air Line Pilots Ass'n, International v. Civil*

---

[3] Fifth Circuit decisions before October 1, 1981, are binding precedent of this Court. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209-10 (11th Cir. 1981) (en banc).

*Aeronautics Board*, 750 F.2d 81 (D.C. Cir. 1984), and declined to exercise its own

mandamus authority to address a claim of agency bias, observing that "[t]o stay the

administrative processes while a court was engaged in an extended inquiry into the

claimed disqualification of members of the administrative body could lead to a

breakdown in the administrative process which has long been criticized for its slow

pace." *Id.* at 88 (quoting *SEC v. R.A. Holman & Co.*, 323 F.2d 284, 287 (D.C. Cir.

1963)).

The Exchange Act's comprehensive scheme for administrative and judicial

review is "virtually identical" to that in *Thunder Basin*, entailing a four-step process in

which "(1) charges are brought by the SEC's Enforcement Division before an ALJ;

(2) the plaintiffs have the opportunity to be heard and present evidence challenging

the charges; (3) the plaintiffs may appeal an adverse ALJ decision to the SEC

Commissioners; and (4) if the plaintiffs are aggrieved by the resulting final order, the

plaintiffs may appeal to a federal Court of Appeals." *Jarkesy v. SEC*, 48 F. Supp. 3d

32, 37-38 (D.D.C. 2014) (citing 15 U.S.C. §§ 78u–3, 78y(a)(1)), *appeal pending*, No. 14-

5196 (D.C. Cir.). Accordingly, the Second Circuit concluded in *Altman v. SEC*, 687

F.3d 44 (2d Cir. 2012) (per curiam) that the Exchange Act's comprehensive review

scheme precluded district court review of plaintiff's claims that an SEC administrative

proceeding violated due process and equal protection and that the Commission acted

beyond its constitutional and statutory authority.  *Id.* at 45-46.[4]

The district court erred in likening the circumstances of this case to those in *Free Enterprise Fund,* in which the Supreme Court considered whether Section 78y foreclosed review of an Article II challenge to the Accounting Board.  Unlike plaintiff in this case, the petitioner in *Free Enterprise Fund* was subject to the general regulatory authority of the Accounting Board, yet was *not* subject to an ongoing enforcement proceeding.  In those circumstances, the Court concluded that "[w]e do not see how petitioners could meaningfully pursue their constitutional claims."  561 U.S. at 490. The Court noted that "Section 78y provides only for judicial review of *Commission* action, and not every Board action is encapsulated in a final Commission order or rule," and rejected the contention that meaningful judicial review was available merely because petitioners could have challenged the Board's "auditing standards, registration requirements, or other rules."  *Id.* (internal quotation marks omitted).  The Court

---

[4] *See also, e.g.*, *Spring Hill Capital Partners, LLC, et al. v. SEC*, Dkt. 23, No. 15-cv-4542 (S.D.N.Y June 29, 2015) (no district court jurisdiction to hear Appointments Clause challenge); *Tilton v. SEC*, Dkt. 24, No. 15-CV-2472 (S.D.N.Y. June 30, 2015) (same); *Bebo v. SEC*, No. 15-00003, 2015 WL 905349 (E.D. Wis. Mar. 3, 2015), *appeal pending*, No. 15-1511 (7th Cir.) (no district court jurisdiction to hear Article II, equal protection or due process challenges to Section 25(a) proceeding); *Chau v. SEC*, __ F. Supp. 3d __, No. 14-CV-1903, 2014 WL 6984236, at *6 (S.D.N.Y. Dec. 11, 2014) (Exchange Act's comprehensive review scheme precluded suit to enjoin administrative proceedings on due process and equal protection grounds), *appeal pending*, No. 15-461 (2d Cir.).  *But see, e.g.*, *Duka v. SEC*, No. 15 Civ. 357, 2015 WL 1943245 (S.D.N.Y. Apr. 15, 2015) (finding jurisdiction to consider separation of powers challenge to SEC administrative enforcement proceeding but holding that plaintiff failed to demonstrate a likelihood of success on the merits).

reasoned that these would effectively be trumped-up suits because petitioners did not object to the Board's auditing standards. Petitioners thus presented "a general challenge to the Board [that was] 'collateral' to any Commission orders or rules from which review might be sought." *Id.* The Court added that "[r]equiring petitioners to select and challenge a Board rule at random" would be "an odd procedure for Congress to choose," and would be especially odd "because only *new* rules, and not existing ones, are subject to challenge." *Id.*

The Supreme Court likewise rejected the argument that meaningful judicial review existed because petitioners could incur a sanction and then seek judicial review. The Court explained that "[w]e normally do not require plaintiffs to 'bet the farm . . . by taking the violative action' before 'testing the validity of the law,'" adding that "we do not consider this a 'meaningful' avenue of relief." *Free Enter. Fund*, 561 U.S. at 490-91 (omission in original).

In this case, Hill need not challenge a "random" rule or "bet the farm" by violating the law. Nor does Hill object to the *existence* of the Commission. He argues only that the proceeding to which he is subject is defective on various constitutional grounds. A claim that a hearing officer cannot constitutionally preside over an administrative proceeding because he was not properly appointed, like a claim that an officer is impermissibly biased or that an agency is bringing claims outside its statutory authority, arises precisely because there *is* an administrative proceeding. Such a claim can and should be presented to the Commission and ultimately to the court of

12

appeals, rather than in a collateral attack. Judicial review through this scheme is just as meaningful in reviewing a claim of improper appointment as in reviewing a claim of bias or First Amendment retaliation.

The district court also fundamentally erred in concluding that it could properly assert jurisdiction because the SEC was authorized to file suit in district court. Add. 13-14. The point of Section 929P of the Dodd-Frank Act is to further empower the SEC to proceed administratively. If it elects to proceed administratively, review of the Commission's actions is vested in the court of appeals. A district court may not interfere with this Court's jurisdiction by creating a bifurcated system of review.[5]

## B.    The SEC ALJs Are Employees, Not Inferior Officers

Inferior officers are persons who "exercis[e] significant authority pursuant to the laws of the United States," *Buckley v. Valeo*, 424 U.S. 1, 125-26 (1976), a category that does not include "lesser functionaries subordinate to officers of the United States," *id.* at 126 n.162. The Commission's ALJs are plainly "lesser functionaries subordinate to officers of the United States."

The Commission employs ALJs in its discretion, and all final agency determinations are those of the Commission, not of its ALJs. Congress has not required the SEC to use its ALJs to conduct its administrative proceedings, and SEC

---

[5] *Thunder Basin* underscores the district court's error. The Mine Act "expressly . . . empower[ed] the *Secretary* . . . to coerce payment of civil penalties" by filing actions in district court but offered regulated entities "no corresponding right." 510 U.S. at 209.

regulations provide that a "[h]earing officer" can be an ALJ, a panel of Commissioners, an individual Commissioner, or any other person duly authorized to preside at a hearing. 17 C.F.R. § 201.101(a)(5). If the Commission elects to use an ALJ, it may at any time during the administrative process "direct that any matter be submitted to it for review." *Id.* § 201.400(a). An ALJ serving as a hearing officer prepares only an "initial decision." *Id.* § 201.360(a)(1). If no further review is sought or otherwise ordered by the Commission, then the Commission issues an order of finality, specifying the date on which sanctions, if any, take effect. *Id.* § 201.360(d)(2).

Commission review of the ALJ's initial decision is de novo. The Commission "may affirm, reverse, modify, [or] set aside" the initial decision, "in whole or in part," and it "may make any findings or conclusions that in its judgment are proper and on the basis of the record." 17 C.F.R. § 201.411(a). The Commission may also "remand for further proceedings," *id.*, "remand . . . for the taking of additional evidence," or "hear additional evidence" itself, *id.* § 201.452. And if "a majority of participating Commissioners do not agree to a disposition on the merits," the ALJ's "initial decision shall be of no effect." *Id.* § 201.411(f).

For these reasons, the D.C. Circuit's conclusion with respect to ALJs of the Federal Deposit Insurance Corporation applies equally here: the Commission's ALJs are not constitutional officers but employees, whose appointments do not implicate Article II, because they "can never render the decision of the [agency]." *Landry v. FDIC*, 204 F.3d 1125, 1133 (D.C. Cir. 2000).

14

The district court expressly disagreed with the D.C. Circuit, concluding that

*Landry* misunderstood the Supreme Court's decision in *Freytag v. Commissioner*, 501 U.S.

868 (1991), which held that the special trial judges of the Tax Court were inferior

officers. *Id.* at 880-82. Unlike the SEC's ALJs, however, the special trial judges were

able to issue final decisions in certain categories of cases—a fact that "was critical to

the [*Freytag*] Court's decision" that they were inferior officers. *Landry*, 204 F.3d at

1134; *see also Freytag*, 501 U.S. at 882 (noting that IRS Commissioner had conceded

that special trial judges "act as inferior officers"). And, in contrast to the special trial

judges of the Tax Court, the SEC's ALJs do not exercise "a portion of the judicial

power of the United States" pursuant to statute. *Freytag*, 501 U.S. at 891.

If doubt existed as to the ALJs' status, the Court would also properly consider

Congress's own assessment of its statutory creations. *See Weiss v. United States*, 510

U.S. 163, 194 (1994) (Souter, J., concurring) (explaining that "in the presence of

doubt" regarding constitutional officer status "deference to the political branches'

judgment is appropriate"). When Congress, in enacting the APA in 1946, created the

modern ALJ, it "separat[ed] adjudicatory functions and personnel from investigative

and prosecution personnel in the agencies," by placing hearing examiners under the

jurisdiction of the Civil Service Commission in a merit-based civil service system for

federal employees, and by vesting the Civil Service Commission with control of the

ALJs' compensation, promotion, and tenure. *Ramspeck v. Fed. Trial Exam'rs Conf.*, 345

U.S. 128, 131-32 (1953). In enacting these measures, Congress gave no indication that

it meant to elevate ALJs' status above that of the investigative and prosecution

personnel of the agency.  To the contrary, Congress explicitly "retained the examiners

as classified Civil Service employees."  *Id.* at 133.

### C.    The Balance of Harms and Public Interest Strongly Militate In Favor of A Stay

In holding that district courts lack jurisdiction to enjoin agency proceeding

subject to direct review in the courts of appeals, the Supreme Court and this Court

have repeatedly emphasized that being required to participate in allegedly improper

agency proceedings does not constitute cognizable irreparable injury.  The Supreme

Court has made clear that "[m]ere litigation expense, even substantial and

unrecoupable cost, does not constitute irreparable injury."  *FTC v. Standard Oil Co.*,

449 U.S. 232, 244 (1980) (internal quotation marks omitted) (refusing to enjoin

enforcement action allegedly inspired by political pressure); *Imperial Carpet Mills, Inc. v.*

*Consumer Prods. Safety Comm'n*, 634 F.2d 871, 874 (5th Cir. 1981) (per curiam) (holding

that "the burden of defending against the complaint; the expense of complying with

the Commission's anticipated final order; the resulting bad publicity; and the potential

for a dangerous loss of credit" do not justify intervention into agency action).  Equally

clearly, that an ALJ's appointment is challenged on constitutional grounds does not

render a litigant's appearance in the proceeding an irreparable injury.  *See In re al-*

*Nashiri*, __ F.3d__, No. 14-1203, 2015 WL 3851966, at *7 (D.C. Cir. June 23, 2015)

(trial before judges of the Court of Military Commission Review allegedly appointed

in violation of the appointments clause and separation-of-powers does not cause irreparable harm); *Siegel v. LePore*, 234 F.3d 1163, 1177-78 (11th Cir. 2000) (en banc) (per curiam) (rejecting proposition that a "violation of constitutional rights always constitutes irreparable harm").[6]

Failing to heed this guidance, the district court concluded that Hill would be irreparably harmed because, at the conclusion of the administrative process, his "claims would be moot and his remedies foreclosed because the Court of Appeals cannot enjoin a proceeding which has already occurred." Add. 15. By that reasoning, every litigant who challenges the lawfulness of an agency proceeding would demonstrate irreparable harm that might support an injunction. The Supreme Court and this Court have established that this is not the law.[7]

The district court similarly erred in giving short shrift to the impact of its order on the enforcement scheme created by Congress. In creating authority for administrative cease-and-desist proceedings in 1990, Congress recognized the

---

[6] *Cf. Deaver v. Seymour*, 822 F.2d 66, 70-71 (D.C. Cir. 1987) (holding that district court lacked jurisdiction to enjoin independent counsel and rejecting argument that any violation of plaintiff's rights could not be remedied).

[7] The Supreme Court in *Standard Oil* also noted that the possibility that the "alleged unlawfulness" of agency proceedings would be "'insulated' from review" if the plaintiff prevailed in the agency, "warrants the requirement that [plaintiff] pursue adjudication, not shortcut it." 449 U.S. at 244 n.11 (explaining that "one of the principal reasons to await the termination of agency proceedings is to obviate all occasion for judicial review" (internal quotation marks omitted)); *see also Elgin*, 132 S. Ct. at 2140 (noting that an agency disposition in favor of petitioner on non-constitutional grounds would avoid the need to reach his constitutional claims).

17

importance of "enabl[ing] the SEC to move quickly in administrative proceedings, particularly in those situations where investor funds are at risk." S. Rep. 101-337 (1990), *reprinted in* 1990 WL 263550 (Leg. Hist.); *The Securities Law Enforcement Remedies Act of 1989; Hearings on S. 647 Before the Subcomm. on Securities of the S. Comm. on Banking, Housing, and Urban Affairs*, 101st Cong. 34, 56-7 (1990) (statement of Richard C. Breeden, Chairman, Securities and Exchange Commission) (explaining the need for "a more streamlined administrative procedure," which is "important because of the significant delays that the Commission often faces in seeking a judicial remedy"— delays that "frustrate[]" "many enforcement objectives"). Congress's creation of these proceedings in 1990 and expansion of them in Dodd-Frank reflected a significant concern regarding the public interest in the administration of the securities laws.

The declaration of Andrew Ceresney, Director of the SEC's Division of Enforcement (Dkt. 33-1), explains that in appropriate cases, the administrative forum facilitates the prompt airing, and in turn notice to the public, of alleged securities law violations. An administrative law judge typically must issue an initial decision no more than 300 days from the institution of administrative proceedings. By requiring an evidentiary hearing within that time frame, the matter can be considered while the evidence is relatively fresh, enhancing the prospect of an early resolution.

The district court pitted its judgment against that of Congress in declaring that "there is no evidence the SEC would be prejudiced by a brief delay to allow this Court to fully address Plaintiff's claims." Add. 43. Congress made a determination that the

18

public interest would be served by allowing the SEC to pursue a process in which legal issues—including constitutional issues—would be resolved on direct review by the court of appeals and not by a district court. Even on its own terms, moreover, the court's assessment of harm cannot withstand scrutiny. The court itself noted (Add. 2) that the Commission's investigation took nearly two years, during which it took "12 examinations, issued at least 13 subpoenas for documents[,] and received tens of thousands of documents" (quoting Am. Compl. ¶ 30). Allowing collateral proceedings in the courts to take their course will result in precisely the type of substantial delay that Congress and the Commission have sought to avoid. If constitutional objections were raised by a defendant in a criminal or civil enforcement proceeding, it would be readily understood that piecemeal appeals would generally frustrate the interest in a coherent trial proceeding and result in a needless waste of resources. The general rule against collateral attacks on administrative proceedings serves the same purpose, and there is no basis for deviating from that rule here.

The court erred, moreover, in viewing this case in isolation rather than as one of many enforcement proceedings brought each year. (Indeed, two other challenges to enforcement proceedings are now pending before the same district court judge.) The court wrongly minimized the impact of its reasoning on agency operations by declaring that "the SEC is not foreclosed from pursing Plaintiff in federal court." Add. 43. That reasoning merely restates the district court's unfounded and unexplained belief that no harm will result from setting aside the agency's ability to

19

use an administrative process instead of proceeding in court.

The court was on no firmer ground in suggesting that the agency would incur no harm if it were required to conduct "an administrative proceeding before an SEC Commissioner." Add. 43. Under the district court's reasoning, every respondent in an SEC enforcement proceeding might insist that a Commissioner personally preside over their hearing. The court's order, whether limited to a single case or expanded across all pending administrative proceedings, marks a significant breach of inter-branch comity. *See INS v. Legalization Assistance Project*, 510 U.S. 1301, 1306 (1993) (O'Connor, J., in chambers) (staying district court injunction interfering with the government's execution of immigration statute, noting that injunction was "an improper intrusion by a federal court into the workings of a coordinate branch of the Government"); *Schweiker v. McClure*, 452 U.S. 1301, 1302-03 (1981) (Rehnquist, J., in chambers) (staying order enjoining the Department of Health and Human Services from utilizing an administrative process in which private insurance carriers, rather than agency's ALJs, finally resolved certain Medicare benefits claims, explaining that the order would "cause hardship" to the agency because it "involve[d] a drastic restructuring of the appeals procedure carefully designed by Congress," and would require the agency to add to the workflow of its "already overloaded" ALJs).

## CONCLUSION

For the foregoing reasons, the Court should grant the motion for a stay pending appeal and for expedited review.

Respectfully submitted,

BENJAMIN C. MIZER
  *Principal Deputy Assistant Attorney*
    *General*

JOHN A. HORN
  *Acting United States Attorney*

BETH S. BRINKMANN
  *Deputy Assistant Attorney General*

MARK B. STERN
MARK R. FREEMAN
MEGAN BARBERO
  *(202) 532-4631*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7226*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

JULY 2015

21

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2015, I electronically filed the foregoing brief

with the Clerk of the Court for the United States Court of Appeals for the District of

Columbia Circuit by using the appellate CM/ECF system.  Participants in the case are

registered CM/ECF users, and service will be accomplished by the appellate

CM/ECF system.


*s/ Megan Barbero*
MEGAN BARBERO

# ADDENDUM

## TABLE OF CONTENTS

District Court Opinion, Dkt. 28 (June 8, 2015)..........................................................Add. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHARLES L. HILL, JR.,                        :
                                             :
                                             :
     Plaintiff,                              :
                                             :
v.                                           :   CIVIL ACTION NO.
                                             :   1:15-CV-1801-LMM
                                             :
SECURITIES AND EXCHANGE                      :
COMMISSION,                                  :
                                             :
     Defendant.                              :

## ORDER

This case comes before the Court on Plaintiff Charles L. Hill, Jr.'s Motion for a Temporary Restraining Order, or in the Alternative, a Preliminary Injunction [2]. On May 19, 2015, Plaintiff filed this action in federal court, seeking to (1) declare an SEC administrative proceeding unconstitutional, and (2) enjoin the administrative proceeding from occurring until the Court issues its ruling. Plaintiff seeks a stay of the administrative proceeding prior to its June 15, 2015, scheduled evidentiary hearing to allow the parties to conduct limited discovery and brief the declaratory judgment claims. The Court heard oral argument on May 27, 2015. After a review of the record and due consideration, Plaintiff's Motion [2] is **GRANTED, in part** and **DENIED, in part** for the following reasons:

**I. Background[1]**

Plaintiff Charles L. Hill, Jr. is unregistered with the Securities and Exchange Commission ("SEC"). Am. Compl., Dkt. No. [17] ¶ 1. Plaintiff is a self-employed real estate developer. Id. ¶ 14. In June and July 2011, Plaintiff purchased and then sold a large quantity of Radiant Systems, Inc. ("Radiant") stock, making a profit of approximately $744,000. Id. ¶¶ 23-26. The SEC alleges that Plaintiff made these transactions because he received inside information about a future merger between Radiant and NCR Corporation.  Id. ¶ 33.

Plaintiff contends he never received inside information and bought and sold stock based upon (1) his personal knowledge of and experience with Radiant's product and management, and (2) his stock broker's suggestion to sell. See id. ¶¶ 2, 14-28. Plaintiff argues that the SEC (1) does not have any direct evidence of insider trading, and (2) relies on a "speculative theory that Mr. Hill must have had access to inside information on Radiant merely on the timing and concentration of his purchases." Id. ¶¶ 29, 31.

The SEC conducted a "nearly two-year investigation" between March 2013 and February 2015. Id. ¶¶ 27, 30, 39. It took "12 examinations, issued at least 13 subpoenas for documents[,] and received tens of thousands of documents. . . ." Id. ¶ 30. On February 17, 2015, the SEC served Plaintiff with an Order Instituting Cease-And-Desist Proceedings ("OIP") under Section 21C of the Securities

---

[1] The following facts are drawn from the Amended Complaint unless otherwise indicated, and any fact finding is made solely for the purposes of this Motion.

Exchange Act of 1934 ("Exchange Act"), alleging he is liable for insider trading in violation of Section 14(e) of the Exchange Act and Rule 14e-3. Ex. 4, Dkt. No. [2-6]. The SEC seeks a cease-and-desist order, a civil penalty, and disgorgement. Id.

### A. The Exchange Act

In 1990, through the Securities Enforcement Remedies and Penny Stock Reform Act, Pub. L. No. 101-429, 104 Stat. 931, 939 (1990), Congress first authorized the SEC to pursue "any person" for Exchange Act violations through an administrative cease-and-desist proceeding. See 15 U.S.C. § 78u-3. This proceeding allows the SEC to obtain an order enjoining violations of the Exchange Act. Id. In 2010, Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Pub. L. No. 111-203, 124 Stat. 1376 (2010), which authorized the SEC to seek civil monetary penalties from "any person"—both those registered and unregistered with the SEC—in an administrative hearing. See 15 U.S.C. § 78u-2.

Prior to the passage of Dodd-Frank in 2010, the SEC could not seek civil penalties from an unregistered individual like Plaintiff in an administrative proceeding; it could only have brought an administrative proceeding against "regulated person[s]" or companies. See Duka v. S.E.C., ___ F. Supp. 3d ___, No. 15 Civ. 357 (RMB) (SN), 2015 WL 1943245, at *2 (S.D.N.Y. Apr. 15, 2015) (citing Gupta v. S.E.C., 796 F. Supp. 2d 503, 507 (S.D.N.Y. 2011)). The earlier version of the statute allowed the SEC to pursue unregistered individuals like Plaintiff for civil penalties only in federal court where these individuals could invoke their

Seventh Amendment right to jury trial. In sum, the Exchange Act currently

authorizes the SEC to initiate enforcement actions against "any person"

suspected of violating the Act and gives the SEC the sole discretion to decide

whether to bring an enforcement action in federal court or an administrative

proceeding. See 15 U.S.C. §§ 78u(d), 78u-1, 78u-2, 78u-3.

### B. SEC Administrative Process

The Administrative Procedure Act ("APA"), 5 U.S.C. § 500, *et seq.*,

authorizes executive agencies, such as the SEC, to conduct administrative

proceedings before an Administrative Law Judge ("ALJ"). SEC administrative

proceedings vary greatly from federal court actions.

The Federal Rules of Civil Procedure and Evidence do not apply in SEC

administrative proceedings. Instead, the SEC uses its own Rules of Practice. 17

C.F.R. § 201.100(a).[2] "[A]ny evidence 'that can conceivably throw any light upon

the controversy, including hearsay, normally will be admitted in an

administrative proceeding.'" Am. Compl., Dkt. No. [17] ¶ 53 (quoting In re

Ochanpaugh, Exchange Act Release No. 54363, 2006 WL 2482466, at *6 n.29

(Aug. 25, 2006)) (internal quotations omitted). And respondents such as Plaintiff

"are generally barred from taking depositions under Rules of Practice 233 and

234," and can "obtain documents only through the issuance of a Subpoena under

---

[2] However, the SEC could order an "alternative procedure" or refuse to enforce a
rule if it determined "that to do so would serve the interests of justice and not
result in prejudice to the parties to the proceeding." 17 C.F.R. § 201.100(c).

Rule of Practice 232." Am. Compl., Dkt. No. [17] ¶ 54; <u>see also</u> 17 C.F.R. §§ 201.232-234.

SEC administrative proceedings also occur much more quickly than federal court actions. Following an OIP's issuance, an evidentiary hearing must occur within four months. 17 C.F.R. § 201.360(a)(2).[3] The SEC also has discretion to hold the evidentiary hearing as soon as one month following the OIP. <u>See</u> <u>id.</u> Counterclaims are not permissible in administrative proceedings. Am. Compl. Dkt. No. [1] ¶ 56. And the Rules of Practice do not allow for the equivalent of 12(b) motions in federal court which test the allegations' sufficiency. <u>Id.</u> ¶ 57.

The SEC's Rules of Practice, 17 C.F.R. § 201.100, *et seq.*, provide that the SEC "shall" preside over all administrative proceedings whether by the Commissioners handling the matter themselves or delegating the case to an ALJ; there is no right to a jury trial. 17 C.F.R. § 201.110. When an ALJ is selected by the SEC to preside—as was done by the SEC in Plaintiff's case—the ALJ is selected by the Chief Administrative Law Judge. <u>Id.</u> The ALJ then presides over the matter (including the evidentiary hearing) and issues the initial decision. 17 C.F.R. § 201.360(a)(1). However, the SEC may on its own motion or at the request of a party order interlocutory review of any matter during the ALJ proceeding;

---

[3] The SEC or ALJ can enlarge any time limit for "good cause shown," but the SEC and ALJ are cautioned to "adhere to a policy of strongly disfavoring such requests, except in circumstances where the requesting party makes a strong showing that the denial of the request of motion would substantially prejudice their case." 17 C.F.R. § 201.161(a)-(b).

"[p]etitions by parties for interlocutory review are disfavored," though. 17 C.F.R. § 201.400(a).

The initial decision can be appealed by either the respondent or the SEC's Division of Enforcement, 17 C.F.R. § 201.410, or the SEC can review the matter "on its own initiative." 17 C.F.R. § 201.411(c). A decision is not final until the SEC issues it. If there is no appeal and the SEC elects not to review an initial order, the ALJ's decision is "deemed the action of the Commission," 15 U.S.C. § 78d-1(c), and the SEC issues an order making the ALJ's initial order final. 17 C.F.R. § 201.360(d)(2).

If the SEC grants review of the ALJ's initial decision, its review is essentially *de novo* and it can permit the submission of additional evidence. 17 C.F.R. §§ 201.411(a), 201.452. However, the SEC will accept the ALJ's "credibility finding, absent overwhelming evidence to the contrary." In re Clawson, Exchange Act Release No. 48143, 2003 WL 21539920, at *2 (July 9, 2003); In re Pelosi, Securities Act Release No. 3805, 2014 WL 1247415, at *2 (Mar. 27, 2014) ("The Commission gives considerable weight to the credibility determination of a law judge since it is based on hearing the witnesses' testimony and observing their demeanor. Such determinations can be overcome only where the record contains substantial evidence for doing so.") (footnote and internal quotation marks omitted).

If a majority of the participating Commissioners do not agree regarding the outcome, the ALJ's initial decision "shall be of no effect, and an order will be

issued in accordance with this result." 17 C.F.R. § 201.411(f). Otherwise, the SEC will issue a final order at the conclusion of its review.

If a respondent such as Plaintiff loses with the SEC, he may petition for review of the SEC's order in the federal court of appeals (either his home circuit or the D.C. Circuit). 15 U.S.C. § 78y(a)(1). Once the record is filed, the court of appeals then retains "exclusive" jurisdiction to "to affirm or modify and enforce or to set aside the order in whole or in part." 15 U.S.C. § 78y(a)(3). The SEC's findings of facts are "conclusive" "if supported by substantial evidence." 15 U.S.C. § 78y(a)(4). The court of appeals may also order additional evidence to be taken before the SEC and remand the action for the SEC to conduct an additional hearing with the new evidence. 15 U.S.C. § 78y(a)(5). The SEC then files its new findings of facts based on the additional evidence with the court of appeals which will be taken as conclusive if supported by substantial evidence. Id.

### C. SEC ALJs

SEC ALJs are "not appointed by the President, the Courts, or the [SEC] Commissioners. Instead, they are hired by the SEC's Office of Administrative Law Judges, with input from the Chief Administrative Law Judge, human resource functions, and the Office of Personnel Management" ("OPM"). Am. Compl., Dkt. No. [17] ¶ 80; see also 5 C.F.R. § 930.204 ("An agency may appoint an individual to an administrative law judge position only with prior approval of OPM, except when it makes its selection from the list of eligibles provided by OPM. An administrative law judge receives a career appointment and is exempt

from the probationary period requirements under part 315 of this chapter."). An

ALJ's salary is set by statute. 5 U.S.C. § 5372.

Congress has authorized the SEC to delegate any of its functions to an ALJ.

15 U.S.C. § 78d-1(a). Pursuant to that authority, the SEC has promulgated

regulations, which set out its ALJ's powers. 17 C.F.R. § 200.14 makes ALJs

responsible for the "fair and orderly conduct of [administrative] proceedings" and

gives them the authority to: "(1) Administer oaths and affirmations; (2) Issue

subpoenas; (3) Rule on offers of proof; (4) Examine witnesses; (5) Regulate the

course of a hearing; (6) Hold pre-hearing conferences; (7) Rule upon motions;

and (8) Unless waived by the parties, prepare an initial decision containing the

conclusions as to the factual and legal issues presented, and issue an appropriate

order." 17 C.F.R. § 200.14(a);[4] see also 17 C.F.R. § 200.30–9 (authorizing ALJs to

make initial decisions).

---

[4] The SEC Rules of Practice provide a similar list of powers for "hearing officers,"
or ALJs. 17 C.F.R. § 201.101(a)(5) ("(5) Hearing officer means an administrative
law judge, a panel of Commissioners constituting less than a quorum of the
Commission, an individual Commissioner, or any other person duly authorized to
preside at a hearing"). 17 C.F.R. § 201.111 provides,

> The hearing officer shall have the authority to do all things necessary
> and appropriate to discharge his or her duties. No provision of these
> Rules of Practice shall be construed to limit the powers of the
> hearing officer provided by the Administrative Procedure Act, 5
> U.S.C. 556, 557. The powers of the hearing officer include, but are
> not limited to, the following:

> (a) Administering oaths and affirmations;

(b) Issuing subpoenas authorized by law and revoking, quashing, or modifying any such subpoena;

(c) Receiving relevant evidence and ruling upon the admission of evidence and offers of proof;

(d) Regulating the course of a proceeding and the conduct of the parties and their counsel;

(e) Holding prehearing and other conferences as set forth in § 201.221 and requiring the attendance at any such conference of at least one representative of each party who has authority to negotiate concerning the resolution of issues in controversy;

(f) Recusing himself or herself upon motion made by a party or upon his or her own motion;

(g) Ordering, in his or her discretion, in a proceeding involving more than one respondent, that the interested division indicate, on the record, at least one day prior to the presentation of any evidence, each respondent against whom that evidence will be offered;

(h) Subject to any limitations set forth elsewhere in these Rules of Practice, considering and ruling upon all procedural and other motions, including a motion to correct a manifest error of fact in the initial decision. A motion to correct is properly filed under this Rule only if the basis for the motion is a patent misstatement of fact in the initial decision. Any motion to correct must be filed within ten days of the initial decision. A brief in opposition may be filed within five days of a motion to correct. The hearing officer shall have 20 days from the date of filing of any brief in opposition filed to rule on a motion to correct;

(i) Preparing an initial decision as provided in § 201.360;

(j) Upon notice to all parties, reopening any hearing prior to the filing of an initial decision therein, or, if no initial decision is to be filed, prior to the time fixed for the filing of final briefs with the Commission; and

### D. Plaintiff's Administrative Proceeding

As stated supra, the SEC filed an OIP against Plaintiff on February 17, 2015. In the administrative proceeding, Plaintiff moved for summary disposition, asserting three constitutional arguments before the ALJ: (1) that the proceeding violates Article II of the Constitution because ALJs are protected by two layers of tenure protection; (2) that Congress's delegation of authority to the SEC to pursue cases before ALJs violates the delegation doctrine in Article I of the Constitution; and (3) that Congress violated his Seventh Amendment right to jury trial by allowing the SEC to pursue charges in an administrative proceeding. ALJ decision, Dkt. No. [2-4] at 2. ALJ James E. Grimes found on May 14, 2015, that he did not have the authority to address issues (2) and (3) and "doubt[ed] that [he had] the authority to address [] issue" (1). Id. at 7, 10-11. However, he did deny Plaintiff's Article II removal claim on the merits. Id.

Plaintiff's administrative evidentiary hearing is scheduled for June 15, 2015, before the ALJ. On May 19, 2015, Plaintiff filed his Complaint, asking this Court to (1) declare the administrative proceeding unconstitutional for the same reasons asserted in the administrative proceeding, and (2) enjoin the administrative proceeding from occurring until the Court can issue its ruling. The

---

(k) Informing the parties as to the availability of one or more alternative means of dispute resolution, and encouraging the use of such methods.

17 C.F.R. § 201.111.

Court heard oral argument on May 27, 2015. On May 29, 2015, Plaintiff amended his Complaint, adding a claim that the SEC ALJ's appointment violated the Appointments Clause of Article II as the ALJ is allegedly an inferior officer and he was not appointed by the President, the courts of law, or a department head. See U.S. Const. art. II, § 2, cl. 2. The Court allowed Plaintiff and the SEC to file supplemental briefs on this issue following the hearing. Dkt. No. [18].

The SEC opposes Plaintiff's Motion, arguing that (1) this Court does not have subject matter jurisdiction, and (2) even if it does, Plaintiff has failed to meet his burden under the preliminary injunction standard.

## II. Discussion

### A. Subject Matter Jurisdiction

The SEC first contends that this Court does not have subject matter jurisdiction because the administrative proceeding, with its eventual review from a court of appeals, has exclusive jurisdiction over Plaintiff's constitutional claims. In other words, the SEC contends that its election to pursue claims against Plaintiff in an administrative proceeding, "channels review of Plaintiff's claims through the Commission's administrative process, with review in the courts of appeals." Def. Br., Dkt. No. [12] at 18; see 15 U.S.C. § 78y; supra at ____ (explaining the administrative review procedure). The SEC thus argues that § 78y is now Plaintiff's exclusive judicial review channel, and this Court cannot consider Plaintiff's constitutional claims; judicial review can only come from the

courts of appeal following the administrative proceeding and the SEC's issuance of a final order in Plaintiff's case.

The SEC's position is in tension with 28 U.S.C. § 1331, which provides that federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," and 28 U.S.C. § 2201, which authorizes declaratory judgments. "[I]t is established practice for [the Supreme] Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution." Bell v. Hood, 327 U.S. 678, 684 (1946); Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 491 n.2 (2010). And "injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 74 (2001); see also 5 U.S.C. § 702 (stating that under the Administrative Procedure Act, any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof" and may seek injunctive relief).

To restrict the district court's statutory grant of jurisdiction under § 1331, there must be Congressional intent to do so. The Supreme Court has held that, "[p]rovisions for agency review do not restrict judicial review unless the 'statutory scheme' displays a 'fairly discernible' intent to limit jurisdiction, and the claims at issue 'are of the type Congress intended to be reviewed within th[e] statutory

structure.'" <u>Free Enterprise</u>, 561 U.S. at 489 (quoting <u>Thunder Basin Coal Co. v.</u> <u>Reich</u>, 510 U.S. 200, 207, 212, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994)).

At the hearing, the SEC argued that despite statutory language providing that these types of enforcement actions could be heard in *either* the district court *or* administrative proceedings, once the SEC selected the administrative forum, Plaintiff was bound by that decision and § 78y became the exclusive judicial review provision. The SEC contends that Congress declared its intent for the administrative proceeding to be the exclusive forum for judicial review for these cases by allowing the SEC to make the administrative proceeding its forum choice.

The Court finds, however, that Congress's purposeful language allowing *both* district court and administrative proceedings shows a different intent. Instead, the clear language of the statute provides a choice of forum, and there is no language indicating that the administrative proceeding was to be an exclusive forum. There can be no "fairly discernible" Congressional intent to limit jurisdiction away from district courts when the text of the statute provides the district court as a viable forum. The SEC cannot manufacture Congressional intent by making that choice for Congress; Congress must express its own intent within the language of the statute. Similarly, in <u>Free Enterprise</u>, the Supreme Court held that the text of § 78y—the provision at issue here—"does not expressly limit the jurisdiction that other statutes confer on district courts. <u>See, e.g.</u>, 28 U.S.C. §§ 1331, 2201. Nor does it do so implicitly." 561 U.S. at 489.

Here, the Court finds that because Congress created a statutory scheme which expressly included the district court as a permissible forum for the SEC's claims, Congress did not intend to limit § 1331 and prevent Plaintiff from raising his collateral constitutional claims in the district court. Congress could not have intended the statutory review process to be exclusive because it expressly provided for district courts to adjudicate not only constitutional issues but Exchange Act violations, at the SEC's option. See Elgin v. Dep't of Treasury, ___ U.S. ___, 132 S. Ct. 2126, 2133 (2012) ("To determine whether it is 'fairly discernible' that Congress precluded district court jurisdiction over petitioners' claims, we examine the [the Exchange Act]'s text, structure, and purpose.").

But even if Congress's intent cannot be gleaned from Congress's purposeful choice to include the district court as a viable forum, the Court still finds that jurisdiction would be proper as Congress's intent can be presumed based on the standard articulated in Thunder Basin, Free Enterprise, and Elgin. A court may "presume that Congress does not intend to limit jurisdiction" if (1) "a finding of preclusion could foreclose all meaningful judicial review"; (2) "if the suit is wholly collateral to a statute's review provisions"; and if (3) "the claims are outside the agency's expertise." Free Enterprise, 561 U.S. at 489 (quoting Thunder Basin, 510 U.S. at 212-213) (internal quotations omitted). A discussion of these factors follows.

### 1. Barring Plaintiff's Claims Would Prevent Meaningful Judicial Review.

The SEC first argues that because Plaintiff has a "certain path" to judicial review through a court of appeals, Plaintiff cannot demonstrate he lacks meaningful judicial review. Def. Br., Dkt. No. [12] at 20. But the Court finds that requiring Plaintiff to pursue his constitutional claims following the SEC's administrative process "could foreclose all *meaningful* judicial review" of his constitutional claims. Free Enterprise, 561 U.S. at 489 (emphasis added) (quoting Thunder Basin, 510 U.S. at 212-213); see Duka, 2015 WL 1943245, at *5.

Plaintiff's claims go to the constitutionality of Congress's entire statutory scheme, and Plaintiff specifically seeks an order enjoining the SEC from pursuing him in its "unconstitutional" tribunals. If Plaintiff is required to raise his constitutional law claims following the administrative proceeding, he will be forced to endure what he contends is an unconstitutional process. Plaintiff could raise his constitutional arguments only after going through the process he contends is unconstitutional—and thus being inflicted with the ultimate harm Plaintiff alleges (that is, being forced to litigate in an unconstitutional forum). By that time, Plaintiff's claims would be moot and his remedies foreclosed because the Court of Appeals cannot enjoin a proceeding which has already occurred.

The SEC argues that Plaintiff's argument "boils down to the assertion that administrative respondents need not wait for actual adjudication of their cases in order to challenge their legality," and the Eleventh Circuit has "rejected precisely

this argument." <u>See</u> Def. Br., Dkt. No. [12] at 21 (quoting <u>Chau v. U.S. S.E.C.</u>, ___ F. Supp. 3d ___, No. 14-CV-1903 LAK, 2014 WL 6984236, at *12 (S.D.N.Y. Dec. 11, 2014) (internal quotation marks omitted)); <u>see also</u> Def. Br., Dkt. No. [12] at 21 (citing <u>Doe v. F.A.A.</u>, 432 F.3d 1259, 1263 (11th Cir. 2005)). However, this Court does not read those Eleventh Circuit decisions so broadly.

In <u>Doe</u>, thirteen aircraft mechanics sued the FAA, seeking a preliminary injunction "instructing the FAA how to proceed in its process of reexamination." 432 F.3d at 1260. An investigation revealed that the school where plaintiffs received their airmen certificates had fraudulently examined and certified some mechanics who were unqualified to hold the certification. <u>Id.</u> Because the FAA was unable to determine which certifications were fraudulent, the FAA wrote all relevant mechanics requiring them to recertify. <u>Id.</u> "The parties agreed that the FAA ha[d] the power to reexamine airmen and to suspend and revoke their certificates." <u>Id.</u> at 1262. But the plaintiffs sought and received an injunction on the basis that their due process rights would be violated by the FAA pursuing its administrative procedure.

The Eleventh Circuit reversed, finding that the Court did not have subject matter jurisdiction. The Court held that the mechanics' constitutional arguments were "inescapably intertwined" with the merits of an FAA order. <u>Id.</u> at 1263 ("The mechanics' constitutional claims (that the FAA has infringed upon their due process rights by failing to observe statutory and administrative processes) necessarily require a review of the procedures and actions taken by the FAA with

regard to the mechanics' certificates. Therefore, the constitutional claims fall within the ambit of the administrative scheme, and the district court is without subject-matter jurisdiction."); see also Green v. Brantley, 981 F.2d 514, 521 (11th Cir. 1993) (holding that the Circuit lacked subject matter jurisdiction because "the merits of [plaintiff's] claims are inescapably intertwined with a review of the procedures and merits surrounding the FAA's order."). The Court therefore held that "delayed judicial review (that is, review by a federal court of appeals after determination by the administrative commission rather than initial review by a federal district court)" was still meaningful in those circumstances. Doe, 432 F.3d at 1263.

The Court finds that Doe is distinguishable. The plaintiffs in Doe conceded the FAA had the authority to initiate administrative proceedings, but claimed that because the FAA had not yet initiated administrative proceedings against them, they were not required to go through the administrative process. Id. at 1262. The FAA did not have a forum selection decision, and the plaintiff conceded the FAA's ability to pursue reexamination. The Eleventh Circuit found that plaintiff's due process challenges were "inescapably intertwined" with the merits of the FAA's actions.

Here, Plaintiff's claims rise or fall regardless of what has occurred or will occur in the SEC administrative proceeding; Plaintiff does not challenge the SEC's conduct in that proceeding or the allegations against him—he challenges the proceeding *itself*. See Free Enterprise, 561 U.S. at 490 ("But petitioners object

to the Board's existence, not to any of its auditing standards."); <u>Touche Ross & Co. v. SEC</u>, 609 F.2d 570, 577 (2d Cir. 1979) ("While the Commission's administrative proceeding is not 'plainly beyond its jurisdiction,' nevertheless to require appellants to exhaust their administrative remedies would be to require them to submit to the very procedures which they are attacking.").

Plaintiff's claims here are not "inescapably intertwined" with the merits of the SEC's insider trading claims against him. Therefore, while the delayed judicial review in <u>Doe</u> was acceptable because the constitutional claims depended on how long the FAA took to complete an admittedly constitutional *process*, delayed judicial review here will cause an allegedly unconstitutional *process* to occur.

Waiting until the harm Plaintiff alleges cannot be remedied is not *meaningful* judicial review.[5] <u>See</u> <u>LabMD, Inc. v. F.T.C.</u>, 776 F.3d 1275, 1280 (11th

---

[5] The cases the SEC cites from other districts on this issue can be distinguished from the facts here. <u>Chau</u>, <u>Jarkesy v. S.E.C.</u>, 48 F. Supp. 3d 32 (D.D.C. 2014), and <u>Altman v. U.S. S.E.C.</u>, 768 F. Supp. 2d 554 (S.D.N.Y. 2011), all addressed substantive challenges to the merits of the administrative proceedings. <u>See</u> <u>Chau</u>, 2014 WL 6984236 (challenging the SEC's conduct within the administrative proceeding, such as failing to postpone a hearing following a document dump); <u>Jarkesy</u>, 48 F. Supp. 3d at 32 (claiming that he could not obtain a fair hearing before the SEC because the SEC's settlements with two others stated that the plaintiff was liable for securities fraud); <u>Altman</u>, 768 F. Supp. 2d at 561 (involving a challenge to the SEC's own rules and stating that this was not a case where the plaintiff disputed the SEC had the expertise to hear challenges to its own rules and noted that the plaintiff did not challenge the "existence" of the proceeding but rather the "extent of the SEC's ability to sanction attorneys under the SEC's own rules").

Cir. 2015) ("We have consistently looked to how 'inescapably intertwined' the constitutional claims are to the agency proceeding, reasoning that the harder it is to distinguish them, the less prudent it is to interfere in an ongoing agency process.") (citing <u>Doe</u>, 432 F.3d at 1263; <u>Green</u>, 981 F.2d at 521). Therefore, the Court finds that § 78y does not provide meaningful judicial review under these circumstances.

**2. Plaintiff's Claims Are Wholly Collateral to the SEC Proceeding.**

---

The Court also notes that <u>Chau</u>'s reasoning supports this Court's ruling. Specifically, The <u>Chau</u> court stated,

> There is an important distinction between a claim that an administrative scheme is unconstitutional in all instances—a facial challenge—and a claim that it violates a particular plaintiff's rights in light of the facts of a specific case—an as-applied challenge. As between the two, courts are more likely to sustain pre-enforcement jurisdiction over "broad facial and systematic challenges," such as the claim at issue in <u>Free Enterprise Fund</u>. This tendency is not a hard-and-fast rule, as "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." Rather, it is a recognition that the <u>Thunder Basin</u> and <u>Free Enterprise</u> factors militate against jurisdiction when a pre-enforcement constitutional claim relates to factual issues that are the subject of a pending administrative adjudication.

<u>Chau v. U.S. S.E.C.</u>, No. 14-CV-1903 LAK, 2014 WL 6984236, at *6 (S.D.N.Y. Dec. 11, 2014) (footnotes omitted) (quoting <u>Elk Run Coal Co. v. Dep't of Labor</u>, 804 F. Supp. 2d 8, 21 (D.D.C. 2011) (describing <u>Free Enterprise</u> as a "broad facial and systemic challenge"); <u>Elgin</u>, 132 S. Ct. at 2135 (explaining that the as-applied vs. facial distinction is not talismanic)).

The SEC also argues that Plaintiff's claims are not wholly collateral to the SEC proceeding because it is possible that Plaintiff may not be found liable in the administrative proceeding or he may eventually obtain relief on appeal. The SEC cites Elgin and argues that "Plaintiff's claims are not collateral to the statutory provisions governing review of SEC administrative proceedings because they are the means by which Plaintiff seeks to halt his SEC proceeding." Def. Br., Dkt. No. [12] at 22 (citing Elgin, 132 S. Ct. at 2139). But Elgin is distinguishable.

In Elgin, the plaintiffs had been terminated from their civil service jobs for failing to register for the selective service. Rather than appealing their terminations to the Merit Systems Protective Board or the Court of Appeals for the Federal Circuit, as required by the Civil Service Reform Act, plaintiffs filed an action in federal district court, claiming that their termination was unconstitutional. The Supreme Court ruled that the plaintiffs' claim was not "wholly collateral to the CSRA scheme," but was "a challenge to CSRA-covered employment action brought by CSRA-covered employees requesting relief that the CSRA routinely affords,"—i.e., reversal of employment decisions, reinstatement, and awarding back pay. Elgin, 132 S. Ct. at 2139-40 (internal quotation marks omitted).

Plaintiff is not challenging an agency decision; Plaintiff is challenging whether the SEC's ability to *make* that decision was constitutional. What occurs at the administrative proceeding and the SEC's conduct there is irrelevant to this proceeding which seeks to invalidate the entire statutory scheme. See Free

Enterprise, 561 U.S. at 490 ("But petitioners object to the Board's existence, not to any of its auditing standards."); Duka, 2015 WL 1943245, at *6; Gupta, 796 F. at 513 (noting the plaintiff would state a constitutional claim "even if [plaintiff] were entirely guilty of the charges made against him in the OIP"). Accordingly, Plaintiff's constitutional claims are wholly collateral to the administrative proceeding.

### 3. Plaintiff's Constitutional Claims Are Outside the Agency's Expertise.

The SEC claims that Plaintiff's challenges "fall within the Commission's expertise," and the "SEC is in the best position to interpret its own policies and regulations in the first instance." Dkt. No. [12] at 13. The Court finds that Plaintiff's Article I, Seventh Amendment, and Article II claims are outside the agency's expertise.[6]

Plaintiff's constitutional claims are governed by Supreme Court jurisprudence, and "the statutory questions involved do not require technical considerations of agency policy." Free Enterprise, 561 U.S. at 491 (alteration and internal quotations omitted) (quoting Johnson v. Robison, 415 U.S. 361, 373 (1974)); see also Thunder Basin, 510 U.S. at 215 ("[A]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies.") (quoting Johnson, 415 U.S. at 368). These claims are not part and parcel of an ordinary securities fraud case, and

---

[6] The SEC ALJ agrees with this conclusion. See ALJ decision, Ex. 2, Dkt. No. [2-4].

there is no evidence that (1) Plaintiff's constitutional claims are the type the SEC "routinely considers," or (2) the agency's expertise can be "brought to bear" on Plaintiff's claims as they were in Elgin. Elgin, 132 S. Ct. at 2140.

The Court finds that as to this factor, Plaintiff's constitutional claims are outside the SEC's expertise, and that this Court has subject matter jurisdiction.

### B. Preliminary Injunction

To obtain a preliminary injunction, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the movant outweighs the damage to the opposing party; and (4) granting the injunction would not be adverse to the public interest. Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003). "The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." United States v. Jefferson Cnty., 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting Canal Auth. v. Callaway, 489 F.2d 567, 573 (5th Cir. 1974)). The same factors apply to a temporary restraining order. Ingram v. Ault, 50 F.3d 898, 900 (11th Cir. 1995). The Court first analyzes whether Plaintiff has met his burden to demonstrate a substantial likelihood to succeed on the merits of each of his constitutional arguments.

### 1. Non-Delegation Doctrine

Plaintiff first argues that the Dodd-Frank Act violates Article I of the Constitution because it gives the SEC unfettered discretion to select its forum. As stated <u>supra</u>, prior to the Dodd-Frank Act, the SEC could not have brought an administrative proceeding seeking civil penalties against unregistered individuals such as Plaintiff. Now, the SEC may choose between two forums for violations: federal district court or an SEC administrative proceeding.[7] Plaintiff argues that the Dodd-Frank Act violates Article I of the Constitution because it "delegates decisionmaking authority to the Commission to bring an administrative proceeding for civil penalties against unregulated individuals . . . without any intelligible principle as to when the Commission is to bring an enforcement action against an unregulated individual in an administrative forum." Pl. Br., Dkt. No. [2-1] at 9.

Article I, § 1 of the U.S. Constitution vests, "[a]ll legislative Powers herein granted . . . in a Congress of the United States." Pursuant to the delegation doctrine, Congress may delegate this legislative decisionmaking power to agencies, but only if it "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform." <u>Whitman v. Am. Trucking Assocs.</u>, 531 U.S. 457, 472 (2001) (quoting <u>J.W. Hampton Jr., & Co. v. United States</u>, 276 U.S. 394, 409 (1928)). "Whether the statute delegates

---

[7] At the hearing, the SEC noted that available penalties vary slightly based on choice of forum. Hr'g Tr., Dkt. No. [19] at 99:4-7 (noting that treble damages are only available in federal court and not in an administrative proceeding).

legislative power is a question for the courts, and an agency's voluntary self-denial has no bearing upon the answer." <u>Whitman</u>, 531 U.S. at 473. Exercise of legislative power depends not on form but upon "whether [the actions] contain matter which is properly to be regarded as legislative in its character and effect." <u>I.N.S. v. Chadha</u>, 462 U.S. 919, 952 (1983) (quoting S. Rep. No. 1335, 54th Cong., 2d Sess., 8 (1897)).

The SEC contends that the non-delegation doctrine is inapplicable because the "Executive [Branch] does not act in a legislative capacity by selecting the forum in which to enforce a law; that authority is a part of the Executive power itself." Def. Br., Dkt. No. [12] at 24; <u>see also</u> U.S. Const. art. II, § 3 (stating the Executive "shall take Care that the Laws be faithfully executed"). The SEC argues that its forum selection decision is no different from any other decision made by prosecutors, and courts consistently reject non-delegation challenges to prosecutorial-discretion-related decisions. <u>See</u> <u>United States v. Batchelder</u>, 442 U.S. 114, 126 (1979) (rejecting a non-delegation challenge where "the power that Congress has delegated to those officials is no broader than the authority they routinely exercise in enforcing the criminal laws."); <u>United States v. I.D.P.</u>, 102 F.3d 507, 511 (11th Cir. 1996) (noting that the Government's "authority to decide whether to prosecute a case in a federal forum [is the] type of decision [that] falls squarely within the parameters of prosecutorial discretion . . . ."). This Court agrees.

In <u>Batchelder</u>, the Supreme Court was asked to resolve whether the
Government's "unfettered" prosecutorial discretion to decide between two
identical statutes except for their penalty provisions was constitutional, when one
statute had a much higher sentencing range. 442 U.S. at 116-17, 125. The
defendant had been convicted under the statute with the higher penalty, and the
defendant challenged Congress's delegation of authority to prosecutors to (1)
decide between the statutes, and (2) thus choose a higher sentencing range for
identical conduct. The court of appeals had remanded the case to the district
court for resentencing, finding that the defendant could only be subject to the
maximum sentence under the statute with the lower penalty. The court of appeals
found that the "prosecutor's power to select one of two statutes that are identical
except for their penalty provisions implicated important constitutional
protections." 442 U.S. at 117 (internal quotations omitted).

The Supreme Court reversed, finding that there is a "settled rule" in
prosecutorial choice, 442 U.S. at 124, and "[m]ore importantly, there is no
appreciable difference between the discretion a prosecutor exercises when
deciding whether to charge under one of two statutes with different elements and
the discretion he exercises when choosing one of two statutes with identical
elements." 442 U.S. at 125. "Just as a defendant has no constitutional right to
elect which of two applicable federal statutes shall be the basis of his indictment
and prosecution neither is he entitled to choose the penalty scheme under which

he will be sentenced." Id. The Court specifically rejected defendant's delegation

argument, finding that:

> [t]he provisions at issue plainly demarcate the range of penalties that
> prosecutors and judges may seek to impose. In light of that
> specificity, the power that Congress has delegated to those officials is
> no broader than the authority they routinely exercise in enforcing
> the criminal laws. Having informed the courts, prosecutors, and
> defendants of the permissible punishment alternatives available
> under each Title, Congress has fulfilled its duty.

442 U.S. at 126.

The Court finds that this case is similar to Batchelder. Just as the Supreme

Court held that the defendant in Batchelder could not choose the statute of his

indictment, Plaintiff here may not choose his forum when Congress has dedicated

that decision to the Executive. See United States v. Allen, 160 F.3d 1096, 1108

(6th Cir. 1998) (rejecting defendant's "attempt to end-run the doctrine of

prosecutorial discretion" by arguing the prosecutor's charging decision violated

the non-delegation doctrine); see also Whitman, 531 U.S. at 474-475 ("In short,

we have almost never felt qualified to second-guess Congress regarding the

permissible degree of policy judgment that can be left to those executing or

applying the law.") (internal quotations omitted). When the SEC makes its forum

selection decision, it is acting under executive authority and exercising

prosecutorial discretion. See Chadha, 462 U.S. at 951 ("When the Executive acts,

it presumptively acts in an executive or administrative capacity as defined in Art.

II.").

Plaintiff argues that unlike <u>Batchelder</u>, where the Supreme Court found that Congress set out clear parameters as to the possible punishments, Dodd-Frank does not provide the SEC any criteria to make its forum selection decision. Pl. Reply, Dkt. No. [13] at 12-13. However, just as the prosecutor was allowed to select between two statutes which prevented identical conduct but provided different possible penalties in <u>Batchelder</u>, the Court finds that the SEC may select between two statutes which allow for different forum choices. The statutes in <u>Batchelder</u> did not tell the prosecutor what factors to consider in making his decision between the statutes, and the effect of the prosecutor's decision in <u>Batchelder</u> was equally paramount to Plaintiff's claims here—the defendant there would spend more time incarcerated if the prosecutor selected the higher penalty statute.

Congress has advised the SEC through the enactment of specific statutes as to what conduct may be pursued in each forum. It is for the enforcement agency to decide where to bring that claim under its exercise of executive power. Because the SEC has been made aware of the permissible forums available under each statute, "Congress has fulfilled its duty." <u>Batchelder</u>, 442 U.S. at 126.

Plaintiff also argues that the SEC's forum decision is an improper exercise of legislative power. Specifically, the SEC contends that "by virtue of the Act, the SEC received additional power from Congress to alter the rights, duties, and legal relations of individuals," and that under <u>Chadha</u>, this action constituted legislative action not executive action. Pl. Reply, Dkt. No. [13] at 10-11.

In <u>Chadha</u>, the Supreme Court found that the one-House veto provision was unconstitutional, but it did so without using the non-delegation doctrine. 462 U.S. at 959. In invalidating the statute, the Supreme Court first noted the presumption that "[w]hen any Branch acts, it is presumptively exercising the power the Constitution has delegated to it." <u>Id.</u> at 951. Beginning with that presumption, the Court held that the one-House veto was legislative in effect because "[i]n purporting to exercise power defined in Art. I, § 8, cl. 4 to 'establish an uniform Rule of Naturalization,' the House took action that had the purpose and effect of altering the **legal rights, duties, and relations of persons**, including the Attorney General, Executive Branch officials and Chadha, all outside the legislative branch." <u>Id.</u> at 952 (emphasis added). Plaintiff seizes on the bolded language above to claim that because the SEC's forum selection decision affects him—specifically, his ability to assert his 7th Amendment rights— the SEC has been delegated legislative authority.

The Court does not agree with Plaintiff's reading of <u>Chadha</u>. Instead, <u>Chadha</u> stands for the basic proposition that when *Congress* acts pursuant to its Article I powers, the action is legislative. If Plaintiff's broad reading were true as to actions of the executive branch, that would mean any SEC decision which affected a person's "legal rights, duties, and relations of persons"—to include charging decisions which the Supreme Court has held involve prosecutorial discretion, <u>see</u> <u>Batchelder</u>, 442 U.S. at 124 —would be legislative actions. <u>See</u> <u>Chadha</u>, 462 U.S. at 953 n.16 (noting that when the head of an executive agency

performs his duties pursuant to statute, "he does not exercise 'legislative' power.") (citing Ernst & Ernst v. Hochfelder, 425 U.S. 185, 213-214 (1976)).

Plaintiff's reading does not comport with the Executive's constitutional role in faithfully executing the laws. Because Congress has properly delegated power to the executive branch to make the forum choice for the underlying SEC enforcement action, the Court finds that the Plaintiff cannot prove a substantial likelihood of success on the merits on his non-delegation claim.

### 2. Seventh Amendment

Plaintiff next argues that the SEC's decision to prosecute the claims against him in the administrative proceeding rather than the district court violates his Seventh Amendment right to a jury trial. Pl. Br., Dkt. No. [2-1] at 15. The Seventh Amendment provides, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." "The phrase 'Suits at common law' has been construed to refer to cases tried prior to the adoption of the Seventh Amendment in courts of law in which jury trial was customary as distinguished from courts of equity or admiralty in which jury trial was not." Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n, 430 U.S. 442, 449 (1977) (citing Parsons v. Bedford, 3 Pet. 433, 7 L.Ed. 732 (1830)). "[T]he Seventh Amendment also applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard

by courts of equity or admiralty." <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33,

42 (1989) (citing <u>Curtis v. Loether</u>, 415 U.S. 189, 193 (1974)).

> The form of [the Court's] analysis is familiar. "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." <u>Tull v. United States</u>, 481 U.S. 412, 417–418 (1987) (citations omitted). The second stage of this analysis is more important than the first. <u>Id.</u>, at 421. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.

<u>Granfinanciera</u>, 492 U.S. at 42.

The SEC does not dispute Plaintiff's argument that an enforcement action

for civil penalties is "clearly analogous to the 18th-century action in debt," <u>Tull</u>,

481 U.S. at 420, and this remedy is legal in nature. <u>See</u> <u>Tull</u>, 481 U.S. at 422 ("A

civil penalty was a type of remedy at common law that could only be enforced in

courts of law. Remedies intended to punish culpable individuals, as opposed to

those intended simply to extract compensation or restore the status quo, were

issued by courts of law, not courts of equity.").

Rather, the SEC contends that "Plaintiff's claim fails because it is firmly

established that Congress 'may assign th[e] adjudication' of cases involving so-

called 'public rights' to 'an administrative agency with which a jury trial would be

incompatible[] without violating the Seventh Amendment[] . . . even if the

Seventh Amendment would have required a jury where the adjudication of those

rights is assigned instead to a federal court of law.'" Def. Br., Dkt. No. [12] at 26

(alteration in the original) (quoting <u>Atlas Roofing</u>, 430 U.S. at 455). This Court
agrees.

"Public rights" cases are those which "arise between the Government and
persons subject to its authority 'in connection with the performance of the
constitutional functions of the executive or legislative departments.'" <u>Atlas
Roofing</u>, 430 U.S. at 457 (internal quotation omitted) (quoting <u>Crowell v. Benson</u>,
285 U.S. 22, 31 (1932)). Plaintiff does not dispute that this SEC enforcement
action involves a public right. <u>See</u> Pl. Reply, Dkt. No. [13] at 19-20. Because the
SEC is acting as a sovereign in the performance of its executive duties when it
pursues an enforcement action, the Court also agrees that this is a public rights
case.

Despite this being a public rights case, Plaintiff argues that Congress must
make the decision as to whether or not a new cause of action will contain a right
to a jury trial when Congress originally creates the cause of action. That is,
Plaintiff contends that the Seventh Amendment right can only be taken away at
the time Congress is creating the "*new* public right." <u>Id.</u> at 17-21 (emphasis
added). Plaintiff seizes on language from <u>Atlas Roofing</u> and <u>Granfinanciera</u> that
the public right must be "new" or "novel," to be excluded from the Seventh
Amendment's protections. <u>See</u> <u>Atlas Roofing</u>, 430 U.S. at 455 ("[W]hen Congress
creates *new* statutory 'public rights,' it may assign their adjudication to an
administrative agency with which a jury trial would be incompatible, without
violating the Seventh Amendment's injunction that jury trial is to be 'preserved'

in 'suits at common law.'") (emphasis added); <u>Granfinanciera</u>, 492 U.S. at 51

("Congress may devise *novel* causes of action involving public rights free from the

strictures of the Seventh Amendment if it assigns their adjudication to tribunals

without statutory authority to employ juries as factfinders.") (emphasis added).

This Court disagrees.

Plaintiff's argument puts form over substance and defines "new" in a way

that the Supreme Court did not intend. <u>See</u> <u>Tull</u>, 481 U.S. at 418 n.4 ("[T]he

Seventh Amendment is not applicable to administrative proceedings.").

Plaintiff's position is that Congress could have sent all enforcement actions for

unregistered persons to an administrative proceeding at the time the original

statute was drafted—because at that time, the public right was "new." But once it

decided unregistered persons such as Plaintiff would get a jury trial, as it initially

did in the Exchange Act, Plaintiff became "vested" with a Seventh Amendment

right that Congress is now powerless to remove.

The Court does not find Plaintiff's argument persuasive. In <u>Atlas Roofing</u>,

the Supreme Court stated, the "Government could commit the enforcement of

statutes and the imposition and collection of fines to the judiciary, in which event

jury trial would be required . . . , but [] the United States could also validly opt for

administrative enforcement, without judicial trials." 430 U.S. at 460 (internal

citation omitted). For cases involving public rights, Congress has the choice as to

whether or not a jury trial will be required. Congress does not tie its hands when

it initially creates a cause of action. Plaintiff cites no authority which specifically

holds that Congress may not change its mind and reassign *public rights* to administrative proceedings.[8]

> As the Supreme Court has stated,

> The point is that the Seventh Amendment was never intended to establish the jury as the exclusive mechanism for factfinding in civil cases. It took the existing legal order as it found it, and there is little or no basis for concluding that the Amendment should now be interpreted to provide an impenetrable barrier to administrative factfinding under otherwise valid federal regulatory statutes. We cannot conclude that the Amendment rendered Congress powerless when it concluded that remedies available in courts of law were inadequate to cope with a problem within Congress' power to regulate to create new public rights and remedies by statute and commit their enforcement, if it chose, to a tribunal other than a court of law such as an administrative agency in which facts are not found by juries.

Atlas Roofing, 430 U.S. at 460.

In enacting Dodd-Frank, Congress specifically noted that it was doing so in response to the financial crisis. Dodd-Frank Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) (stating the statute was enacted "[t]o promote the financial stability of the United States by improving accountability and transparency in the financial system, to end 'too big to fail', to protect the American taxpayer by ending bailouts, to protect consumers from abusive financial services practices . . . ."). Congress thus decided that to carry out its mission to "clean up" the financial

---

[8] Plaintiff argues under Granfinanciera that Congress may not reclassify or relabel a cause of action to avoid the Seventh Amendment. See Pl. Reply, Dkt. No. [13] at 18. However, Granfinanciera involved Congress relabeling a *private* right—to which the Seventh Amendment always attaches, see Atlas Roofing, 430 U.S. at 458—to create a supposed *public right*. See Granfinanciera, 492 U.S. at 60-61. It is undisputed that even the pre-Dodd-Frank claim involved a public right.

system, it would allow the SEC to bring actions in administrative proceedings "to administrative agencies with special competence in the relevant field." <u>Atlas Roofing</u>, 430 U.S. at 455. Congress found that the prior scheme was not working, and it redrafted the legislation. Because the legislation related to public rights, the Seventh Amendment does not prevent Congress from doing so. <u>See</u> <u>Atlas Roofing</u>, 430 U.S. at 460; <u>id.</u> at 461 ("Congress found the common-law and other existing remedies for work injuries resulting from unsafe working conditions to be inadequate to protect the Nation's working men and women. It created a new cause of action, and remedies therefor, unknown to the common law, and placed their enforcement in a tribunal supplying speedy and expert resolutions of the issues involved. The Seventh Amendment is no bar to the creation of new rights or to their enforcement outside the regular courts of law."). The Court finds that Plaintiff cannot prove a substantial likelihood of success on the merits on his Seventh Amendment claim as this claim involves a public right, and Congress has the right to send public rights cases to administrative proceedings.

### 3. Article II

Plaintiff next brings two claims under Article II of the Constitution: (1) that the ALJ's appointment violates the Appointments Clause of Article II because he was not appointed by the President, a court of law, or a department head, and (2) the ALJ's two-layer tenure protection violates the Constitution's separation of powers, specifically the President's ability to exercise Executive power over his inferior officers. Both of Plaintiff's arguments depend on this Court finding that

the ALJ is an inferior officer who would trigger these constitutional protections.
See U.S. Const. art. II § 2, cl. 2; Freytag v. Comm'r of Internal Revenue, 501 U.S.
868, 880 (1991); Free Enterprise, 561 U.S. at 484, 506. Therefore, the Court will
consider this threshold issue first.

### a. Inferior Officer

The issue of whether the SEC ALJ is an inferior officer or employee for
purposes of the Appointments Clause depends on the authority he has in
conducting administrative proceedings. The Appointments Clause of Article II of
the Constitution provides:

> [The President] shall nominate, and by and with the Advice and
> Consent of the Senate, shall appoint Ambassadors, other public
> Ministers and Consuls, Judges of the supreme Court, and all other
> Officers of the United States, whose Appointments are not herein
> otherwise provided for, and which shall be established by Law: but
> the Congress may by Law vest the Appointment of such inferior
> Officers, as they think proper, in the President alone, in the Courts of
> Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2. The Appointments Clause thus creates two classes of
officers: principal officers, who are selected by the President with the advice and
consent of the Senate, and inferior officers, whom "Congress may allow to be
appointed by the President alone, by the heads of departments, or by the
Judiciary." Buckley v. Valeo, 424 U.S. 1, 132 (1976). The Appointments Clause
applies to all agency officers including those whose functions are "predominately
quasi judicial and quasi legislative" and regardless of whether the agency officers

are "independent of the Executive in their day-to-day operations." Id. at 133

(quoting Humphrey's Executor v. United States, 295 U.S. 602, 625-26 (1935)).

"[A]ny appointee exercising significant authority pursuant to the laws of

the United States is an 'Officer of the United States,' and must, therefore, be

appointed in the manner prescribed by § 2, cl. 2, of [Article II]." Freytag, 501 U.S.

at 881 (quoting Buckley, 424 U.S. at 126) (alteration in the original). By way of

example, the Supreme "Court has held that district-court clerks, thousands of

clerks within the Treasury and Interior Departments, an assistant surgeon, a

cadet-engineer, election monitors, federal marshals, military judges, Article I

[Tax Court special trial] judges, and the general counsel for the Transportation

Department are inferior officers." Kent Barnett, Resolving the ALJ Quandary, 66

Vand. L. Rev. 797, 812 (2013) (citing Free Enterprise, 561 U.S. at 540 (Breyer, J.,

dissenting) (citing cases)).

Plaintiff claims that SEC ALJs are inferior officers because they exercise

"significant authority pursuant to the laws of the Unites States" while the SEC

contends ALJs are "mere employees" based upon Congress's treatment of them

and the fact that they cannot issue final orders and do not have contempt power,[9]

inter alia. The Court finds that based upon the Supreme Court's holding in

Freytag, SEC ALJs are inferior officers. See also Duka, 2015 WL 1943245, at *8

---

[9] ALJs can find people in contempt, but cannot compel compliance with their order. See 17 C.F.R. § 201.180 (noting an ALJ can punish "[c]ontemptuous conduct"); Def. Br., Dkt. No. [12] at 24 (stating ALJs lack "contempt power" and stating an ALJ cannot compel compliance with any subpoenas he issues).

("The Supreme Court's decision in <u>Freytag v. Commissioner</u>, 501 U.S. 868, 111 (1991), which held that a Special Trial Judge of the Tax Court was an 'inferior officer' under Article II, would appear to support the conclusion that SEC ALJs are also inferior officers.").

In <u>Freytag</u>, the Supreme Court was asked to decide whether special trial judges ("STJ") in the Tax Court were inferior officers under Article II. 501 U.S. at 880. The Government argued, much as the SEC does here, that STJs do "no more than assist the Tax Court judge in taking the evidence and preparing the proposed findings and opinion," <u>id.</u>, and they "lack authority to enter a final decision." <u>Id.</u> at 881; <u>see also</u> Def. Br., Dkt. No. [12] at 30-33 (arguing that SEC ALJs are not inferior officers because they cannot enter final orders and are subject to the SEC's "plenary authority"). The Supreme Court rejected that argument, stating that the Government's argument

> ignores the significance of the duties and discretion that special trial judges possess. The office of special trial judge is "established by Law," Art. II, § 2, cl. 2, and the duties, salary, and means of appointment for that office are specified by statute. <u>See</u> <u>Burnap v. United States</u>, 252 U.S. 512, 516–517 (1920); <u>United States v. Germaine</u>, 99 U.S. 508, 511–512 (1879). These characteristics distinguish special trial judges from special masters, who are hired by Article III courts on a temporary, episodic basis, whose positions are not established by law, and whose duties and functions are not delineated in a statute. Furthermore, special trial judges perform more than ministerial tasks. They take testimony, conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance with discovery orders. In the course of carrying out these important functions, the special trial judges exercise significant discretion.

<u>Freytag</u>, 501 U.S. at 881-82.

The Court finds that like the STJs in <u>Freytag</u>, SEC ALJs exercise "significant authority." The office of an SEC ALJ is established by law, and the "duties, salary, and means of appointment for that office are specified by statute." <u>Id.</u>; <u>see</u> <u>supra</u> (setting out the ALJ system, to include the establishment of ALJs and their duties, salary, and means of appointment). ALJs are permanent employees—unlike special masters—and they take testimony, conduct trial, rule on the admissibility of evidence, and can issue sanctions, up to and including excluding people (including attorneys) from hearings and entering default. 17 C.F.R. §§ 200.14 (powers); 201.180 (sanctions).

Relying on <u>Landry v. Federal Deposit Insurance Corp.</u>, 204 F.3d 1125 (D.C. Cir. 2000), the SEC argues that unlike the STJs who were inferior officers in <u>Freytag</u>, the SEC ALJs do not have contempt power and cannot issue final orders,[10] as the STJs could in limited circumstances. In <u>Landry</u>, the D.C. Circuit considered whether FDIC ALJs were inferior officers. The D.C. Circuit found FDIC ALJs, like the STJs, were established by law; their duties, salary, and means of appointment were specified by statute; and they conduct trials, take testimony,

---

[10] Plaintiff argues that SEC ALJ's can issue final orders because if the respondent does not petition the SEC to review the ALJ's initial order and the SEC does not decide to review the matter on its own, the action of the ALJ will be "deemed the action of the Commission." 15 U.S.C. § 78d-1(c). The SEC argues that the SEC retains plenary authority over ALJs and the regulations make clear that only when the SEC itself issues an order does the decision become final. Def. Br., Dkt. No. [24] at 2-3 (citing 17 C.F.R. § 201.360(d)(2)). This Court agrees with the SEC. Because the regulations specify that the SEC itself must issue the final order essentially "confirming" the initial order, the Court finds that SEC ALJs do not have final order authority.

rule on evidence admissibility, and enforce discovery compliance. 204 F.3d at

1133-34. And it recognized that <u>Freytag</u> found that those powers constituted the

exercise of "significant discretion . . . a magic phrase under the <u>Buckley</u> test." <u>Id.</u>

at 1134 (internal citation omitted).

 Despite the similarities of the STJs and the FDIC ALJs, the <u>Landry</u> court

applied <u>Freytag</u> as holding that whether the entity had the authority to render a

final decision was a dispositive factor. According to the D.C. Circuit, <u>Freytag</u>

"noted that [(1)] STJs have the authority to render the *final* decision of the Tax

Court in declaratory judgment proceedings and in certain small-amount tax

cases," and (2) the "Tax Court was required to defer to the STJ's factual and

credibility findings unless they were clearly erroneous." <u>Landry</u>, 204 F.3d at 1133

(emphasis in original). While recognizing that the <u>Freytag</u> court "introduced

mention of the STJ's power to render final decisions with something of a shrug,"

<u>Landry</u> held that FDIC ALJ's were not inferior officers because did not have the

"power of final decision in certain classes of cases." <u>Id.</u> at 1134.

 The concurrence rejected the majority's reasoning, finding that <u>Freytag</u>

"cannot be distinguished" because "[t]here are no relevant differences between

the ALJ in this case and the [STJ] in <u>Freytag</u>." <u>Id.</u> at 1140, 1141. After first

explaining that the Supreme Court actually found the Tax Court's deference to

the STJ's credibility findings was irrelevant to its analysis,[11] the concurrence

---

[11] The Supreme Court stated that Tax Court Rule 183, which established the
deferential standard, was "not relevant to [its] grant of certiorari," and noted that

stated that the majority's "first distinction of <u>Freytag</u> is thus no distinction at all."
<u>Id.</u> at 1142. The concurrence also noted that the majority's holding in <u>Landry</u>
(which ultimately relied on the FDIC ALJ's lack of final order authority) was
based on an *alternative* holding from <u>Freytag</u> as the Supreme Court had already
determined the STJs were inferior officers before it analyzed the final order
authority issue. <u>Landry</u>, 204 F.3d at 1142.

Similarly, this Court concludes that the Supreme Court in <u>Freytag</u> found
that the STJs powers—which are nearly identical to the SEC ALJs here—were
independently sufficient to find that STJs were inferior officers. <u>See also</u> <u>Butz v.</u>
<u>Economou</u>, 438 U.S. 478, 513 (1978) ("There can be little doubt that the role of
the . . . administrative law judge . . . is ' functionally comparable' to that of a
judge. His powers are often, if not generally, comparable to those of a trial judge:
He may issue subpoenas, rule on proffers of evidence, regulate the course of the
hearing, and make or recommend decisions."); <u>see also</u> <u>Edmond v. United States</u>,
520 U.S. 651, 663 (1997) ("[W]e think it evident that 'inferior officers' are officers
whose work is directed and supervised at some level by others who were
appointed by Presidential nomination with the advice and consent of the
Senate."). Only after it concluded STJs were inferior officers did <u>Freytag</u> address
the STJ's ability to issue a final order; the STJ's limited authority to issue final
orders was only an additional reason, not *the* reason. Therefore, the Court finds

---

it would say no more about the rule than to say that the STJ did not have final
authority to decide Petitioner's case. <u>Freytag</u>, 501 U.S. at 874 n.3; <u>see also</u>
<u>Landry</u>, 204 F.3d at 1142 (Randolph, J., concurring).

that <u>Freytag</u> mandates a finding that the SEC ALJs exercise "significant authority" and are thus inferior officers.

The SEC also argues that this Court should defer to Congress's apparent determination that ALJs are inferior officers. In the SEC's view, Congress is presumed to know about the Appointments Clause, and it decided to have ALJs appointed through OPM and subject to the civil service system; thus, Congress intended for ALJs to be employees according to the SEC. <u>See</u> Def. Br. [12] at 33-37. But "[t]he Appointments Clause prevents Congress from dispensing power too freely; it limits the universe of eligible recipients of the power to appoint." <u>Freytag</u>, 501 U.S. at 880. Congress may not "decide" an ALJ is an employee, but then give him the powers of an inferior officer; that would defeat the separation-of-powers protections the Clause was enacted to protect. The Court finds that SEC ALJs are inferior officers.

### b. Appointments Clause Violation

Because SEC ALJs are inferior officers, the Court finds Plaintiff has established a likelihood of success on the merits on his Appointments Clause claim. Inferior officers must be appointed by the President, department heads, or courts of law. U.S. Const. art. II § 2, cl. 2. Otherwise, their appointment violates the Appointments Clause.

The SEC concedes that Plaintiff's ALJ, James E. Grimes, was not appointed by an SEC Commissioner. <u>See</u> Def. Br., Dkt. No. [15] at 2; <u>see also</u> <u>Free Enterprise</u>, 561 U.S. at 511-512 (finding that the SEC Commissioners jointly

constitute the "head" of the SEC for appointment purposes). The SEC ALJ was not appointed by the President, a department head, or the Judiciary. Because he was not appropriately appointed pursuant to Article II, his appointment is likely unconstitutional in violation of the Appointments Clause.[12]

### 4. Remaining Preliminary Injunction Factors

The Court finds that Plaintiff has also satisfied the remaining preliminary injunction factors. First, Plaintiff will be irreparably harmed if this injunction does not issue because if the SEC is not enjoined, Plaintiff will be subject to an unconstitutional administrative proceeding, and he would not be able to recover monetary damages for this harm because the SEC has sovereign immunity. See Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp., 715 F.3d 1268, 1289 (11th Cir. 2013) ("In the context of preliminary injunctions, numerous courts have held that the inability to recover monetary damages because of sovereign immunity renders the harm suffered irreparable.") (collecting cases); see also Cunningham v. Adams, 808 F.2d 815, 821 (11th Cir. 1987) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."). If the administrative proceeding is not enjoined, Plaintiff's requested relief here would also become

---

[12] Because the Court finds Plaintiff can establish a likelihood of success on his Appointments Clause claim, the Court declines to decide at this time whether the ALJ's two-layer tenure protections also violate Article II's removal protections. However, the Court has serious doubts that it does, as ALJs likely occupy "quasi-judicial" or "adjudicatory" positions, and thus these two-layer protections likely do not interfere with the President's ability to perform his duties. See Duka, 2015 WL 1943245, at *8-10; see also Humphrey's Executor, 295 U.S. at 628-29, 631-32.

moot as the Court of Appeals would not be able to enjoin a proceeding which has already occurred. See supra at 15, 18-19 (explaining Plaintiff's harm).

Second, the Court finds that the public interest and the balance of equities are in Plaintiff's favor. The public has an interest in assuring that citizens are not subject to unconstitutional treatment by the Government, and there is no evidence the SEC would be prejudiced by a brief delay to allow this Court to fully address Plaintiff's claims. The SEC claims that the public interest weighs in its favor because the SEC is charged with "protect[ing] investors and maintain[ing] the integrity of the securities markets." Def. Br., Dkt. No. [12] at 44 (citing Duka, 2015 WL 1943245, at *7 n.13). But the Court does not find that it is ever in the public interest for the Constitution to be violated. The Supreme Court has held that the Appointments Clause "not only guards against [separation-of-powers] encroachment but also preserves another aspect of the Constitution's structural integrity by preventing the diffusion of the appointment power." Freytag, 501 U.S. at 878. Both are important to the public interest. The Court further notes that the SEC is not foreclosed from pursing Plaintiff in federal court or in an administrative proceeding before an SEC Commissioner, and thus any small harm which it might face could be easily cured by the SEC itself.

### III. Conclusion

Because the Court finds Plaintiff has proved a substantial likelihood of success on the merits of his claim that the SEC has violated the Appointments Clause as well as the other factors necessary for the grant of a preliminary

injunction, the Court finds a preliminary injunction is appropriate to enjoin the SEC administrative proceeding and to allow the Court sufficient time to consider this matter on the merits.

The Court notes that this conclusion may seem unduly technical, as the ALJ's appointment could easily be cured by having the SEC Commissioners issue an appointment or preside over the matter themselves. However, the Supreme Court has stressed that the Appointments Clause guards Congressional encroachment on the Executive and "preserves the Constitution's structural integrity by preventing the diffusion of appointment power." Freytag, 501 U.S. at 878. This issue is "neither frivolous or disingenuous." Id. at 879. The Article II Appointments Clause is contained in the text of the Constitution and is an important part of the Constitution's separation of powers framework.

In addition, the Appointments Clause may not be waived, not even by the Executive. Id. at 880 ("Neither Congress nor the Executive can agree to waive this structural protection."). As this likely Appointment Clause violation "goes to the validity of the [administrative] proceeding that is the basis for this litigation," id. at 879, it is hereby **ORDERED** that Defendant, the Securities and Exchange Commission, is preliminarily enjoined from conducting the administrative proceeding brought against Plaintiff, captioned In the Matter of Charles L. Hill, Jr., Administrative Proceeding File No. 3-16383 (Feb. 11, 2015), including the hearing scheduled for June 15, 2015, before an Administrative Law Judge who has not been appointed by the head of the Department. This order shall remain in

effect until it is further modified by this Court or until resolution of Plaintiff's claim for permanent injunctive relief, whichever comes first.

The parties are **DIRECTED** to confer on a timetable for conducting discovery and briefing the remaining issues. The parties are then **DIRECTED** to submit by June 15, 2015, a consent scheduling order to the Court for consideration. If the parties are unable to agree to the terms of a scheduling order, the parties can submit their alternative submissions.

**IT IS SO ORDERED** this 8th day of June, 2015.

LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE