**No. 15-12831**

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

———————

CHARLES L. HILL, JR.,

Plaintiff-Appellee,

v.

SECURITIES AND EXCHANGE
COMMISSION,

Defendant-Appellant.

———————

On Appeal from the United States District Court
for the Northern District of Georgia

———————

## BRIEF FOR THE APPELLANT

———————

BENJAMIN C. MIZER
*Principal Deputy Assistant Attorney General*

JOHN A. HORN
*Acting United States Attorney*

BETH S. BRINKMANN
*Deputy Assistant Attorney General*

MARK B. STERN
MARK R. FREEMAN
MEGAN BARBERO
*(202) 532-4631*
*Attorneys, Appellate Staff*
*Civil Division, Room 7226*
*U.S. Department of Justice*
*950 Pennsylvania Ave., N.W.*
*Washington, D.C. 20530*

## AMENDED CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-1, the undersigned counsel certifies that, to the best of our knowledge, the following persons and entities may have an interest in the outcome of this case:

Barbero, Megan

Berns, Matthew J.

Brinkmann, Beth S.

Desai, Akash R.

Forstein, Samuel

Freeman, Mark R.

Grimes, James E., Administrative Law Judge

Grogg, Adam

Hartnett, Kathleen R.

Hill, Charles L., Jr.

Horn, John Andrew

Hudson, Stephen E.

Humes, Richard M.

Kilpatrick Townsend & Stockton, LLP

Lin, Jean

Loomis, Graham M. (added)

May, Leigh Martin, U.S. District Judge

Mayes, Joshua A.

Mizer, Benjamin C.

Myers, Steven A.

Ricketts, Jennifer

Rightler, Hillary D.

Roback, Harry B.

Rudy, Susan K.

Sandberg, Justin M.

Securities and Exchange Commission

Sommerfeld, Lawrence R.

Spencer, Elissa

Stern, Mark B.

*s/ Megan Barbero*
_____
MEGAN BARBERO

## STATEMENT REGARDING ORAL ARGUMENT

The district court enjoined an ongoing administrative enforcement proceeding brought by the Securities and Exchange Commission against plaintiff Charles L. Hill, Jr.  The government respectfully requests that the Court hear oral argument to facilitate its consideration of the significant questions presented.

# TABLE OF CONTENTS

**Page**

AMENDED CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT

STATEMENT REGARDING ORAL ARGUMENT

INTRODUCTION ..................................................................................................1

JURISDICTIONAL STATEMENT .......................................................................3

STATEMENT OF THE ISSUES............................................................................3

STATEMENT OF THE CASE................................................................................4

      A.     The Appointments Clause..............................................................4

      B.     Statutory Background.....................................................................5

      C.     Prior Proceedings...........................................................................7

SUMMARY OF ARGUMENT...............................................................................9

STANDARD OF REVIEW ..................................................................................14

ARGUMENT ........................................................................................................15

      I.     THE DISTRICT COURT'S JURISDICTIONAL AND CONSTITUTIONAL
           HOLDINGS ARE PREMISED ON ERRORS OF LAW .......................................15

           A.     The District Court Lacks Jurisdiction Over SEC
                 Administrative Proceedings, Which Are Subject To
                 Direct Review In The Court Of Appeals......................................15

           B.     The SEC ALJs Are Employees, Not Inferior Officers.................26

      II.    THE DISTRICT COURT ERRED IN ASSESSING THE IMPACT OF
           GRANTING OR WITHHOLDING EQUITABLE RELIEF..................................35

CONCLUSION ..................................................................................................................41

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF CITATIONS

**Cases:**                                                                              **Page**

*Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.*,

   750 F.2d 81 (D.C. Cir. 1984) ........................................................21

*Altman v. SEC*,

   687 F.3d 44 (2d Cir. 2012) ..........................................................18

*American Gen. Ins. Co. v. FTC*,

   496 F.2d 197 (5th Cir. 1974) ......................................................18

*Bebo v. SEC*,

   No. 15-00003, 2015 WL 905349 (E.D. Wis. Mar. 3, 2015),

   *appeal pending,* No. 15-1511 (7th Cir.) ...................................19

*Bonner v. City of Prichard*,

   661 F.2d 1206 (11th Cir. 1981).....................................................18

*Bowen v. Georgetown Univ. Hosp.*,

   488 U.S. 204, 215 (1988) .............................................................28

*Brock v. Cathedral Bluffs Shale Oil Co.*,

   796 F.2d 533 (D.C. Cir. 1986) ....................................................28

*Buckley v. Valeo*,

   424 U.S. 1 (1976) ..............................................................4, 5, 26

*Authorities upon which we chiefly rely are marked with asterisks.

*Charles Hughes & Co. v. SEC,*

    139 F.2d 434 (2d Cir. 1943) ...........................................................27

*Chau v. SEC,*

    __ F. Supp. 3d __, No. 14-CV-1903, 2014 WL 6984236

    (S.D.N.Y. Dec. 11, 2014), *appeal pending*, No. 15-461 (2d Cir.) ....................................19

*Deaver v. Seymour,*

    822 F.2d 66 (D.C. Cir. 1987) .................................................. 26, 36

*Doe v. FAA,*

    432 F.3d 1259 (11th Cir. 2005)......................................................17

*Duka v. SEC,*

    No. 15 Civ. 357, 2015 WL 1943245 (S.D.N.Y. Apr. 15, 2015) ....................................19

*Eastern Bridge, LLC v. Chao,*

    320 F.3d 84 (1st Cir. 2003)..........................................................19

*\*Elgin v. Department of the Treasury,*

    132 S. Ct. 2126 (2012)............................................2, 10, 16, 17, 24, 37

*\*Free Enter. Fund v. Public Co. Accounting Oversight Board,*

    561 U.S. 477 (2010) .......................................... 10, 11, 16, 22, 23, 29

*\*Freytag v. Commissioner of Internal Revenue,*

    501 U.S. 868 (1991) ...........................................2, 8, 12, 31, 32, 33

*Frito-Lay, Inc. v. FTC,*

    380 F.2d 8 (5th Cir. 1967) ...........................................................17

*FTC v. Standard Oil Co.,

    449 U.S. 232 (1980) ...............................................................................3, 13, 25, 36, 37

George Kabeller, Inc. v. Busey,

    999 F.2d 1417 (11th Cir. 1993)........................................................................................20

Imperial Carpet Mills, Inc. v. Consumer Prods. Safety Comm'n,

    634 F.2d 871 (5th Cir. 1981) ....................................................................................... 3, 36

In re al-Nashiri,

    __ F.3d__, No. 14-1203, 2015 WL 3851966 (D.C. Cir. June 23, 2015) .........3, 13, 36

INS v. Legalization Assistance Project,

    510 U.S. 1301 (1993) .......................................................................................................40

Jarkesy v. SEC,

    48 F. Supp. 3d 32 (D.D.C. 2014),

    appeal pending, No. 14-5196 (D.C. Cir.) .................................................................. 18, 19

JCC, Inc. v. Commodity Futures Trading Comm'n,

    63 F.3d 1557 (11th Cir. 1995)................................................................................... 28, 33

*LabMD, Inc. v. FTC,

    776 F.3d 1275 (11th Cir. 2015)................................................................................. 17, 23

*Landry v. FDIC,

    204 F.3d 1125 (D.C. Cir. 2000) ...............................................................................passim

LSSI Data Corp. v. Comcast Phone, LLC,

    696 F.3d 1114 (11th Cir. 2012)........................................................................................35

*Nash v. Bowen,*

　869 F.2d 675 (2d Cir. 1989) ......................................................................28

*National Taxpayers Union v. U.S. Soc. Sec. Admin.,*

　376 F.3d 239 (4th Cir. 2004) .....................................................................19

*Public Util. Comm'r of Ore. v. Bonneville Power Admin.,*

　767 F.2d 622 (9th Cir. 1985) ...............................................................20, 21

*Ramspeck v. Federal Trial Exam'rs Conference,*

　345 U.S. 128 (1953) ..............................................................................27, 34

*Samuels, Kramer & Co. v. Commissioner of Internal Revenue,*

　930 F.2d 975 (2d Cir. 1991) .....................................................................34

*Schweiker v. McClure,*

　452 U.S. 1301 (1981) .................................................................................40

*SEC v. R.A. Holman & Co.,*

　323 F.2d 284 (D.C. Cir. 1963) ..................................................................21

*Siegel v. LePore,*

　234 F.3d 1163 (11th Cir. 2000) .................................................................36

*Spring Hill Capital Partners, LLC v. SEC,*

　No. 15-cv-4542 (S.D.N.Y June 29, 2015) ................................................19

*Sturm, Ruger & Co. v. Chao,*

　300 F.3d 867 (D.C. Cir. 2002) .............................................................20, 25

*Telecommunications Research & Action Ctr. v. FCC,*

    750 F.2d 70 (D.C. Cir. 1984) ........................................................................20

*\*Thunder Basin Coal Co. v. Reich,*

    510 U.S. 200 (1994) ...............................................................10, 15, 16, 24, 25

*Tilton v. SEC,*

    No. 15-CV-2472 (S.D.N.Y. June 30, 2015),

    *appeal pending,* No. 15-2103 (2d Cir.) ............................................................18

*United States v. Mouat,*

    124 U.S. 303 (1888) ....................................................................................34

*U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC,*

    749 F.3d 967 (11th Cir. 2014) .......................................................................14

*Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.,*

    435 U.S. 519 (1978) ....................................................................................28

*Warren Publ'g, Inc. v. Microdos Data Corp.,*

    115 F.3d 1509 (11th Cir. 1997)......................................................................35

*Weiss v. United States,*

    510 U.S. 163 (1994) ....................................................................................34

**Constitution:**

U.S. Const. art. II, § 2, cl. 2 ............................................................................ 4, 26

**Statutes:**

Dodd-Frank Wall Street Reform and Consumer Protection Act,

    Pub. L. No. 111-203, 124 Stat. 1376 (2010) ...................................................5

Pub. L. No. 79-404, 60 Stat. 237 (1946) ...........................................................34

5 U.S.C. § 557(b) ...............................................................................................28

5 U.S.C. § 1101 *et seq.* .....................................................................................28

5 U.S.C. § 1104 ...................................................................................................29

5 U.S.C. § 1204 ...................................................................................................28

5 U.S.C. § 1212 ...................................................................................................28

5 U.S.C. § 1214 ...................................................................................................28

5 U.S.C. § 1215 ...................................................................................................28

5 U.S.C. § 1221 ...................................................................................................28

5 U.S.C. § 1302 ...................................................................................................29

5 U.S.C. § 2301 ...................................................................................................28

5 U.S.C. § 3105 ...................................................................................................34

5 U.S.C. § 3313 ...................................................................................................29

5 U.S.C. § 3317 ...................................................................................................29

5 U.S.C. § 3318 ...................................................................................................29

15 U.S.C. § 77i(a) .................................................................................................6

15 U.S.C. § 78u(d) ........................................................................................... 1, 5

15 U.S.C. § 78u(e) ...............................................................................................33

15 U.S.C. § 78u-1 ................................................................................ 1, 5

15 U.S.C. § 78u-2 ................................................................................ 1, 5

15 U.S.C. § 78u-2(a)(2) ...........................................................................5

15 U.S.C. § 78u-3 .......................................................................1, 5, 7, 18

15 U.S.C. § 78y .............................................................................. 10, 21

15 U.S.C. § 78y(a)(1) ......................................................................... 6, 18

15 U.S.C. § 78y(a)(2) ...............................................................................6

15 U.S.C. § 78y(a)(3) ...............................................................................6

15 U.S.C. § 78y(a)(4) ...............................................................................6

15 U.S.C. § 78y(c)(2) ...............................................................................6

15 U.S.C. § 80a-42(a) ..............................................................................6

15 U.S.C. § 80b-13(a) ..............................................................................6

26 U.S.C. § 7456(a) ...............................................................................33

28 U.S.C. § 1292(a)(1) .............................................................................3

28 U.S.C. § 1331 ....................................................................................3

**Regulations:**

5 C.F.R. § 332.401 ................................................................................29

5 C.F.R. § 332.402 ................................................................................29

5 C.F.R. § 332.404 ................................................................................29

5 C.F.R. § 930.201(b) ............................................................................28

5 C.F.R. § 930.201(d)-(e) ................................................................29

5 C.F.R. § 930.201(e)(2) ................................................................29

5 C.F.R. § 930.201(e)(3) ................................................................29

5 C.F.R. § 930.203 ................................................................29

17 C.F.R. § 201.101(a)(5) ................................................................ 6, 29

17 C.F.R. § 201.110 ................................................................5

17 C.F.R. § 201.360 ................................................................6

17 C.F.R. § 201.360(a)(1) ................................................................30

17 C.F.R. § 201.360(d) ................................................................6

17 C.F.R. § 201.360(d)(2) ................................................................30

17 C.F.R. § 201.400(a) ................................................................30

17 C.F.R. § 201.410 ................................................................6

17 C.F.R. § 201.411(a) ................................................................6, 30, 33

17 C.F.R. § 201.411(f) ................................................................31

17 C.F.R. § 201.452 ................................................................6, 31, 33

**Rules:**

Tax Court Rule 181 ................................................................33

Tax Court Rule 183(c), 26 U.S.C. App. (1994) ................................................................33

**Legislative Materials:**

S. Rep. No. 101-337 (1990) ................................................................ 14, 38

*The Securities Law Enforcement Remedies Act of 1989: Hearings on S. 647 Before the*

*Subcomm. on Securities of the S. Comm. on Banking, Housing, and Urban Affairs*,

101st Cong. 34 (1990) ...............................................................................14, 38


**Other Authorities:**

U.S. Dep't of Justice, *Attorney General's Manual on the Administrative*

*Procedure Act* (1947) ..............................................................................27

U.S. Securities & Exchange Comm'n proceedings:

*Dian Min Ma,* Exchange Act Release No. 74887,

2015 WL 2088438 (May 6, 2015) ................................................................30

*George C. Kern, Jr.*, Exchange Act Release No. 29356,

1991 WL 284804 (June 21, 1991) ..............................................................30

*Hunter Adams*, Exchange Act Release No. 52859,

2005 WL 3240600 (Nov. 30, 2005) ............................................................30

*Kenneth R. Ward*, Exchange Act Release No. 47535,

2003 WL 1447865 (Mar. 19, 2003) ............................................................33

*Michael Lee Mendenhall*, Exchange Act Release No. 74532,

2015 WL 1247374 (Mar. 19, 2015) .......................................................30, 32

*Raymond J. Lucia Cos.*, Exchange Act Release No. 540,

2013 WL 6384274 (Dec. 6, 2013) ..............................................................30

# INTRODUCTION

The Securities Exchange Act of 1934 authorizes the Securities and Exchange Commission (SEC) to address violations of the securities laws by filing an enforcement action in federal district court or, at the Commission's option, in proceedings before the agency.  *See, e.g.*, 15 U.S.C. §§ 78u(d), 78u-1, 78u-2, 78u-3.  If the Commission elects to proceed administratively, it may choose to have an administrative law judge (ALJ) act as a hearing officer and provide an initial decision.  Jurisdiction to review final orders of the Commission is vested exclusively in the courts of appeals.

The district court in this case nonetheless preliminarily enjoined an ongoing SEC administrative enforcement proceeding.  In February 2015, the Commission brought administrative charges against plaintiff Charles L. Hill, Jr. for insider trading.  Hill asserted that the Commission's choice to proceed administratively, rather than in district court, violated his constitutional rights in various respects.  When the administrative law judge did not grant his motion for summary disposition, Hill filed this collateral attack on the Commission proceedings in federal district court.  Although the district court recognized that Hill can obtain de novo review of his constitutional arguments in the court of appeals if he is aggrieved by the Commission's final order, the district court held that it had jurisdiction to entertain Hill's collateral attack and preliminarily enjoined the entire SEC proceeding, accepting

Hill's claim that the administrative law judge presiding over his evidentiary hearing was not properly appointed under the Constitution.

The district court's order rests on two fundamental errors of law. As a threshold matter, the district court lacked jurisdiction to enjoin an ongoing Commission enforcement proceeding. Review of the Commission's administrative proceedings is vested exclusively in the court of appeals, and a district court has no authority to pretermit the court of appeals' direct review. *See, e.g.*, *Elgin v. Department of the Treasury*, 132 S. Ct. 2126 (2012). On the merits, the district court erred in endorsing Hill's assertion that an ordinary administrative law judge is an "inferior officer" of the United States who must be appointed in the manner prescribed by the Appointments Clause. The court's analysis is based on a misreading of *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868 (1991)—an interpretation that, as the district court itself acknowledged, conflicts with the D.C. Circuit's decision in *Landry v. FDIC*, 204 F.3d 1125 (D.C. Cir. 2000), which held that ALJs employed by the Federal Deposit Insurance Corporation are not inferior officers.

The district court further erred in weighing the balance of harms and the public interest. For the protection of investors and to enhance the enforcement of the federal securities laws, Congress expressly authorized the SEC to enforce the Exchange Act through administrative enforcement proceedings, as the Commission has elected to do here. The district court afforded no respect to the public interest expressed in that congressional judgment, and instead concluded that a preliminary

2

injunction was warranted to relieve Hill of any obligation to participate in the
Commission's proceeding.  As the Supreme Court and this Court have repeatedly
stressed, however, requiring a litigant to wait until allegedly unlawful administrative
proceedings are resolved to obtain judicial review does not constitute irreparable
injury that supports injunctive relief.  *See FTC v. Standard Oil Co.*, 449 U.S. 232, 244
(1980); *Imperial Carpet Mills, Inc. v. Consumer Prods. Safety Comm'n*, 634 F.2d 871, 874 (5th
Cir. 1981) (per curiam).  Just as clearly, the fact that Hill challenges an ALJ's
appointment on constitutional grounds does not make his participation in the
administrative proceedings an irreparable injury.  *See In re al-Nashiri*, __ F.3d__, No.
14-1203, 2015 WL 3851966, at *7 (D.C. Cir. June 23, 2015) (holding that trial before
judges of the Court of Military Commission Review allegedly appointed in violation of
the Appointments Clause does not cause irreparable harm).

## JURISDICTIONAL STATEMENT

Plaintiff alleged that the district court possessed jurisdiction under, *inter alia*, 28
U.S.C. § 1331.  Dkt. 17, at 6.  The district court entered a preliminary injunction on
June 8, 2015.  Dkt. 28.  The Securities and Exchange Commission filed a timely notice
of appeal on June 24, 2015.  Dkt. 32.  This Court has appellate jurisdiction pursuant
to 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUES

Charles L. Hill, Jr. is respondent in ongoing administrative proceedings before
the Securities and Exchange Commission.  He filed this collateral action in district

court to enjoin the administrative proceedings on various constitutional grounds.  The questions presented are:

1.  Whether the district court had jurisdiction to entertain Hill's constitutional claims, which can be raised on direct review in the court of appeals if Hill is aggrieved by a final order of the Commission.

2.  Whether the district court erred in concluding that the administrative law judge acting as the hearing examiner in Hill's administrative proceeding is an "inferior officer" within the meaning of the Appointments Clause, U.S. Const. art. II, § 2, cl. 2.

3.  Whether the district court erred in concluding that Hill would suffer irreparable harm in the absence of an injunction and that the government and the public interest would not be injured by halting enforcement proceedings.

## STATEMENT OF THE CASE

### A.    The Appointments Clause

The Appointments Clause provides that the President shall appoint all "Officers of the United States," whose appointments are not otherwise provided for in the Constitution, "but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."  U.S. Const. art. II, § 2, cl. 2.  The Appointments Clause speaks exclusively to "officers," a category that includes only persons who "exercis[e] significant authority pursuant to the laws of the United States," *Buckley v.*

4

*Valeo*, 424 U.S. 1, 125-26 (1976), and does not include "lesser functionaries subordinate to officers of the United States," *id.* at 126 n.162.

### B.    Statutory Background

The Securities Exchange Act of 1934 (Exchange Act) authorizes the Commission to address violations of the securities laws by filing an enforcement action in federal district court or, if the Commission chooses, by commencing enforcement proceedings before the agency. *See, e.g.*, 15 U.S.C. §§ 78u(d), 78u-1, 78u-2, 78u-3. The statute authorizes the SEC to institute administrative cease-and-desist proceedings against "any person" for violating the Exchange Act, *id.* § 78u-3, and to impose civil monetary penalties in such proceedings, *id.* § 78u-2(a)(2).

Prior to enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act), Pub. L. No. 111-203, 124 Stat. 1376 (2010), the SEC could impose monetary penalties in administrative proceedings only against regulated entities—*e.g.*, registered securities brokers—and persons associated with such entities. Section 929P of the Dodd-Frank Act, 124 Stat. at 1863, amended 15 U.S.C. § 78u-2 to authorize the Commission to impose civil penalties against non-regulated persons and entities in cease-and-desist proceedings as well.

The SEC's Rules of Practice specify that each proceeding will be presided over by the Commission itself or, if the Commission so decides, a "hearing officer." 17 C.F.R. § 201.110. The Commission may designate an ALJ, a panel of Commissioners, an individual Commissioner, or a duly authorized person to be the hearing officer.

5

*Id.*; *see also id.* § 201.101(a)(5). A hearing officer typically has 300 days from the date on which an action is instituted to issue an "initial decision." *Id.* § 201.360. The initial decision is subject to de novo review by the Commission, which may include the submission of additional evidence where appropriate. *See id.* §§ 201.410, 201.411(a), 201.452. Regardless of whether further review is sought, the Commission alone has the authority to issue the final decision of the agency in the proceeding. *See id.* § 201.360(d).

The federal securities laws provide for direct review in the courts of appeals of final orders of the Commission. Section 25(a)(1) of the Exchange Act provides, in relevant part, that "[a] person aggrieved by a final order of the Commission . . . may obtain review of the order" in the D.C. Circuit or the appropriate regional circuit by filing a petition for review. 15 U.S.C. § 78y(a)(1).[1] The court of appeals has "exclusive" jurisdiction to "affirm or modify and enforce or to set aside the order in whole or in part." *Id.* § 78y(a)(3).

The appellate review provisions of Section 25(a) also prescribe a comprehensive process for seeking such review, including:  what constitutes the agency record, 15 U.S.C. § 78y(a)(2); the standard of review of the Commission's factual findings, *id.* § 78y(a)(4); and the process for seeking a stay of the Commission order either before the Commission or in the court of appeals, *id.* § 78y(c)(2).

---

[1] *See also* 15 U.S.C. § 77i(a) (Securities Act of 1933); *id.* § 80b-13(a) (Investment Advisers Act of 1940); *id.* § 80a-42(a) (Investment Company Act of 1940).

6

### C.    Prior Proceedings

1.    Plaintiff Charles L. Hill, Jr. is a self-employed real estate developer.  In 2011, Hill purchased and then sold a large quantity of stock in Radiant Systems, Inc., making a profit of approximately $744,000.  Dkt. 28, at 2.  The SEC investigated these transactions for nearly two years.  *Id.*

On February 17, 2015, the SEC initiated administrative enforcement proceedings against Hill pursuant to Section 21C of the Exchange Act, 15 U.S.C. § 78u-3, alleging that Hill had made these transactions on the basis of material, non-public information about another company's potential acquisition of Radiant in violation of Section 14(e) of the Exchange Act and Rule 14e-3.  *See* Dkt. 28, at 2-3. The Commission designated an administrative law judge to act as the hearing officer and prepare an initial decision.

Hill moved for summary disposition, asserting three constitutional arguments: that (1) the proceedings violate Article II of the Constitution because ALJs are protected by two layers of tenure protection; (2) the proceedings violate the non-delegation doctrine; and (3) the proceedings violate Hill's Seventh Amendment right to jury trial.  *See* Dkt. 28, at 10 (describing administrative proceedings).  In a May 14 ruling, the ALJ concluded that he did not have authority to address the second and third issues.  Dkt. 2-4, at 10-11.  The ALJ expressed doubt regarding his authority to address the Article II question but rejected that claim on the merits.  *Id.* at 3-9.

2.  On May 19, shortly before the oral hearing in front of the administrative law judge was scheduled to commence, Hill filed this collateral action in district court seeking to enjoin the administrative proceedings on the basis of the same constitutional arguments.  Dkt. 1.  In an amended complaint, Hill added a claim that the ALJ's appointment violated the Appointments Clause.  Dkt. 17, at 34-36.

On June 8, the district court issued a preliminary injunction.  Dkt. 28.  The court first held that it had jurisdiction to consider Hill's constitutional claims, even though review of those claims would be available on direct review in the court of appeals at the conclusion of the administrative proceedings.  *Id.* at 11-22.  The court declared that an injunction was appropriate because, absent preliminary relief, "Plaintiff could raise his constitutional arguments only after going through the process he contends is unconstitutional."  *Id.* at 15.

Addressing the merits, the court found plaintiff's non-delegation and Seventh Amendment contentions to be unlikely to succeed (Dkt. 28, at 29, 34), but concluded that Hill was likely to prevail on his Appointments Clause challenge, finding that the role of the Commission's ALJs is not meaningfully distinguishable from that played by the special trial judges of the Tax Court at issue in *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868 (1991) (*see* Dkt. 28, at 38-41).  In so holding, the district court expressly rejected the reasoning of the D.C. Circuit in *Landry v. FDIC*, 204 F.3d 1125, 1133 (D.C. Cir. 2000) (holding that ALJs of the FDIC are not inferior officers).  Dkt. 28, at 39-40.  The district court did not address Hill's removal-power contentions, but

8

expressed "serious doubts" that plaintiff could prevail on this argument because "ALJs likely occupy 'quasi-judicial' or 'adjudicatory' positions, and thus these two-layer protections likely do not interfere with the President's ability to perform his duties." *Id.* at 42 n.12.

The court preliminarily enjoined the SEC "from conducting the administrative proceeding brought against Plaintiff . . . including the hearing scheduled for June 15, 2015, before an Administrative Law Judge who has not been appointed by the head of the Department." Dkt. 28, at 44. The SEC sought a stay of the preliminary injunction pending appeal from the district court and this Court. Those motions are still pending.

## SUMMARY OF ARGUMENT

Congress expressly authorized the Securities and Exchange Commission to enforce the nation's securities laws through administrative proceedings and stipulated that judicial review shall be available directly in the court of appeals. Nothing in the Exchange Act or any other statute contemplates any role for district courts in reviewing the Commission's conduct of such a proceeding. The district court in this case nonetheless entertained Hill's collateral attack on the Commission's authority and preliminarily enjoined an ongoing SEC enforcement proceeding, crediting a constitutional theory that no court has previously accepted and the D.C. Circuit has squarely rejected.

**I.** The district court's injunction is premised on two errors of law.

9

*First*, the district court lacked jurisdiction to enjoin an ongoing Commission enforcement action.  Congress has provided for exclusive review of SEC enforcement actions in the courts of appeals—either in this Court or in the D.C. Circuit.  In the event of an adverse order, Hill can raise his constitutional contentions, together with any other arguments, before the appropriate court of appeals.  The Supreme Court has stressed that, when Congress establishes an exclusive avenue for review in this manner, a district court has no authority to intrude on this review process, and that litigants must instead raise their constitutional claims before the agency.  The Court has made clear that this rule applies even if the agency does not have the power to adjudicate the constitutional contentions, so long as those claims will ultimately be subject to review by a court.  *See Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 215 (1994); *Elgin v. Department of the Treasury*, 132 S. Ct. 2126, 2136-37 (2012).   Because it is undisputed here that Hill will be free to raise his constitutional claims on direct review in this Court or the D.C. Circuit if he is aggrieved by the Commission's final order, the district court lacked jurisdiction to entertain his collateral attack on the administrative proceedings.

Holding these principles inapplicable, the district court mistakenly believed that the circumstances of this case are not materially distinguishable from those in *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010), in which the Supreme Court considered whether Exchange Act Section 78y foreclosed review of an Article II challenge to the Public Company Accounting Oversight Board.  But the

factors relevant to the Supreme Court's decision there have no counterpart in this

case. The plaintiffs in *Free Enterprise Fund,* unlike Hill, were not the subject of an

ongoing administrative proceeding. And, as the Supreme Court noted, "Section 78y

provides only for judicial review of *Commission* action, and not every Board action is

encapsulated in a final Commission order or rule." *Id.* at 490. Because the plaintiffs

were not already in proceedings that would culminate in a Commission order and had

no natural mechanism for obtaining such an order, the Court held that they could

bring their constitutional challenge in district court. In so holding, the Court stressed

that it would not require plaintiffs to launch a challenge to an Accounting Board rule

and contest the validity of the Board's existence on review of that rule, declaring that

plaintiffs could not properly be made "to select and challenge a Board rule at

random." *Id.* The Court likewise rejected the contention that the plaintiffs could

invite an enforcement proceeding and then "raise their claims by appealing a Board

sanction," *id.,* stressing that courts "normally do not require plaintiffs to bet the farm

. . . by taking the violative action before testing the validity of the law." *Id.* at 490-91

(internal quotation marks omitted).

     Hill, of course, need not challenge a "random" rule or "bet the farm" by

violating the law—he need only await the Commission's final adjudication of its

administrative proceedings against him. As a result of past securities trades, Hill is

already the subject of an ongoing enforcement proceeding that will culminate in an

order of the Commission reviewable in the court of appeals. If he is aggrieved by a

Commission order in those proceedings, he can raise all his arguments in the court of appeals, as Congress expressly provided.  The district court erred in entertaining Hill's collateral attack on the Commission proceedings and inserting itself into a jurisdictional scheme in which district courts have no proper role.

*Second*, the district court erred in holding that Hill was likely to succeed on his argument that the Commission's administrative law judges are "inferior officers" within the meaning of the Appointments Clause and that their method of appointment was therefore unconstitutional.  Administrative law judges are not constitutional officers imbued with a portion of the sovereign authority of the United States, but simply agency employees who act as the hearing examiner and prepare an initial decision for the Commission's review.  The Commission has complete discretion whether or not to use ALJs as hearing examiners, and when it does, it is bound by neither the initial decision's findings of fact nor its conclusions of law. Indeed, the Commission may re-weigh the testimony, take new evidence, make new findings, and otherwise disregard or displace the ALJ's decision altogether.

The district court mistakenly believed that *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868 (1991), compels the conclusion that the Commission's ALJs are inferior officers, expressly disagreeing with the D.C. Circuit's ruling in *Landry v. FDIC*, 204 F.3d 1125 (D.C. Cir. 2000), that the ALJs of the Federal Deposit Insurance Corporation are not constitutional officers but employees.   Dkt. 28, at 40-41.  Like the FDIC's administrative law judges—and unlike the special trial judges at issue in

12

*Freytag*—the Commission's ALJs "can never render the decision of the [agency]." *Landry,* 204 F.3d at 1133.  Moreover, as the D.C. Circuit observed in *Landry,* "even for the non-final decisions of the type made by the [special trial judges] in *Freytag,* the Tax Court was required to defer to the [special trial judge's] factual and credibility findings unless they were clearly erroneous."  *Id.* (citations omitted).  By contrast, the Commission, like the FDIC Board, does not defer to an ALJs' factual findings.

**II.**  Reversal is also required because the district court had no proper basis for concluding that Hill would incur irreparable injury by participating in the administrative proceedings.  The Supreme Court, in holding that a district court could not properly enjoin an agency enforcement action allegedly inspired by political pressure, has made clear that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."  *FTC v. Standard Oil Co.*, 449 U.S. 232, 244 (1980) (internal quotation marks omitted).   Similarly, that an ALJ's appointment is challenged on constitutional grounds does not render a litigant's participation in the proceeding an irreparable injury.  *See In re al-Nashiri*, __ F.3d__, No. 14-1203, 2015 WL 3851966, at *7 (D.C. Cir. June 23, 2015) (holding that no irreparable harm would result from trial before judges of the Court of Military Commission Review allegedly appointed in violation of the Appointments Clause and separation-of-powers principles).

The district court similarly erred in discounting the impact of its order on the statutory enforcement scheme.  When Congress authorized the Commission to

institute administrative cease-and-desist proceedings in 1990, it stressed the importance of "enabl[ing] the SEC to move quickly in administrative proceedings, particularly in those situations where investor funds are at risk." S. Rep. No. 101-337, at 8 (1990); *The Securities Law Enforcement Remedies Act of 1989: Hearings on S. 647 Before the Subcomm. on Securities of the S. Comm. on Banking, Housing, and Urban Affairs* (*Hearings*), 101st Cong. 34, 56-7 (1990) (statement of Richard C. Breeden, Chairman, Securities and Exchange Commission). As the district court acknowledged, the Commission's investigation took nearly two years, during which it took "'12 examinations, issued at least 13 subpoenas for documents[,] and received tens of thousands of documents.'" Dkt. 28, at 2 (alteration in original). The collateral proceedings sanctioned by the district court will result in the very type of substantial delay that Congress and the Commission have sought to avoid. If the district court had purported to enjoin a civil enforcement action in another district, no one would question the injury to the government and the public interest. The impact is no different when a court enjoins an ongoing administrative enforcement proceeding.

## STANDARD OF REVIEW

"This court reviews a trial court's decision to grant a preliminary injunction for abuse of discretion." *U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, 749 F.3d 967, 973-74 (11th Cir. 2014). "We review the underlying findings of fact for clear error and questions of law *de novo*." *Id.* at 974.

14

# ARGUMENT

## I. THE DISTRICT COURT'S JURISDICTIONAL AND CONSTITUTIONAL HOLDINGS ARE PREMISED ON ERRORS OF LAW

### A. The District Court Lacks Jurisdiction Over SEC Administrative Proceedings, Which Are Subject To Direct Review In The Court Of Appeals

The district court had no jurisdiction to entertain Hill's collateral attack on the Commission's enforcement proceedings. Congress has expressly channeled all challenges to the Commission's rulings in such proceedings to the courts of appeals on direct appeal from a final Commission order. The district court was without authority to circumvent the judicial review scheme established by Congress.

**1.** Congress allocated the initial resolution of all legal questions arising in Commission enforcement proceedings to the Commission itself, followed by direct review in the court of appeals. The Exchange Act's comprehensive and specialized scheme of judicial review leaves no room for collateral district court proceedings.

As the Supreme Court has explained, when a statute provides for direct appellate review "of final agency actions, we shall find that Congress has allocated initial review to an administrative body where such intent is 'fairly discernible in the statutory scheme.'" *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 207 (1994) (internal citation omitted). "Whether a statute is intended to preclude initial judicial review [in district court] is determined from the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review." *Id.*

(citation omitted); *see Elgin v. Department of the Treasury*, 132 S. Ct. 2126, 2132-33 (2012) ("[T]he appropriate inquiry is whether it is 'fairly discernible' from [the statute] that Congress intended covered employees . . . to proceed exclusively through the statutory review scheme, even in cases in which the employees raise constitutional challenges to federal statutes."); *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010) (stating that statutory review provisions are exclusive if "the 'statutory scheme' displays a 'fairly discernible' intent to limit jurisdiction, and the claims at issue 'are of the type Congress intended to be reviewed within th[e] statutory structure'") (alteration in original)).

In *Thunder Basin,* for example, the Supreme Court held that a district court lacked authority to enjoin enforcement proceedings of the Mine Safety and Health Administration.  The Court explained that the comprehensive review structure established by the statute, which called for direct review of final action in the court of appeals, implicitly "demonstrate[d] that Congress intended to preclude challenges" prior to the completion of agency proceedings.  510 U.S. at 208.  That preclusion, the Court held, extended to review of constitutional claims.  *Id.* at 215.  The Court reasoned that the Mine Act provided a "detailed structure," *id.* at 207, for review of enforcement actions and that, even if the petitioner's constitutional claim could not be addressed by the agency in the first instance, it could be "meaningfully addressed in the Court of Appeals," *id.* at 215.

Similarly, in *Elgin*, the Supreme Court held that the district court lacked

jurisdiction over petitioners' constitutional challenges to various agencies'

employment decisions based on petitioners' failure to register for the selective service.

Holding that the review scheme of the Civil Service Reform Act was exclusive, the

Court rejected the view of dissenting Justices that would have "carve[d] out for

district court adjudication only facial constitutional challenges to statutes," concluding

that the district court lacked jurisdiction over both facial and as-applied challenges.

*Elgin*, 132 S. Ct. at 2135.  Citing *Thunder Basin,* the Court held that Congress's intent to

preclude district court jurisdiction was fairly discernible in the statutory scheme even

if the Merit System Protection Board would be unable to adjudicate constitutional

challenges to the Military Selective Service Act's registration requirements.  132 S. Ct.

at 2136-37.

Thus, as this Court has explained, in general, "all constitutional claims must be

funneled through the direct-appeal process after a final agency action if that is the

scheme created by Congress."  *LabMD, Inc. v. FTC*, 776 F.3d 1275, 1279 (11th Cir.

2015) (citing *Doe v. FAA,* 432 F.3d 1259, 1262-63 (11th Cir. 2005)).  Applying this

principle, this Court in *LabMD* held that a district court could not exercise jurisdiction

over a claim that administrative proceedings had been instituted in retaliation for

protected speech in violation of the First Amendment.  *Id.*; *see also Frito-Lay, Inc. v.

FTC*, 380 F.2d 8, 10 (5th Cir. 1967) (stating that "[a]ll constitutional, jurisdictional,

substantive, and procedural issues arising in Commission proceedings may be

considered" on review of final agency decision "and this statutory right to review has long been viewed as constituting a speedy and adequate remedy at law");[2] *American Gen. Ins. Co. v. FTC*, 496 F.2d 197, 199 (5th Cir. 1974) (affirming dismissal of action seeking to enjoin FTC proceeding on the ground that the agency was acting outside its authority).

The Exchange Act's comprehensive scheme for administrative and judicial review is "virtually identical" to that in *Thunder Basin*, entailing a four-step process in which "(1) charges are brought by the SEC's Enforcement Division before an ALJ; (2) the plaintiffs have the opportunity to be heard and present evidence challenging the charges; (3) the plaintiffs may appeal an adverse ALJ decision to the SEC Commissioners; and (4) if the plaintiffs are aggrieved by the resulting final order, the plaintiffs may appeal to a federal Court of Appeals." *Jarkesy v. SEC*, 48 F. Supp. 3d 32, 37-38 (D.D.C. 2014) (citing 15 U.S.C. §§ 78u–3, 78y(a)(1)), *appeal pending*, No. 14-5196 (D.C. Cir.). Accordingly, the Second Circuit concluded in *Altman v. SEC*, 687 F.3d 44, 45-46 (2d Cir. 2012) (per curiam), that the Exchange Act's comprehensive review scheme precluded district court review of plaintiff's claims that an SEC administrative proceeding violated due process and equal protection and that the Commission acted beyond its constitutional and statutory authority. *See also, e.g.*, *Tilton v. SEC*, Dkt. 24, No. 15-CV-2472 (S.D.N.Y. June 30, 2015), *appeal pending*, No. 15-

---

[2] Fifth Circuit decisions before October 1, 1981, are binding precedent of this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209-10 (11th Cir. 1981) (en banc).

2103 (2d Cir.) (no district court jurisdiction to hear Appointments Clause challenge);

*Spring Hill Capital Partners, LLC v. SEC*, Dkt. 23, No. 15-cv-4542 (S.D.N.Y June 29,

2015) (same); *Bebo v. SEC*, No. 15-00003, 2015 WL 905349 (E.D. Wis. Mar. 3, 2015),

*appeal pending*, No. 15-1511 (7th Cir.) (no district court jurisdiction to hear Article II,

equal protection or due process challenges to Section 25(a) proceeding); *Chau v. SEC*,

__ F. Supp. 3d __, No. 14-CV-1903, 2014 WL 6984236, at *6 (S.D.N.Y. Dec. 11,

2014) (Exchange Act's comprehensive review scheme precluded suit to enjoin

administrative proceedings on due process and equal protection grounds), *appeal*

*pending*, No. 15-461 (2d Cir.); *Jarkesy*, 48 F. Supp. 3d at 37-38 (same).  *But see, e.g., Duka*

*v. SEC*, No. 15 Civ. 357, 2015 WL 1943245 (S.D.N.Y. Apr. 15, 2015) (finding

jurisdiction to consider separation of powers challenge to administrative proceeding).

Courts have likewise repeatedly rejected other attempts to enjoin administrative

proceedings on various constitutional grounds.  For example, in *National Taxpayers*

*Union v. United States Social Security Administration,* 376 F.3d 239, 242 (4th Cir. 2004), the

court rejected an attempt by an advocacy group to bypass administrative proceedings

in order to challenge a statutory prohibition on the use of the words "Social Security"

in mailings on First Amendment grounds.  Applying *Thunder Basin,* the Fourth Circuit

held that district court review was unavailable even though the agency had threatened

enforcement action that could have resulted in penalties of up to $5,000 per violation.

*Id.*; *see also Eastern Bridge, LLC v. Chao,* 320 F.3d 84, 90-91 (1st Cir. 2003) (affirming

district court's dismissal of facial Fourth Amendment privacy right constitutional

challenge to OSHA surveys); *Sturm, Ruger & Co. v. Chao,* 300 F.3d 867, 873-75 (D.C. Cir. 2002) (affirming district court's dismissal of pre-enforcement facial constitutional challenge to OSHA provision because plaintiff could obtain review in court of appeals).

**2.**  A related but separate principle likewise precludes a district court from enjoining proceedings that are subject to direct oversight in the court of appeals. This Court and other courts have stressed that "where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to *exclusive* review of the Court of Appeals." *George Kabeller, Inc. v. Busey*, 999 F.2d 1417, 1420 (11th Cir. 1993) (per curiam) (quoting *Telecommunications Research & Action Ctr. ("TRAC") v. FCC,* 750 F.2d 70, 75 (D.C. Cir. 1984)).

Thus, relying on the *TRAC* analysis, the Ninth Circuit in *Public Utility Commissioner of Oregon v. Bonneville Power Administration*, 767 F.2d 622 (9th Cir. 1985) (Kennedy, J.), held that a district court lacked jurisdiction to consider a constitutional challenge to an agency proceeding based on the asserted bias of the agency decision maker.  The court explained that because "disposition of petitioners' claim of bias could affect our future statutory review authority, we have exclusive jurisdiction to consider it."  *Id.* at 627.  The Ninth Circuit determined it would consider the challenge to the fairness of the proceeding only on review of final action, noting that doing so would "avoid the disruption, delay, and piecemeal review that accompany interference

with pending administrative proceedings." *Id.* at 629.  The D.C. Circuit reached the

same conclusion in *Air Line Pilots Ass'n, International v. Civil Aeronautics Board*, 750 F.2d

81 (D.C. Cir. 1984), and declined to exercise its own mandamus authority to address a

claim of agency bias, observing that "[t]o stay the administrative processes while a

court was engaged in an extended inquiry into the claimed disqualification of

members of the administrative body could lead to a breakdown in the administrative

process which has long been criticized for its slow pace." *Id.* at 88 (quoting *SEC v.*

*R.A. Holman & Co.*, 323 F.2d 284, 287 (D.C. Cir. 1963)).

Likewise here, Hill's various challenges to the Commission's authority to

proceed against him through administrative proceedings affect the prospective

jurisdiction of the court of appeals—either this Court or the D.C. Circuit—over the

Commission's final order.  Under *TRAC* principles, therefore, judicial review of Hill's

claims is exclusively vested in the courts of appeals.  Nothing in the Exchange Act or

any other statute contemplates any role for the district court in entertaining collateral

challenges to the Commission's enforcement proceedings.

**3.**  The district court nevertheless concluded that it could properly address

constitutional questions that would otherwise be reviewed by the court of appeals in

the event of an adverse Commission order, and that it had jurisdiction to enjoin the

ongoing administrative proceedings.

The court reached this result based on a fundamental misreading of *Free*

*Enterprise Fund,* in which the Supreme Court considered whether Section 78y

21

foreclosed review of an Article II challenge to the Public Company Accounting Oversight Board.  In *Free Enterprise Fund*, an accounting firm that—unlike Hill—was not the subject of administrative proceedings sought a declaration that the Accounting Board was unconstitutional on the ground that the "Board's existence" violated the Appointments Clause and the separation of powers.  561 U.S. at 487, 490.

Emphasizing considerations not present here, the Court concluded that unless petitioners could proceed in district court, "[w]e do not see how petitioners could meaningfully pursue their constitutional claims."  *Free Enter. Fund*, 561 U.S. at 490. The Supreme Court first noted that "Section 78y provides only for judicial review of *Commission* action, and not every Board action is encapsulated in a final Commission order or rule."  *Id.*  Here, by contrast, there is no dispute that the administrative proceedings against Hill will result in "*Commission* action" that, if adverse to plaintiff, will be subject to review in this Court or the Court of Appeals for the D.C. Circuit.

The Court then rejected the government's suggestion that there was a meaningful avenue of judicial review because the firm could generate a reviewable Commission order by seeking Commission review of a Board rule or incurring a sanction.  *Free Enter. Fund*, 561 U.S. at 490.  The Court explained that the firm could not properly be required "to select and challenge a Board rule at random" and—in that sense—the firm's challenge "to the Board's existence" was "'collateral' to any Commission orders or rules from which review might be sought."  *Id.*  The Court added that "[r]equiring petitioners to select and challenge a Board rule at random"

22

would be "an odd procedure for Congress to choose," and would be especially odd "because only *new* rules, and not existing ones, are subject to challenge." *Id.*

The Court then rejected the alternative contention that petitioners could refuse to comply with a Board request and then "raise their claims by appealing a Board sanction." *Free Enter. Fund*, 561 U.S. at 490. The Court held that this did not constitute a "meaningful avenue of relief" because courts "normally do not require plaintiffs to bet the farm . . . by taking the violative action before testing the validity of the law." *Id.* at 490-91 (internal quotation marks omitted).

Here, by contrast, Hill is currently a respondent in administrative proceedings. Those proceedings will culminate in a Commission order subject to direct review in the court of appeals. There is no dispute that if Hill is aggrieved by the Commission's final order, he can seek review of his constitutional claims and any other contentions in the appropriate appellate court. Hill need not challenge a "random" rule or "bet the farm" by violating the law.

Nor does Hill object to the *existence* of the Commission. He argues only that the proceeding to which he is subject is defective on various constitutional grounds. A claim that a hearing officer cannot constitutionally preside over an administrative proceeding because he was not properly appointed, like a claim that an agency is retaliating for the exercise of First Amendment rights, *see, e.g., LabMD*, 776 F.3d at 1279, arises precisely because there *is* an administrative proceeding. Such a claim can

23

and should be presented to the Commission and ultimately to the court of appeals, rather than in a collateral attack.

The district court also erred in distinguishing this case from *Thunder Basin* on the ground that Congress has authorized the SEC to choose whether to institute administrative proceedings or, instead, file suit in district court. *See* Dkt. 28, at 13 ("There can be no 'fairly discernible' Congressional intent to limit jurisdiction away from district courts when the text of the statute provides the district court as a viable forum."). Indeed, *Thunder Basin* itself illustrates the district court's error. The Mine Act "expressly . . . empower[ed] the *Secretary* . . . to coerce payment of civil penalties" by filing actions in district court. 510 U.S. at 209. As the Supreme Court recognized, authorization of district court jurisdiction over actions by "the *Secretary*" did not require finding jurisdiction for suits by mine operators, who "enjoy no corresponding right but are to complain to the Commission and then to the court of appeals." *Id.* Moreover, "Congress kn[ows] how to provide alternative forums for judicial review." *Elgin*, 132 S. Ct. at 2134. Congress's decision not "to include an exemption from [court of appeals] review" for challenges such as those at issue here "indicates that Congress intended no such exception." *Id.* at 2134-35. A district court may not interfere with this Court's jurisdiction by creating a bifurcated system of review.

That the SEC can invoke the district court's jurisdiction does not suggest that the district court can exercise jurisdiction when the SEC does *not* file suit in district court and instead initiates administrative proceedings. Section 929P of the Dodd-

24

Frank Act empowers the SEC to proceed administratively in certain cases. As the

district court recognized in rejecting Hill's non-delegation challenge, Hill "may not

choose his forum when Congress has dedicated that decision to the Executive." Dkt.

28, at 26. If the Commission elects to proceed administratively, review of the

Commission's actions is vested in the court of appeals, and the district court has no

warrant to interfere.

The district court was likewise mistaken in declaring that review of

constitutional claims in the court of appeals is not meaningful because "[i]f Plaintiff is

required to raise his constitutional law claims following the administrative proceeding,

he will be forced to endure what he contends is an unconstitutional process." Dkt.

28, at 15. Every plaintiff seeking to enjoin administrative proceedings on

constitutional grounds could make this kind of argument. But *Thunder Basin* made

clear that it "would be inimical to the structure and the purposes of the [Act]" if a

plaintiff could avoid an administrative proceeding by the simple expedient of filing a

pre-enforcement constitutional challenge seeking to enjoin the proceeding. 510 U.S.

at 215-16; *accord Sturm, Ruger & Co.*, 300 F.3d at 876 ("Our obligation to respect the

review process established by Congress bars us from permitting [the plaintiff] to make

this end run."). The Supreme Court has held, moreover, that "[m]ere litigation

expense, even substantial and unrecoupable cost, does not constitute irreparable

injury," *FTC v. Standard Oil Co.*, 449 U.S. 232, 244 (1980) (internal quotation marks

omitted), and does not provide a jurisdictional basis for enjoining administrative

25

proceedings. *Cf. Deaver v. Seymour*, 822 F.2d 66, 70-71 (D.C. Cir. 1987) (holding that district court lacked jurisdiction to enjoin independent counsel from seeking indictment where plaintiff alleged that statute vesting prosecutorial authority was unconstitutional, and rejecting argument that any violation of plaintiff's rights could not be remedied).

### B.    The SEC ALJs Are Employees, Not Inferior Officers

In any event, the district court erred in believing that an ordinary administrative law judge is an officer of the United States who must be appointed in the manner prescribed by the Appointments Clause.  Article II, § 2, cl. 2 of the Constitution provides that the President

> shall nominate, and, by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

"Inferior officers," like principal officers, are persons who "exercis[e] significant authority pursuant to the laws of the United States," *Buckley v. Valeo*, 424 U.S. 1, 125-26 (1976), a category that does not include "lesser functionaries subordinate to officers of the United States," *id.* at 126 n.162.  All relevant considerations demonstrate that the Commission's administrative law judges are "lesser functionaries subordinate to officers of the United States."

**1.**  The SEC has made use of employees as hearing examiners throughout its existence.  *See Charles Hughes & Co. v. SEC*, 139 F.2d 434 (2d Cir. 1943) (reviewing Commission order revoking broker-dealer registration following proceedings before hearing examiner).  These hearing examiners were originally subject to the Classification Act of 1923 and dependent on their agency's ratings for compensation and promotion.  *Ramspeck v. Federal Trial Exam'rs Conference*, 345 U.S. 128, 130 (1953).  When Congress enacted the Administrative Procedure Act (APA) in 1946, it "separat[ed] adjudicatory functions and personnel from investigative and prosecution personnel in the agencies," by placing hearing examiners under the jurisdiction of the Civil Service Commission in a merit-based civil service system for federal employees, and by vesting the Civil Service Commission with control of the ALJs' compensation, promotion, and tenure.  *See id.* at 131-32.  Congress gave no indication that it meant to elevate ALJs' status above that of the investigative and prosecution personnel of the agency, and, instead, explicitly "retained the examiners as classified Civil Service employees."  *Id.* at 133.

Indeed, in enacting the APA, Congress envisioned that an ALJ's "initial decision" would be "advisory in nature" and would merely "sharpen[] . . . the issues for subsequent proceedings."  U.S. Dep't of Justice, *Attorney General's Manual on the*

*Administrative Procedure Act* 83-84 (1947).[3]  Thus, as this Court has emphasized, after a hearing before an ALJ, "[o]n appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule." *JCC, Inc. v. Commodity Futures Trading Comm'n*, 63 F.3d 1557, 1566 (11th Cir. 1995) (quoting 5 U.S.C. § 557(b)); *accord Nash v. Bowen*, 869 F.2d 675, 680 (2d Cir. 1989) (in reviewing an ALJ's initial decision the agency "retains 'all the powers which it would have in making the initial decision'" (quoting 5 U.S.C. § 557(b)).

At the SEC, as throughout the federal government, ALJs are civil service employees in the "competitive service."  5 C.F.R. § 930.201(b).  As such they are subject to the provisions of the Civil Service Reform Act of 1978 (the "CSRA"), 5 U.S.C. § 1101 *et seq.*, which, among other things, establishes merit systems principles to guide agency personnel management, 5 U.S.C. § 2301, and specifies the administrative and judicial remedies available in response to prohibited personnel practices described in the statute, *id.* §§ 1204, 1212, 1214, 1215, 1221.

The Office of Personnel Management ("OPM"), which oversees federal employment for ALJs and other civil servants, administers a detailed civil service

---

[3] The Manual, as "a contemporaneous interpretation [of the APA]," *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 546 (1978), is "give[n] 'considerable weight,'" *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 537 (D.C. Cir. 1986) (citation omitted); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 215 (1988) (Scalia, J., concurring) (noting that the Manual "repeatedly" has been given "great weight").

system for selecting ALJs that includes examinations for ALJ candidates, *see* 5 U.S.C. §§ 1104, 1302; 5 C.F.R. §§ 930.201(d)-(e), 930.203; ranking ALJ applicants for placement on a register of eligible candidates according to their qualifications and numerical ratings, 5 U.S.C. § 3313; 5 C.F.R. § 332.401; and issuing "certificate[s] of eligibles" from which federal agencies—including the SEC—may select individuals to fill ALJ vacancies, 5 U.S.C. §§ 3317, 3318; 5 C.F.R. §§ 332.402, 332.404.  OPM oversees each agency's "decisions concerning the appointment, pay, and tenure" of ALJs, 5 C.F.R. § 930.201(e)(2), and establishes classification and qualification standards for the ALJ positions, *id.* § 930.201(e)(3).

Government agencies employ a total of approximately 1,600 administrative law judges, *see Free Enter. Fund,* 561 U.S. at 586 (appendix to dissent of Breyer, J.), and the SEC currently employs five ALJs.

**2.**  The SEC's regulations and governing statutes make clear that administrative law judges are simply employees of the Commission, which has retained its decision-making authority in every respect.

The Commission employs ALJs in its discretion, and all final agency determinations are those of the Commission, not of its ALJs.  Congress has not required the SEC to use its ALJs to conduct its administrative proceedings, and SEC regulations provide that a "[h]earing officer" can be an ALJ, a panel of Commissioners, an individual Commissioner, or any other person duly authorized to preside at a hearing.  17 C.F.R. § 201.101(a)(5).  The Commission may at any time

29

during the administrative process "direct that any matter be submitted to it for review." *Id.* § 201.400(a). An ALJ serving as a hearing officer prepares only an "initial decision." *Id.* § 201.360(a)(1). If no further review is sought or otherwise ordered by the Commission, then the Commission issues an order of finality, specifying the date on which sanctions, if any, take effect. *Id.* § 201.360(d)(2).[4]

Commission review of the ALJ's initial decision is de novo. The Commission "may affirm, reverse, modify, [or] set aside" the initial decision, "in whole or in part," and it "may make any findings or conclusions that in its judgment are proper and on the basis of the record." 17 C.F.R. § 201.411(a). The Commission may also "remand for further proceedings," *id.*, "remand . . . for the taking of additional evidence," or

---

[4] The Commission may review an initial decision on its own initiative, even if no review is sought. *See, e.g., Dian Min Ma*, Exchange Act Release No. 74887, 2015 WL 2088438, at *1 (May 6, 2015) (explaining that "[t]he Commission has determined to review the [ALJ's] decision on its own initiative," setting aside the ALJ's order in part, and providing that "as modified," the initial decision "has become the final decision of the Commission"); *Michael Lee Mendenhall*, Exchange Act Release No. 74532, 2015 WL 1247374, at *1 (Mar. 19, 2015) (Commission explaining that "we have determined *sua sponte* to vacate the law judge's initial decision and to remand for further proceedings before the law judge"); *Raymond J. Lucia Cos.*, Exchange Act Release No. 540, 2013 WL 6384274, at *2 (Dec. 6, 2013) (referring to Commission's unpublished order "on its own initiative" remanding to the ALJ for additional findings); *Hunter Adams*, Exchange Act Release No. 52859, 2005 WL 3240600, *1 (Nov. 30, 2005) (explaining that the Commission "on our own motion . . . ordered a limited review of the decision of the administrative law judge" to consider the appropriate amount of disgorgement); *George C. Kern, Jr.*, Exchange Act Release No. 29356, 1991 WL 284804, at *1 (June 21, 1991) ("On its own initiative, the Commission ordered review of the administrative law judge's initial decision herein with respect to George C. Kern, Jr.").

"hear additional evidence" itself, *id.* § 201.452.  And if "a majority of participating Commissioners do not agree to a disposition on the merits," the ALJ's "initial decision shall be of no effect."  *Id.* § 201.411(f).

For these reasons, the D.C. Circuit's conclusion in *Landry v. FDIC*, 204 F.3d 1125 (D.C. Cir. 2000), with respect to ALJs of the Federal Deposit Insurance Corporation applies equally here:  the Commission's ALJs are not constitutional officers but employees, whose appointments do not implicate Article II, because they "can never render the decision of the [agency]."  *Id.* at 1133.

**3.**  The district court expressly disagreed with the D.C. Circuit, concluding that *Landry* misunderstood the Supreme Court's decision in *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868 (1991), which held that the special trial judges of the Tax Court were inferior officers.  *Id.* at 880-82.  The D.C. Circuit was correct, however, in emphasizing the importance of the authority vested in special trial judges of the Tax Court to issue final decisions.  In *Freytag*, it was undisputed that the special trial judges acted as inferior officers in a variety of cases.  501 U.S. at 882 (noting that IRS Commissioner had conceded that special trial judges "act as inferior officers" and that "the Chief Judge may assign special trial judges to render the decisions of the Tax Court" in certain cases); *see also* Respondent's Br. at 5, 10, *Freytag v. Commissioner of Internal Revenue*, No. 90-762, 1991 WL 11007941 (Apr. 3, 1991).  The government's argument was that the judges did not act as inferior officers in the specific category of cases at issue in *Freytag*.  The Supreme Court found this reasoning unpersuasive,

31

concluding that "[s]pecial trial judges are not inferior officers for purposes of some of their duties under [the statute] but mere employees with respect to other responsibilities." *Freytag*, 501 U.S. at 882.

In contrast, the Commission can never assign an ALJ to render a final decision in a case. The Commission need not involve ALJs in its administrative proceedings at all, and, if it determines that proceedings should take place before an ALJ, it is not bound by anything an ALJ decides. As the Commission has stated, it "retains plenary authority over the course of its administrative proceedings and the rulings of its law judges—both before and after the issuance of the initial decision and irrespective of whether any party has sought relief." *Michael Lee Mendenhall*, Exchange Act Release No. 74532, 2015 WL 1247374, at *1 (Mar. 19, 2015).

The district court correctly observed that the Supreme Court in *Freytag* cited the significant discretion exercised by special trial judges in cases over which they do not have final decision-making authority. The district court erred, however, in declaring that "[o]nly after it concluded [that the special trial judges of the Tax Court] were inferior officers did *Freytag* address the STJ's ability to issue a final order." Dkt. 28, at 40. As the D.C. Circuit observed in *Landry,* the Court's discussion of the special judges' power to render final decisions in certain cases "would have been quite unnecessary if the purely recommendatory powers were fatal in themselves." 204 F.3d at 1134.

32

In any event, the district court erred in concluding that SEC ALJs' "powers" are "nearly identical" to those of the Tax Court's special trial judges. Dkt. 28, at 40. As the D.C. Circuit noted in *Landry*, "even for the non-final decisions of the type made by the [special trial judges] in *Freytag*, the Tax Court was required to defer to the [Special Judge's] factual and credibility findings unless they were clearly erroneous." 204 F.3d at 1133 (citing Tax Court Rule 183(c), 26 U.S.C. App. (1994)). By contrast, neither the Commission nor the FDIC Board that reviewed the ALJ decisions at issue in *Landry* defers to ALJs' factual findings. *Id.*; 17 C.F.R. 201.411(a); *see also JCC, Inc.*, 63 F.3d at 1566 (noting that "the Commission is empowered . . . to conduct an independent review of the factual record before it").[5] And whereas special trial judges have the power, for example, to issue subpoenas, 26 U.S.C. § 7456(a); Tax Court Rule 181, and "to enforce compliance with discovery orders," *Freytag*, 501 U.S. at 881-82, the Commission's ALJs' may issue subpoenas, but an order would need to be obtained from a federal district court to compel compliance, *see* 15 U.S.C. § 78u(e).

The district court noted that the position of administrative law judge, like the position of special trial judge, is established by law and that both can "take testimony, conduct trial, rule on the admissibility of evidence, and can issue sanctions, up to and

---

[5] The Commission could make a factual finding partially based on an ALJ's credibility determination, but the Commission does not accept an ALJ's credibility determinations "blindly," *Kenneth R. Ward*, Exchange Act Release No. 47535, 2003 WL 1447865, at *10 (Mar. 19, 2003), and is not bound by such determinations, *see id.* The Commission can also choose to hear the witnesses' testimony itself. 17 C.F.R. § 201.452.

including excluding people (including attorneys) from hearings and entering default."
Dkt. 28, at 38. That approximately 1,600 ALJs hold positions in the competitive civil
service pursuant to a statute does not make them officers in the various agencies
which may employ them. And the authority given to the SEC to use ALJs at its
discretion likewise does not render each of them an officer. The special trial judge, in
contrast, operates within an Article I tribunal where Congress has "knowingly
expanded the authority of special trial judges." *Samuels, Kramer & Co. v. Commissioner of
Internal Revenue*, 930 F.2d 975, 982 (2d Cir. 1991).

**4.** If doubt existed as to the ALJs' status, the Court would also properly
consider Congress's own assessment of its statutory creations. *See Weiss v. United
States*, 510 U.S. 163, 194 (1994) (Souter, J., concurring) (explaining that "in the
presence of doubt" regarding constitutional officer status "deference to the political
branches' judgment is appropriate"). In enacting the APA, Congress specified that it
is the "agency"—not the President, the department head, or the Judiciary—that
appoints ALJs. Pub. L. No. 79-404, 60 Stat. 237, 244 (1946); *see* 5 U.S.C. § 3105;
*Ramspeck*, 345 U.S. at 133 (Congress "retained the [hearing] examiners as classified
Civil Service employees").[6] In other words, Congress intended them to be employees.

---

[6] At the time, the Supreme Court had long characterized appointments
pursuant to the methods prescribed in the Appointments Clause as a "well established
definition of what it is that constitutes [an officer of the United States]." *United States
v. Mouat*, 124 U.S. 303, 307 (1888).

34

With rare exceptions for particular agencies, in the seven decades since creating the

position of ALJ, Congress has not changed their method of appointment.

## II.    THE DISTRICT COURT ERRED IN ASSESSING THE IMPACT OF GRANTING OR WITHHOLDING EQUITABLE RELIEF

Because the district court lacked jurisdiction to enjoin the ongoing

administrative proceedings and because it erred in concluding that the Commission's

ALJs are inferior officers, it would be necessary to reverse the preliminary injunction

even if Hill had demonstrated that the balance of harms favored a grant of relief.  *See*

*LSSI Data Corp. v. Comcast Phone, LLC*, 696 F.3d 1114, 1119 (11th Cir. 2012) ("This

Court will reverse the grant of a preliminary injunction if it concludes that [a movant]

has failed to satisfy any of the[] four elements" considered in granting preliminary

relief.) (citing *Warren Publ'g, Inc. v. Microdos Data Corp.,* 115 F.3d 1509, 1520 (11th Cir.

1997) (en banc) ("vacat[ing] a preliminary injunction because the District Court

erroneously found that the plaintiff had established a substantial likelihood of success

on the merits")).

In any event, the district court erred in concluding that Hill would suffer

irreparable harm in the absence of an injunction and that the government and the

public interest would not be injured by halting enforcement proceedings.

In holding that district courts lack jurisdiction to enjoin agency proceedings

subject to direct review in the courts of appeals, the Supreme Court and this Court

have repeatedly emphasized that being required to participate in allegedly improper

agency proceedings does not constitute cognizable irreparable injury. The Supreme Court has made clear that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Standard Oil Co.*, 449 U.S. at 244 (internal quotation marks omitted) (refusing to enjoin enforcement action allegedly inspired by political pressure); *Imperial Carpet Mills, Inc. v. Consumer Prods. Safety Comm'n*, 634 F.2d 871, 874 (5th Cir. 1981) (per curiam) (holding that "the burden of defending against the complaint; the expense of complying with the Commission's anticipated final order; the resulting bad publicity; and the potential for a dangerous loss of credit" do not justify intervention into agency action).

Equally clearly, that an ALJ's appointment is challenged on constitutional grounds does not render a litigant's participation in the proceeding an irreparable injury. *See In re al-Nashiri*, __ F.3d__, No. 14-1203, 2015 WL 3851966, at *7 (D.C. Cir. June 23, 2015) (holding that a trial before judges of the Court of Military Commission Review allegedly appointed in violation of the appointments clause and separation-of-powers does not cause irreparable harm); *Siegel v. LePore*, 234 F.3d 1163, 1177-78 (11th Cir. 2000) (en banc) (per curiam) (rejecting proposition that a "violation of constitutional rights always constitutes irreparable harm"). *Cf. Deaver v. Seymour*, 822 F.2d 66, 70-71 (D.C. Cir. 1987) (rejecting argument that alleged violation of plaintiff's rights arising from prosecution by allegedly unconstitutional independent counsel could not be remedied); *id.* at 72 (D.H. Ginsburg, J., concurring) (noting that "continuing destruction of [plaintiff's] business," "injury to his reputation and

36

dignity," and "the expenditure of substantial resources in his defense," do not "rise to the level of irreparable injury" even where plaintiff "bases his challenge upon the alleged unconstitutionality of the office of independent counsel" (internal quotation marks omitted)).

Failing to heed this guidance, the district court concluded that Hill would be irreparably harmed because, at the conclusion of the administrative process, his "claims would be moot and his remedies foreclosed because the Court of Appeals cannot enjoin a proceeding which has already occurred." Dkt. 28, at 15. By that reasoning, every litigant who challenges the lawfulness of an agency proceeding would demonstrate irreparable harm that might support an injunction. The Supreme Court and this Court have established that this is not the law. For example, the Supreme Court in *Standard Oil* noted that the possibility that the "alleged unlawfulness" of agency proceedings would be "'insulated' from review" if the plaintiff prevailed in the agency, but declared that this possibility "warrants the requirement that [plaintiff] pursue adjudication, not shortcut it." 449 U.S. at 244 n.11. The Court explained that "one of the principal reasons to await the termination of agency proceedings is to obviate all occasion for judicial review." *Id.* (internal quotation marks omitted)). In *Elgin,* the Supreme Court also noted that an agency disposition in favor of petitioner on non-constitutional grounds would avoid the need to reach his constitutional claims. 132 S. Ct. at 2140.

The district court also erred in giving short shrift to the impact of its order on the enforcement scheme created by Congress.  In authorizing the Commission to institute administrative cease-and-desist proceedings in 1990, Congress recognized the importance of "enabl[ing] the SEC to move quickly in administrative proceedings, particularly in those situations where investor funds are at risk."  S. Rep. No. 101-337, at 8; *Hearings*, *supra* p. 14, at 56-7 (statement of Richard C. Breeden, Chairman, Securities and Exchange Commission) (explaining the need for "a more streamlined administrative procedure," which is "important because of the significant delays that the Commission often faces in seeking a judicial remedy"—delays that "frustrate[]" "many enforcement objectives").  Congress's authorization of the initiation of these proceedings in 1990 and expansion of this authority in Dodd-Frank reflected a significant concern regarding the public interest in the administration of the securities laws.

The declaration of Andrew Ceresney, Director of the SEC's Division of Enforcement (Dkt. 33-1), explains that in appropriate cases, the administrative forum facilitates the prompt airing—and in turn notice to the public—of alleged securities law violations.  An administrative law judge typically must issue an initial decision no more than 300 days from the institution of administrative proceedings.  By requiring an evidentiary hearing within that time frame, the matter can be considered while the evidence is relatively fresh, enhancing the prospect of an early resolution.

The district court pitted its judgment against that of Congress in declaring that

38

"there is no evidence the SEC would be prejudiced by a brief delay to allow this Court to fully address Plaintiff's claims." Dkt. 28, at 43. Congress made a determination that the public interest would be served by allowing the SEC to pursue a process in which legal issues—including constitutional issues—would be resolved on direct review by the court of appeals, and not by a district court in a collateral proceeding. Even on its own terms, moreover, the court's assessment of harm cannot withstand scrutiny. The court itself noted (Dkt. 28, at 2) that the Commission's investigation took nearly two years, during which it took "12 examinations, issued at least 13 subpoenas for documents[,] and received tens of thousands of documents," *id.* (quoting Dkt. 17, Am. Compl. ¶ 30). Allowing collateral proceedings in the courts to take their course will result in precisely the type of substantial delay that Congress and the Commission have sought to avoid. If constitutional objections were raised by a defendant in a criminal or civil enforcement proceeding, it would be readily understood that piecemeal appeals would frustrate the interest in a coherent trial proceeding and result in a needless waste of resources. The general rule against collateral attacks on administrative proceedings serves the same purpose, and there is no basis for deviating from that rule here.

The district court erred, moreover, in viewing this case in isolation rather than as one of many enforcement proceedings brought each year. (Indeed, three other challenges to SEC enforcement proceedings are now pending before the same district

court judge.)[7]  The court wrongly minimized the impact of its reasoning on agency

operations by declaring that "the SEC is not foreclosed from pursing Plaintiff in

federal court." Dkt. 28, at 43.  That reasoning merely restates the district court's

unfounded and unexplained belief that no harm will result from setting aside the

agency's ability to use the administrative process that Congress established.

The court was on no firmer ground in suggesting that the agency would incur

no harm if it were required to conduct "an administrative proceeding before an SEC

Commissioner." Dkt. 28, at 43.  Under the district court's reasoning, every

respondent in an SEC enforcement proceeding might insist that a Commissioner

personally preside over their hearing.  The court's order marks a significant breach of

inter-branch comity.  *See INS v. Legalization Assistance Project*, 510 U.S. 1301, 1306

(1993) (O'Connor, J., in chambers) (staying district court injunction interfering with

the government's execution of immigration statute, noting that injunction was "an

improper intrusion by a federal court into the workings of a coordinate branch of the

Government"); *Schweiker v. McClure*, 452 U.S. 1301, 1302-03 (1981) (Rehnquist, J., in

chambers) (staying order enjoining the Department of Health and Human Services

from utilizing an administrative process in which private insurance carriers, rather

than agency's ALJs, finally resolved certain Medicare benefits claims, explaining that

---

[7] *Ironridge Global IV, Ltd. v. SEC*, No. 15-cv-2512-LMM (N.D. Ga.); *Timbervest, LLC v. SEC*, No. 15-cv-2106-LMM (N.D. Ga.); *Gray Financial Group, Inc. v. U.S. SEC*, No. 15-cv-492-LMM (N.D. Ga.).

40

the order would "cause hardship" to the agency because it "involve[d] a drastic restructuring of the appeals procedure carefully designed by Congress," and would require the agency to add to the workflow of its "already overloaded" ALJs).

## CONCLUSION

For the foregoing reasons, the Court should reverse the grant of a preliminary injunction.

Respectfully submitted,

BENJAMIN C. MIZER
  *Principal Deputy Assistant Attorney*
  *General*

JOHN A. HORN
  *Acting United States Attorney*

BETH S. BRINKMANN
  *Deputy Assistant Attorney General*

MARK B. STERN
MARK R. FREEMAN
MEGAN BARBERO
  *(202) 532-4631*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7226*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

AUGUST 2015

## CERTIFICATION OF COMPLIANCE

I hereby certify this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font, and that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 10,311 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

*/s/ Megan Barbero*
MEGAN BARBERO

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2015, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.


*s/ Megan Barbero*
MEGAN BARBERO