

KILPATRICK TOWNSEND & STOCKTON LLP

www.kilpatricktownsend.com

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4528
t 404 815 6500  f 404 815 6555

direct dial (404) 815-6356
direct fax (404) 541-3248
shudson@kilpatricktownsend.com

March 15, 2016

**VIA ECF**

Clerk of Court
United States Court of Appeals, Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

   Re: *Hill v. SEC*, No. 15-12831

Dear Clerk of Court:

   As counsel for Plaintiff-Appellee Charles L. Hill, Jr., I write pursuant to Federal Rule of Appellate Procedure 28(j) about an amicus brief that a former Solicitor General of the United States, Paul Clement, filed on February 29, 2016, in *Lucia v. SEC*, No. 15-1345 (D.C. Cir.). A copy of that brief is attached hereto as Exhibit A. That brief supports Mr. Hill's position (at pages 38-47 of his brief) that the SEC ALJ in Mr. Hill's administrative case lacks the constitutional authority to preside over that proceeding.

   Among other things, Solicitor General Clement's brief observes that:

- "From the Founding Era onward, leading authorities have adopted a relatively low bar of [the] 'significant' authority [that a government agent must exercise] to trigger the protections of the Appointments Clause." Ex. A at 7.

- When deciding whether to review an ALJ's decision, the Commission defers to an ALJ's factual findings. Specifically, the Commission "considers whether a party has made a reasonable showing that the ALJ's 'finding or conclusion of material fact . . . is *clearly* erroneous.'" Ex. A at 13 (quoting SEC Rule of Practice § 201.411(b)(2)(ii)(A)) (emphasis and alterations in Mr. Clement's brief).

- SEC ALJs may enter final decisions in some circumstances. Ex. A at 25. In any event, the Supreme Court's decision in *Edmond v. United States*, 520 U.S. 651, 665 (1997) "makes clear that such authority [to render final decisions] speaks to the difference between a principal and an inferior officer, not the difference between an officer and an employee." Ex. A at 26.

ATLANTA  AUGUSTA  CHARLOTTE  DENVER  LOS ANGELES  NEW YORK  RALEIGH  SAN DIEGO  SAN FRANCISCO
SEATTLE  SHANGHAI  SILICON VALLEY  STOCKHOLM  TOKYO  WALNUT CREEK  WASHINGTON  WINSTON-SALEM

US2008 6424284 1

Clerk of Court
March 15, 2016
Page 2

     Mr. Hill joins former Solicitor General Clement's arguments about why the SEC ALJ in Mr. Hill's administrative case lacks the constitutional authority to preside over that proceeding.

          Respectfully submitted,

          Stephen E. Hudson

Encl.

cc:    Mark B. Stern, Esq. (w/encl.)
      Stephen A. Best, Esq. (w/encl.)

# Exhibit A

**ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED**

**No. 15-1345**

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————

RAYMOND J. LUCIA COMPANIES, INC., AND RAYMOND J. LUCIA,

*Petitioners*,

v.

SECURITIES AND EXCHANGE COMMISSION,

*Respondent*.

————————————

On Petition for Review of an Order of the
Securities and Exchange Commission

————————————

## BRIEF OF *AMICI CURIAE* IRONRIDGE GLOBAL IV, LTD. AND IRONRIDGE GLOBAL PARTNERS, LLC

————————————

PAUL D. CLEMENT
 *Counsel of Record*
JEFFREY M. HARRIS
CHRISTOPHER G. MICHEL
BANCROFT PLLC
500 New Jersey Avenue, NW
Seventh Floor
Washington, DC 20001
(202) 234-0090
pclement@bancroftpllc.com

*Counsel for Amici Curiae*

February 29, 2016

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Ironridge Global Partners, LLC certifies that it does not have a parent corporation and that no publicly held corporation owns more than ten percent of its stock. Dragonox Investments, Ltd. is the parent corporation of Ironridge Global IV, Ltd. No publicly held corporation owns more than ten percent of Ironridge Global IV, Ltd. stock.

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

### A.    Parties and Amici.

Petitioners in this Court are Raymond J. Lucia Companies, Inc. and Raymond J. Lucia.   Respondent in this Court is the Securities and Exchange Commission. Mark Cuban has filed a brief as *amicus curiae* in support of petitioners.

### B.    Ruling Under Review.

*Amici curiae* adopt the reference to the rulings under review in the Opening Brief for Petitioners.

### C.    Related Cases.

*Amici curiae* adopt the reference to related cases in the Opening Brief for Petitioners.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .............. ii

    A.   Parties and Amici ................................................................... ii

    B.   Ruling Under Review ............................................................. ii

    C.   Related Cases ........................................................................ ii

TABLE OF AUTHORITIES ............................................................................ v

GLOSSARY OF ABBREVIATIONS ................................................................ x

INTEREST AND IDENTITY OF *AMICI CURIAE* ............................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 3

ARGUMENT .................................................................................................. 6

I.    SEC ALJs Must Be Appointed In Compliance With The Appointments Clause If They Exercise Significant Authority Pursuant To The Laws Of The United States ................................... 6

II.   Recent Cases, Including *Amici*'s, Illustrate That SEC ALJs Exercise Significant Authority Pursuant To The Laws Of The United States And Must Be Appointed Consistent With The Appointments Clause ........... 10

    A.   Dodd-Frank's Vast Expansion of SEC ALJs' Authority .................... 10

    B.   The Enforcement Action Against *Amici* Illustrates the Significant Authority of SEC ALJs ...................................... 14

III.  As Every Court To Consider The Question Has Recognized, SEC ALJs Are Officers Of The United States, And Their Current Method Of Selection Is Unconstitutional ................................................. 16

    A.   Multiple Courts Have Recognized that SEC ALJs Are Officers ....................................................................... 16

    B.   Precedents from the Supreme Court and this Court Establish that SEC ALJs Are Officers .............................................. 19

Case: 15-12831   Date Filed: 03/15/2016   Page: 8 of 44

C.   *Landry* Can Easily Be Distinguished ................................................. 24

D.   Because SEC ALJs Are Officers, They May Not Adjudicate Cases Unless They Are Appointed Pursuant to the Appointments Clause ........................................................................ 27

CONCLUSION ...................................................................................... 28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

Case: 15-12831    Date Filed: 03/15/2016    Page: 9 of 44

# TABLE OF AUTHORITIES[*]

**Cases**

*Bogan v. Scott-Harris*,
 523 U.S. 44 (1998) ...................................................................................8

*Buckley v. Valeo*,
 424 U.S. 1 (1976) ...................................................................................7, 8

*Butz v. Economou*,
 438 U.S. 478 (1978) ............................................................................. 9, 23

*Duka v. SEC*,
 No. 15-cv-357, 2015 WL 4940057 (S.D.N.Y. Aug. 3, 2015) .............................18

*Duka v. SEC*,
 No. 15-cv-357, 2015 WL 4940083 (S.D.N.Y. Aug. 12, 2015) ..........................19

*Edmond v. United States*,
 520 U.S. 661 (1997) ...................................................... 9, 10, 26, 27

*Ex parte Hennen*,
 38 U.S. 230 (1839) ...................................................................................8

*Free Enter. Fund v. PCAOB*,
 561 U.S. 477 (2010) ................................................................ 9, 10, 21

*Freytag v. Comm'r*,
 501 U.S. 868 (1991) ................................................... 4, 9, 10, 17, 20, 21, 24, 25

*Gray Fin. Grp. v. SEC*,
 No. 15-cv-492 (N.D. Ga. Aug. 4, 2015) ............................................................18

*Gupta v. SEC*,
 796 F. Supp. 2d 503 (S.D.N.Y. 2011) ...........................................................11

*Hill v. SEC*,
 114 F. Supp. 3d 1297 (N.D. Ga. 2015) ............................................................17

---

[*] Authorities on which this brief chiefly relies are marked with an asterisk.

*Horning v. SEC*,
    570 F.3d 337 (D.C. Cir. 2009) ....................................................................13

*In re Ernst & Whinney*,
    Release No. 271, 1986 WL 175658 (July 1, 1986)....................................24

*\*Ironridge Glob. IV, Ltd. v. SEC*,
    No. 15-cv-2512, 2015 WL 7273262 (N.D. Ga. Nov. 17, 2015) ............. 2, 18, 19

*Ironridge Glob. IV, Ltd. v. SEC*,
    No. 16-10205 (11th Cir. Feb. 24, 2016)........................................................2

*\*Landry v. FDIC*,
    204 F.3d 1125 (D.C. Cir. 2000)......................................................... 5, 25, 26

*Marbury v. Madison*,
    5 U.S. 137, 164 (1803)..................................................................................8

*Moore v. Mitchell*,
    281 U.S. 18 (1930)........................................................................................8

*Morrison v. Olson*,
    487 U.S. 654 (1988)................................................................................ 6, 10

*Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.*,
    725 F.2d 537 (9th Cir. 1984).........................................................................9

*Sheldon v. SEC*,
    45 F.3d 1515 (11th Cir. 1995) .....................................................................23

*Tilton v. SEC*,
    No. 15-cv-2472, 2015 WL 4006165 (S.D.N.Y. June 30, 2015) .................19

*Timbervest, LLC v. SEC*,
    No. 15-cv-2106, 2015 WL 7597428 (N.D. Ga. Aug. 4, 2015) ...................18

*\*Tucker v. Comm'r*,
    676 F.3d 1129 (D.C. Cir. 2012)......................................................... 22, 23, 25

*United States v. Allred*,
    155 U.S. 591 (1895)......................................................................................8

*United States v. Germaine,*
    99 U.S. 508 (1878)...................................................................................7, 8

*United States v. L.A. Tucker Truck Lines,*
    344 U.S. 33 (1952)........................................................................................16

*Weiss v. United States,*
    510 U.S. 163 (1994)................................................................................. 9, 10

*Wise v. Withers,*
    7 U.S. 331 (1806)......................................................................................... 7

**Constitutional Provision & Statutes**

U.S. Const. art. II, §2 ...................................................................................6

5 U.S.C. §556 ................................................................................................7

15 U.S.C. §77h-1...........................................................................................11

15 U.S.C. §77c(a)(10) ...................................................................................14

15 U.S.C. §77t(b) ..........................................................................................15

15 U.S.C. §78d-1 ............................................................................. 7, 12, 13, 25

15 U.S.C. §78*o*(a)(1) .....................................................................................15

15 U.S.C. §78u-2............................................................................................11

15 U.S.C. §78y(a)(1).......................................................................................13

Securities Enforcement Remedies and Penny Stock Reform Act of
    1990, Pub. L. No. 101-429, 104 Stat. 931 ...........................................11

**Regulations**

17 C.F.R. §200.14(a)(8) ................................................................................13

17 C.F.R. §200.30-9 ......................................................................................7

17 C.F.R. §201.155 ........................................................................................12

17 C.F.R. §201.180(a).....................................................................................12

17 C.F.R. §201.250(b).................................................................12

17 C.F.R. §201.400 ....................................................................12

17 C.F.R. §201.410 ....................................................................13

17 C.F.R. §201.411(b).................................................................13

17 C.F.R. §201.411(c). ...............................................................13

**Other Authorities**

Geoffrey R. Aronow, *Back to the Future:*
   *The Use of Administrative Proceedings for Enforcement at the*
   *CFTC and SEC*, 35 Futures & Derivatives L. Rep. 1 (2015)...........................14

Kent Barnett, *Resolving the ALJ Quandary*,
   66 Vand. L. Rev. 797 (2013)...............................................................29

Brief for United States, *Freytag Commissioner*,
   501 U.S. 868 (1991) (No. 90-762), 1991 WL 11007941...........................20, 23

Transcript of Oral Arg., *Freytag Commissioner*,
   501 U.S. 868 (1991) (No. 90-762), 1991 WL 636473.......................................21

Brief for SEC,
   *Hill v. SEC*, No. 15-12831 (11th Cir. Aug. 4, 2015).........................................27

*In re Ironridge Glob. Partners, LLC*,
   Release No. 3298 (Nov. 5, 2015), http://1.usa.gov/1nbyajF ..............................15

*In re LabMD, Inc.*, No. 9357,
   2015 WL 5608167 (F.T.C. Sept. 14, 2015)........................................................27

Floyd R. Mechem,
   *A Treatise on the Law of Public Offices and Officers* (1890)..............................8

*Officers of the U.S. Within the Meaning of the Appointments Clause*,
   31 Op. O.L.C. 73 (2007).................................................................7, 8

Alexander I. Platt, *SEC Administrative Proceedings:*
   *Backlash and Reform*, 71 Bus. Law. 1 (2015) ........................... 12, 14

Jed S. Rakoff, *PLI Securities Regulation Keynote Address:*
   *Is the SEC Becoming A Law Unto Itself?* (Nov. 5, 2014) .................10, 11, 13, 14

SEC, Office of Administrative Law Judges,
   http://1.usa.gov/1oTAcXz ................................................................................23

*Sec'y of Educ. Review of ALJ Decisions*,
   15 Op. O.L.C. 8 (1991) ....................................................................................21

Peter M. Shane & Harold H. Bruff,
   *Separation of Powers Law: Cases and Materials* 388 (3d ed. 2011) ................21

3 Joseph L. Story,
   *Commentaries on the Constitution of the United States* (1833) ......................... 8

## GLOSSARY OF ABBREVIATIONS

| Abbreviation | Definition |
|---|---|
| ALJ | Administrative Law Judge |
| FDIC | Federal Deposit Insurance Corporation |
| Global IV | Ironridge Global IV, Ltd. |
| Global Partners | Ironridge Global Partners, LLC |
| SEC | Securities and Exchange Commission |
| STJ | Special Trial Judge |

## INTEREST AND IDENTITY OF *AMICI CURIAE*[1]

*Amici curiae* Ironridge Global IV, Ltd. ("Global IV") and Ironridge Global Partners, LLC ("Global Partners") are institutional investors. *Amici* have a strong interest in this case because they are parties to a pending appeal that presents the same constitutional question at issue here: whether the selection of the Administrative Law Judges ("ALJs") at the Securities and Exchange Commission ("SEC") violates the Appointments Clause.

Like petitioners, *amici* were subject to an SEC enforcement proceeding before an ALJ based on a novel theory of liability. The SEC alleged that Global IV violated Section 15(a) of the Securities Exchange Act of 1934 by acting as a "dealer" without registering with the SEC, and the SEC based this allegation on Global IV's participation in court-approved exchanges that are *exempt from registration* under Section 3(a)(10) of the Securities Act of 1933. The SEC also alleged that Global Partners was liable under Section 20(b) of the Exchange Act for Global IV's conduct even though Global Partners was a mere shareholder in Global IV.

*Amici* moved to enjoin the proceeding in federal district court on the ground that the ALJ's selection violated the Appointments Clause. The district court agreed

---

[1] Counsel for *amici* certify that they authored this brief in its entirety and that none of the parties or their counsel, nor any other person or entity other than *amici* or their counsel, made a monetary contribution intended to fund the preparation or submission of this brief.

that *amici* would likely succeed on the merits and granted a preliminary injunction.
*Ironridge Glob. IV, Ltd. v. SEC*, No. 15-cv-2512, 2015 WL 7273262 (N.D. Ga. Nov.
17, 2015).  The SEC appealed.  On February 24, 2016, the Eleventh Circuit issued
an order holding the case in abeyance pending resolution of related appeals in *Hill
v. SEC*, No. 15-12831, and *Gray Financial Group, Inc. v. SEC*, No. 15-13738.  Order,
*Ironridge Glob. IV, Ltd. v. SEC*, No. 16-10205 (11th Cir. Feb. 24, 2016).  *Hill* and
*Gray Financial* were argued in the Eleventh Circuit that same day, February 24.

Because *Hill* and *Gray Financial* were argued the same day that *amici*'s case
was held in abeyance, *amici* had no meaningful opportunity to participate in the
briefing in that case.  This case therefore represents the first (and perhaps only)
opportunity for *amici* to advance their position in a court of appeals before this
critical constitutional question is resolved.  *Amici* thus have a direct and substantial
interest in the outcome of this case and, as explained more fully in the accompanying
motion for leave to file, in submitting this brief in support of petitioners pursuant to
Federal Rule of Appellate Procedure 29 and D.C. Circuit Rule 29.[2]

---

[2] On February 8, 2016, Mark Cuban filed a brief as *amicus curiae* in support of
petitioners.  Pursuant to D.C. Circuit Rule 29(d), counsel for *amici* certify that this
separate *amicus* brief is necessary because this brief addresses different issues from
those raised in Mr. Cuban's *amicus* brief and because *amici*'s counsel had no
reasonable opportunity to coordinate their efforts with Mr. Cuban's counsel given
that *amici*'s case had not been held in abeyance and appellate counsel had not been
engaged at the time of Mr. Cuban's filing.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This should be a straightforward case under the Appointments Clause. Because the SEC concedes that its ALJs are not appointed by the President, the head of a department, or a court of law, the only question is whether ALJs are "officers of the United States" or mere "employees." Binding Supreme Court precedent makes clear that SEC ALJs are the former. Because SEC ALJs plainly exercise "significant authority pursuant to the laws of the United States," they are officers who must be selected in compliance with the Appointments Clause. That is especially clear when the authority of SEC ALJs is compared to others found to be officers, including special trial judges in the Tax Court, district court clerks, magistrate judges, and all manner of other quasi-judicial officials.

*Amici*'s case underscores the significance of SEC ALJs' authority. As it has in many enforcement actions after passage of the Dodd-Frank Act, the SEC in *amici*'s case chose to seek substantial monetary penalties against unregistered entities through administrative proceedings rather than in federal court. Given that the SEC was advancing a novel and expansive legal theory, it is unsurprising that the agency preferred to have this issue resolved in the first instance by its in-house tribunal. At the summary disposition stage, the ALJ hearing the case issued a far-reaching opinion that resolved multiple complex statutory questions and created a split of authority with both this Court and the Sixth Circuit.

If *amici* are required to continue in the administrative proceeding, they will have to submit to detailed factfinding overseen by an ALJ vested with power to issue subpoenas, rule on motions and offers of proof, examine witnesses, enter orders of default, and sanction parties for contemptuous conduct. If the ALJ again rules for the SEC (as ALJs usually do), review by the Commission will likely depend on *amici*'s ability to demonstrate clear factual error. If the Commission approves the ALJ's decision (as it usually does), a successful petition for review will likely require *amici* to overcome heavy deference to the factual findings and statutory interpretation embedded in the record created by the ALJ. In the face of all this, it strains credulity for the SEC to maintain that its ALJ is a mere employee who exercises less authority than a district court clerk. Whatever other constitutional concerns might be implicated by the SEC's scheme of administrative adjudication, the Commission's evasion of accountability for significant decisions is precisely what the Framers drafted the Appointments Clause to prevent.

Not surprisingly, every court that has addressed this question has recognized that SEC ALJs exercise significant authority pursuant to the laws of the United States and accordingly must be selected in compliance with the Appointments Clause. That result is all but dictated by *Freytag v. Commissioner*, 501 U.S. 868 (1991), in which the Supreme Court held that Tax Court special trial judges (STJs) who exercise almost exactly the same authority as SEC ALJs are officers subject to the

Appointments Clause.  The fact pattern of *Freytag*, moreover, hardly establishes a minimum threshold for officer status; the Court's unanimous ruling on the Appointments Clause question made clear that STJs were comfortably on the officer side of the officer/employee line.  Thus, SEC ALJs would be officers even if they had somewhat *less* authority than the judges in *Freytag*.  If there were any lingering doubt about that matter, several persuasive separate opinions—including Justice Scalia's four-Justice concurrence in *Freytag*—explicitly recognize that ALJs are officers under the Appointments Clause.

The SEC rests its entire case on this Court's holding in *Landry v. FDIC*, 204 F.3d 1125 (D.C. Cir. 2000), that ALJs at the Federal Deposit Insurance Corporation ("FDIC") are not officers because they do not issue final decisions.  But *Landry* is readily distinguishable because the ALJs there issued only *recommendations* that had to be reviewed by the FDIC, whereas the ALJs here issue initial decisions that often become final without SEC review.

In all events, this Court need only resolve the narrow question of whether the five ALJs at the SEC are officers of the United States who must be appointed by the President, the head of a department, of a court of law.  For reasons known only to itself, the SEC has refused to accept the responsibility (and accountability) of appointing ALJs itself, as the Appointments Clause demands and the Federal Trade Commission has recently done.  To be sure, there may be other difficult questions

about the constitutionality of ALJ adjudication.  But it is hardly too much to ask that the SEC take responsibility for the far-reaching decisions of its ALJs through the mechanism mandated by the Appointments Clause—a structural safeguard meant "not merely to assure effective government but to preserve individual freedom" against unaccountable administrative power.  *Morrison v. Olson*, 487 U.S. 654, 727 (1988) (Scalia, J., dissenting).  The petition for review should be granted.

## ARGUMENT

### I.    SEC ALJs Must Be Appointed In Compliance With The Appointments Clause If They Exercise Significant Authority Pursuant To The Laws Of The United States.

The separation of powers principles underlying this case are fundamental, but the inquiry for this Court is narrow.  Under the Appointments Clause, all "Officers of the United States" must be appointed either by the President with the advice and consent of the Senate (in the case of principal officers) or by "the President alone … the Courts of Law, or … the Heads of Departments" (in the case of inferior officers).  U.S. Const. art. II, §2.  The SEC concedes that its ALJs are not appointed by the President, a court of law, or the head of a department.  SEC Op. 29.  By the agency's own admission, its process for selecting ALJs is compatible with the Constitution only if its ALJs are not "Officers of the United States."  *Id.*

The text, history, and purpose of the Appointments Clause all shed light on the meaning of the critical term "officers."  As the Supreme Court explained long

ago, the designation of "officer" refers to "all persons who can be said to hold an office under the government." *United States v. Germaine*, 99 U.S. 508, 510 (1878). The term is "intended to have substantive meaning," as opposed to "merely dealing with etiquette or protocol." *Buckley v. Valeo*, 424 U.S. 1, 125-26 (1976). More precisely, an officer is a person who "exercis[es] significant authority pursuant to the laws of the United States." *Id.* at 126. As the executive branch has construed the term in relevant part, an officer is "invested by legal authority with a portion of the sovereign powers of the federal government." *Officers of the U.S. Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 73, 73-74 (2007) ("OLC Op."). In contrast, "employees" of the United States" are "lesser functionaries subordinate to officers of the United States." *Buckley*, 424 U.S. at 126 n.162.

The SEC does not appear to dispute that its ALJs exercise "authority pursuant to the laws of the United States." *Buckley*, 424 U.S. at 126. Nor could it. *See* 5 U.S.C. §556 (establishing authority of ALJs); 15 U.S.C. §78d-1(a) (authorizing SEC to delegate authority to ALJs); 17 C.F.R. §200.30-9 (delegating authority to ALJs). This case accordingly turns on whether SEC ALJs exercise *significant* authority.

From the Founding Era onward, leading authorities have adopted a relatively low bar of "significant" authority to trigger the protections of the Appointments Clause. Early courts recognized that the holders of even minor quasi-judicial positions like justice of the peace qualified as "officers." *Wise v. Withers*, 7 U.S.

331, 336 (1806) (Marshall, C.J.); *Marbury v. Madison*, 5 U.S. 137, 164 (1803).  So too did "clerks" in the executive and judicial branches and federal court "commissioners."  *Ex parte Hennen*, 38 U.S. 230, 258 (1839) (clerk of a district court); *Germaine*, 99 U.S. at 511 ("thousands of clerks in the Departments of the Treasury, Interior, and the others"); *United States v. Allred*, 155 U.S. 591, 594 (1895) (commissioners).  Justice Story explained that officer status extended "especially [to] those connected with the administration of justice," including clerks and court reporters.  3 Joseph L. Story, *Commentaries on the Constitution of the United States* §1530 at 387 (1833).  An influential nineteenth century treatise identified a wide variety of other officers under the Appointments Clause and state law analogs, including court criers, notaries public, school board members and trustees, assessors and tax collectors, and public commissioners.  Floyd R. Mechem, *A Treatise on the Law of Public Offices and Officers* 12-19 (1890).[3]

*Buckley* reaffirmed this early understanding in defining officers as those who exercise "significant authority pursuant to the laws of the United States."  *Buckley*, 424 U.S. at 126; *see* OLC Op. at 86 (*Buckley*'s definition incorporates historical understanding of officers and treats some "arguably insignificant positions as offices").  Recent decisions have confirmed that officer status extends to many quasi-

---

[3] The Supreme Court has relied on Mechem's treatise.  *See, e.g., Bogan v. Scott-Harris*, 523 U.S. 44, 50 n.4 (1998); *Moore v. Mitchell*, 281 U.S. 18, 24 (1930).

Case: 15-12831    Date Filed: 03/29/2016    Page: 23 of 44

judicial officials who possess significant "duties and discretion" and "perform more than ministerial tasks." *Freytag*, 501 U.S. at 881. Those officers include special trial judges in the Tax Court, military judges in Article I tribunals, and magistrate judges. *Id.* at 881-82; *Edmond v. United States*, 520 U.S. 661, 662 (1997); *Weiss v. United States*, 510 U.S. 163, 169-70 (1994); *Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.*, 725 F.2d 537, 545 (9th Cir. 1984) (en banc) (Kennedy, J.). Of particular relevance here, several separate opinions have concluded that *all* ALJs are officers for purposes of the Appointments Clause. *Freytag*, 501 U.S. at 910 (Scalia, J., concurring); *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 542 (2010) (Breyer, J., dissenting); *see also Butz v. Economou*, 438 U.S. 478, 513 (1978) (role of ALJ is "functionally comparable to that of a judge") (quotation marks omitted).

This broad understanding of the "significant authority" sufficient to create an officer furthers a central purpose of the Appointments Clause: "to preserve political accountability relative to important Government assignments." *Edmond*, 520 U.S. at 663. The Framers adopted the Appointments Clause in response to the "manipulation of official appointments" by British royal authorities, who had wielded the appointment power as "the most insidious and powerful weapon of eighteenth century despotism." *Freytag*, 501 U.S. at 883. Concluding that "widely distributed appointment power subverts democratic government," the Framers permitted the appointment of executive branch officials exercising significant legal

authority only by those would be "accountable to political force and the will of the people." *Id.* at 884-85.

The Appointments Clause thus ensures that publicly accountable members of the executive branch—the President and department heads—cannot "escape responsibility" for significant decisions by hiding behind unappointed officials or otherwise "pretending that" those decisions "are not [their] own." *PCAOB*, 561 U.S. at 497. In other words, the Appointments Clause forbids executive "abdication." *Weiss*, 510 U.S. at 189 (Souter, J., concurring). The Clause thus serves not only as one of "the significant structural safeguards of the constitutional scheme," *Edmond*, 520 U.S. at 659, but also "to preserve individual freedom" against unaccountable administrative power, *Morrison*, 487 U.S. at 727 (Scalia, J., dissenting).

## II. Recent Cases, Including *Amici*'s, Illustrate That SEC ALJs Exercise Significant Authority Pursuant To The Laws Of The United States And Must Be Appointed Consistent With The Appointments Clause.

### A. Dodd-Frank's Vast Expansion of SEC ALJs' Authority.

When Congress created the SEC in the 1930s, "its enforcement powers were largely limited to seeking injunctions in federal district courts to enjoin violations of the securities laws, and the only express provision for administrative hearings was to suspend or expel members or officers of national securities exchanges." Jed S. Rakoff, *PLI Securities Regulation Keynote Address: Is the SEC Becoming A Law Unto Itself?*, at 3 (Nov. 5, 2014) ("Rakoff"). Over time, the SEC "obtained or

asserted" additional administrative enforcement powers, "but in each instance, the expansion was tied to the agency's oversight or regulated entities or those representing those entities before the Commission." *Id.* For example, the Commission could conduct its own administrative proceedings to "suspend attorneys, accountants, and other professionals from practicing before it." *Id.*

In 1990, Congress significantly expanded the SEC's adjudicative authority by authorizing it to seek cease-and-desist orders against any person and to impose civil monetary penalties on regulated entities through administrative proceedings. *Id.* at 3-5; *see* Securities Enforcement Remedies and Penny Stock Reform Act of 1990, Pub. L. No. 101-429, 104 Stat. 931. But SEC enforcement actions for monetary penalties against *unregulated* entities still had to be brought in federal district court. *See, e.g.*, *Gupta v. SEC*, 796 F. Supp. 2d 503, 507 (S.D.N.Y. 2011). That changed in 2010 when Congress passed the Dodd-Frank Act, which authorized the SEC to impose substantial monetary penalties through its own administrative proceedings on *any* individual for securities law violations. Pub. L. No. 111-203, §929P, 15 U.S.C. §§77h-1, 78u-2(a). In sum, "the SEC can today obtain through internal administrative proceedings nearly everything that it might obtain by going to court"—a "sea-change" in the law that "has come about almost exclusively at the request of the SEC" and that represents a startling example of "administrative creep." Rakoff at 5-6.

The vast expansion of the SEC's administrative enforcement authority is also a vast expansion of authority for its ALJs, because ALJs may now preside over proceedings that were once the exclusive province of federal district courts. Congress permits the SEC to delegate any of its functions to ALJs, 15 U.S.C. §78d-1(a), and the SEC has assigned responsibility to ALJs "for the fair and orderly conduct of" enforcement proceedings, 17 C.F.R. §200.14—including enforcement proceedings to impose monetary penalties on unregulated parties under Dodd-Frank.

In conducting those proceedings, ALJs have authority to administer oaths, issue subpoenas, hold conferences, rule on motions and offers of proof, examine witnesses, enter orders of default, regulate the course of hearings, and sanction parties for contemptuous conduct.  *Id.*, §§201.155, 201.180(a).  ALJs also rule on motions for summary disposition, with review of a denial available "only in extraordinary circumstances."  §§201.250(b), 201.400.  In practice, summary disposition against the SEC is vanishingly rare; between 1996 and 2014, "only five respondents have persuaded an ALJ to grant summary disposition in their favor— and one of those cases was reversed by the Commission."  Alexander I. Platt, *SEC Administrative Proceedings: Backlash and Reform*, 71 Bus. Law. 1, 22 (2015) ("Platt").

At the end of the proceeding, the ALJ prepares "an initial decision containing the conclusions as to the factual and legal issues presented, and issue[s] an

appropriate order." §200.14(a)(8).  If neither party appeals to the Commission, the ALJ's order becomes final.  15 U.S.C. §78d-1(c).[4]  If a party appeals, the Commission has discretion to decline to review the decision—making the ALJ's decision final—in all but a few limited circumstances.  17 C.F.R. §201.410, 201.411(b).  In deciding whether to grant review, the Commission considers whether a party has made a reasonable showing that the ALJ's "finding or conclusion of material fact … is *clearly* erroneous."  §201.411(b)(2)(ii)(A) (emphasis added).  As petitioners note, 90 percent of ALJ decisions receive no further review.  Br. 31-32.

A party who unsuccessfully appeals an ALJ's decision to the Commission may obtain review in this Court or the regional court of appeals.  15 U.S.C. §78y(a)(1).  But the decision will be affirmed on its facts so long as they are supported by substantial evidence, and the statutory interpretation may receive *Chevron* deference.  *See, e.g.*, *Horning v. SEC*, 570 F.3d 337, 343 (D.C. Cir. 2009).  In other words, "the law as determined by an administrative law judge in a formal administrative decision must be given deference by federal courts."  Rakoff at 10; *see Horning*, 570 F.3d at 343 (granting deference where "the Commission affirmed all of the ALJ's key factual and legal findings and sustained her choice of sanctions").

---

[4] The Commission can grant *sua sponte* review, but this is discretionary and rare. 17 C.F.R. §201.411(c).

In sum, after Dodd-Frank the SEC may now bring an enforcement action to impose civil penalties on an unregulated party *either* before an Article III judge in federal district court *or* before an ALJ in its own administrative proceedings, where its own Rules of Practice apply, the vast majority of cases become final without Commission review, and any case involving Commission review will be reviewed deferentially in the court of appeals.  Unsurprisingly, the SEC has stepped up the number of cases it brings before ALJs.  Platt at 8-9 (collecting data).  In the words of one SEC enforcement official, administrative proceedings are "the new normal." Geoffrey R. Aronow, *Back to the Future: The Use of Administrative Proceedings for Enforcement at the CFTC and SEC*, 35 Futures & Derivatives L. Rep. 1, 3 (2015) (quoting SEC official).  And no wonder: Between September 2013 and September 2014, the SEC "won 100% of its internal administrative hearings … whereas it won only 61% of its trials in federal court."  Rakoff at 7.

## B.    The Enforcement Action Against *Amici* Illustrates the Significant Authority of SEC ALJs.

The SEC's enforcement action against *amici* illustrates the significant authority exercised by ALJs.  *Amici*'s business involves making equity investments in small-cap public companies by purchasing their debt in exchange for issued securities through an agreement approved by a court after a fairness hearing.  Section 3(a)(10) of the Securities Act expressly exempts such transactions from the Act's registration requirement.  15 U.S.C. §77c(a)(10).  The SEC nevertheless instituted

14

an enforcement action against *amici* on the novel theories that Global IV had violated the registration requirement in Section 15(a)(1) of the Exchange Act by failing to register as a "dealer" and that Global Partners violated Section 20(b) of the Exchange Act by causing Global IV to commit that violation.  15 U.S.C. §78*o*(a)(1), §77t(b).

In keeping with its recent pattern, the SEC pursued the action through an administrative proceeding before an ALJ, not a district court action before an Article III judge.  The ALJ denied *amici*'s motion for summary disposition in a wide-ranging opinion that confronted multiple novel questions of statutory interpretation, concluded that there were factual disputes about (among other things) whether Global IV is a "dealer" under the Exchange Act, and openly split from longstanding decisions of this Court and the Sixth Circuit on the scope of liability under §20(b). *In re of Ironridge Glob. Partners, LLC*, Release No. 3298 (Nov. 5, 2015), http://1.usa.gov/1nbyajF.

If *amici* are required to return to the proceedings before the ALJ, they will have to engage in significant factual development based on the ALJ's essentially unreviewable holding that there are factual disputes about whether Global IV is a "dealer" under the Exchange Act.  That factual development, shaped by the ALJ's rulings under the SEC's Rules of Practice, will create the record for any potential appellate review.  If the ALJ rules against *amici*, the Commission will likely not even review the decision unless *amici* can show that the factual findings in the record the

15

ALJ compiled are *clearly* erroneous.  If the Commission approves the ALJ's decision or declines review, *amici* will then have to overcome the barriers of substantial evidence review and possible *Chevron* deference in the court of appeals, again stemming from the underlying decisions of the ALJ.

In short, the authority exercised by the ALJ is not only significant but fundamental to the entire process of SEC adjudication.  The ALJ's role is structural, and it is impossible to unwind the effects of its decisions.  *Cf. United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 38 (1952) (defect in appointment of hearing examiner "would invalidate a resulting order").  The ALJ's role in *amici*'s case illustrates why the district court's holding that ALJs are officers of the United States was plainly correct.

## III. As Every Court To Consider The Question Has Recognized, SEC ALJs Are Officers Of The United States, And Their Current Method Of Selection Is Unconstitutional.

The only question disputed in this case is whether SEC ALJs exercise "significant authority."  As every court to consider the question has concluded, constitutional text, history, and precedent all demonstrate that they do.

### A. Multiple Courts Have Recognized that SEC ALJs Are Officers.

As the SEC has channeled increasing numbers of its most important and novel enforcement actions away from district court and into administrative proceedings, many litigants have—like *amici*—identified the fundamental constitutional problem

created by allowing ALJs to exercise significant authority without being appointed pursuant to the Appointments Clause.

The first court to address this constitutional claim on the merits was the Northern District of Georgia in *Hill v. SEC*, 114 F. Supp. 3d 1297 (N.D. Ga. 2015), *appeal pending* (11th Cir. No. 15-12831).  In *Hill*, the SEC initiated an in-house enforcement proceeding seeking civil penalties against a self-employed real estate developer for insider trading—an action that it would have had to bring in district court before Dodd-Frank.  *Id.* at 1301-02.  The developer sought to enjoin the SEC proceeding by filing an action in district court contending that SEC ALJs were officers who had to be appointed pursuant to the Appointments Clause. The SEC made essentially the same argument that the Government had made in *Freytag*, namely that SEC ALJs—like Tax Court STJs—did "no more than assist … in taking the evidence and preparing the proposed findings and opinion" and lacked "authority to enter a final decision.  *Id.* at 1317 (quoting *Freytag*, 501 U.S. at 880-81).

The district court noted that the Supreme Court had rejected the Government's position in *Freytag*, and went on to do the same because the SEC ALJs' powers "are nearly identical" to those of the STJs in *Freytag*.  *Id.* at 1318.  The court also rejected the SEC's reliance on this Court's 2-1 decision in *Landry*, which held that "authority to render a final decision was a dispositive factor" in distinguishing an officer from an employee.  *Id.*  Finally, the court rejected the SEC's argument that the court should

17

defer to a purported congressional determination that SEC ALJs, despite their significant powers, are mere employees.  As the court explained, allowing Congress to "decide" that question "would defeat the separation-of-powers protections the [Appointments] Clause was enacted to protect.  *Id.* at 1319.[5]

The same district court reiterated its conclusion that SEC ALJs are officers in several other cases presenting this question, including *amici*'s.  *See Ironridge*, 2015 WL 7273262 at *14; *Timbervest, LLC v. SEC*, No. 15-cv-2106, 2015 WL 7597428, at *11 (N.D. Ga. Aug. 4, 2015); *Gray Fin. Grp. v. SEC*, No. 15-cv-492 (N.D. Ga. Aug. 4, 2015).  The SEC continued to press its position in these cases, and the district court rejected each of its new counterarguments.  Among other points, the court noted that the decision in *Landry* was distinguishable from the issue here because the FDIC ALJs in *Landry* rendered only "recommendatory decisions" that had to be reviewed by the agency while SEC ALJs render "initial decisions" that can become final without further action.  *Ironridge*, 2015 WL 7273262 at *15.

A district court in the Southern District of New York adopted the same position in *Duka v. SEC*, No. 15-cv-357, 2015 WL 4940057 (S.D.N.Y. Aug. 3, 2015). The court concluded based on a straightforward reading of *Freytag* that SEC ALJs must be officers for the same reasons that STJs in Tax Court are officers.  *Id.* at *2.

---

[5] Because the case was in a preliminary injunction posture, the court limited its merits analysis to a conclusion that an Appointments Clause violation was likely.

Like *Hill*, *Duka* recognized that *Landry* could be read as a conflicting decision but was unpersuaded by its reasoning.  After the SEC informed the court that it did not plan to make any immediate changes to the process for selecting ALJs, the court entered a preliminary injunction.  *Duka v. SEC*, No. 15-cv-357, 2015 WL 4940083, at *1 (S.D.N.Y. Aug. 12, 2015), *appeal pending* (2d Cir. No. 15-2732).

Numerous other litigants have raised the same Appointments Clause claim, but some district courts have held that they lack jurisdiction to review the constitutional question until after the SEC administrative proceedings have run their course.  *See, e.g.*, *Tilton v. SEC*, No. 15-cv-2472, 2015 WL 4006165, at *13 (S.D.N.Y. June 30, 2015), *appeal pending* (2d Cir. No. 15-2103).  No other court, however, has disagreed with the *Hill*, *Ironridge*, and *Duka* courts on the merits of the Appointments Clause question.  Moreover, a leading scholar recently addressed the matter in detail and agreed that ALJs are officers who must be appointed consistent with the Appointments Clause.  Kent Barnett, *Resolving the ALJ Quandary*, 66 Vand. L. Rev. 797, 811-13 (2013).  Indeed, in Professor Barnett's view, "ALJs are equal to Article III judges, except for the Article III part."  *Id.* at 799.

**B.    Precedents from the Supreme Court and this Court Establish that SEC ALJs Are Officers.**

As the courts that have addressed the question have recognized, this is a straightforward case under the Appointments Clause.  Much of the analysis has focused on *Freytag*, and that is perhaps the simplest basis on which to resolve the

case.  *Freytag* made explicit that the officer/employee distinction turned not on the "lack [of] authority to enter a final decision," but on the "significance of the duties and discretion that special trial judges possess."  *Freytag*, 501 U.S. at 881.  Those duties amounted to "more than ministerial tasks" and included authority to "take testimony, conduct trials, rule on the admissibility of evidence, and … enforce compliance with discovery orders."  *Id.* at 881-82.  As petitioners demonstrate, SEC ALJs perform the same functions and more.  Br. 29-34.  For precisely the same reasons as in *Freytag*, the position of SEC ALJs is "inconsistent with the classifications of 'lesser functionaries' or employees."  *Freytag*, 501 U.S. at 881.

Indeed, matching the duties of the STJs in *Freytag* is more than enough to show officer status for purposes of the Appointments Clause.  There is no reason to think that the duties of the STJs in *Freytag* establish a *minimum* threshold necessary to qualify as an officer.  To the contrary, *Freytag* makes clear that STJs were comfortably on the officer side of the officer/employee divide. The Government's brief in *Freytag* devoted relatively little space to contending that STJs were mere employees, focusing instead on its argument that STJs were properly appointed even if they were officers because the Tax Court Chief Judge was a head of department. Brief for United States, *Freytag*, 501 U.S. 868 (No. 90-762), 1991 WL 11007941 at *28-32, *33-48.  Likewise, the oral argument included few questions about the officer/employee distinction.  Transcript of Oral Argument, *Freytag*, 501 U.S. 868

(No. 90-762), 1991 WL 636473 at *18-19, *53.  And ultimately, the vote on the officer issue was unanimous, with the Court's opinion dispatching the Government's argument that the STJs were mere employees in about two pages.  *Freytag*, 501 U.S. at 880-82.  In short, as the leading separation of powers casebook explains, the STJs in *Freytag* were "indubitably" officers.  Peter M. Shane & Harold H. Bruff, *Separation of Powers Law: Cases and Materials* 388 (3d ed. 2011).  Thus, even if it were true (contrary to petitioners' compelling arguments) that SEC ALJs have somewhat less authority than the STJs in *Freytag*, this Court should still find their duties sufficiently significant to make them officers.

That position is further underscored by Justice Scalia's four-Justice concurrence in *Freytag*, which concludes without noted disagreement that "all" ALJs are officers.  *Freytag*, 501 U.S. at 910 (Scalia, J., concurring).  Nearly two decades later, Justice Breyer, speaking for a different four Justices, took the same view. *PCAOB*, 561 U.S. at 542 (Breyer, J., dissenting).  In the interim, the Executive Branch itself concluded—at least with respect to one department—that ALJs are officers. *Sec'y of Educ. Review of ALJ Decisions*, 15 Op. O.L.C. 8, 14 (1991).  These precedents strongly indicate that SEC ALJs exercise "significant authority" and are not mere employees.  So too do the many early Supreme Court decisions and other authorities finding quasi-judicial officials whose authority is plainly less significant than that of SEC ALJs to be officers.  If district court clerks, court reporters, justices

21

of the peace, magistrates, and the like exercise enough authority to quality as officers, it is inescapable that SEC ALJs do too.

This Court's recent decision in *Tucker v. Commissioner*, 676 F.3d 1129 (D.C. Cir. 2012), lends further support to that position.  In *Tucker*, this Court considered whether certain officials who oversee challenges to tax liens at the Internal Revenue Service Office of Appeals were officers or employees for Appointments Clause purposes.  *Id.* at 1131.  This Court explained that "the main criteria for drawing the line between inferior Officers and employees not covered by the clause are (1) the significance of the matters resolved by the officials, (2) the discretion they exercise in reaching their decisions, and (3) the finality of those decisions."  *Id.* at 1133.  The Court acknowledged that the tax lien matters were significant and that the officials' decisions were effectively final, but held that the "highly constrained" nature of the officials' discretion was "determinative, offsetting the" other factors pointing toward officer status.  *Id.* at 1134.

Here, analysis under the *Tucker* factors points strongly toward officer status. There is no serious dispute that SEC ALJs resolve extremely significant matters, especially in the wake of Dodd-Frank, when SEC ALJs are now entrusted with adjudicating novel and complex securities issues that were for decades the exclusive province of federal district judges.  Nor can there be any doubt that SEC ALJs exercise enormous discretion.  Indeed, the purported independence of ALJs from

Commission control is one of the reasons that ALJ adjudication has withstood challenge under the Due Process Clause. *See, e.g.*, *Sheldon v. SEC*, 45 F.3d 1515, 1518-19 (11th Cir. 1995). The Supreme Court has even held that ALJs exercise sufficient independent discretion as to be entitled to "absolute immunity from damages liability for their judicial acts." *Butz*, 438 U.S. at 513-14. As for finality, Congress has provided that decisions of SEC ALJs become final if the Commission declines to exercise review. 15 U.S.C. §78d-1(c). As noted above, about 90 percent of ALJ decisions become final without Commission review. The authority of SEC ALJs accordingly satisfies all of the *Tucker* factors necessary to constitute an officer. At a minimum, SEC ALJ decisions have "effective finality," and any deficiency in this area is surely "offset[]" by the overwhelming significance of the matters and discretion entrusted to ALJs. *Tucker*, 676 F.3d at 1134.

In addition, the SEC ALJs' independent discretion underscores the basic accountability problem underlying the Commission's position. In *Freytag*, the Government was able to argue (ultimately unsuccessfully) that the Tax Court STJs exercised "no *independent* authority whatever." Brief for United States, 1991 WL 11007941 at *30. The SEC cannot plausibly take that position here. The SEC's own website declares that "[a]dministrative law judges serve as independent adjudicators," SEC, Office of Administrative Law Judges, http://1.usa.gov/1oTAcXz. As noted above, the SEC has long relied on that

independence in defending the legitimacy of its adjudicatory process against due process and related partiality challenges. *See, e.g.*, *In re Ernst & Whinney*, Release No. 271, 1986 WL 175658 at *4 (July 1, 1986) (hearing "will be presided over by an administrative law judge who functions independently of the Commission … performing duties which are functionally comparable to Federal District Court judges"). Yet in this litigation the SEC portrays its ALJs are "mere employees" who are wholly subordinate to the Commission. SEC Op. 3. The SEC cannot have its cake and eat it too, arguing that ALJs are independent and impartial while simultaneously dismissing them as mere employees who need not be appointed by any accountable officer. Such a "diffusion of appointment power," which necessarily results in a lack of executive accountability, is precisely what the Appointments Clause was adopted to prevent. *Freytag*, 501 U.S. at 892.

## C. *Landry* Can Easily Be Distinguished.

In arguing that its ALJs are mere employees, the SEC relies almost exclusively on this Court's 2-1 decision in *Landry*. That reliance is doubly inappropriate because *Landry* is readily distinguishable from this case and because the SEC's effort to extend *Landry* to SEC ALJs would render it irreconcilable with *Freytag*'s analysis of the distinction between officers and employees.

Petitioners correctly explain at length why *Landry* does not control this case. Br. 35-41. In short, *Landry* concluded that "the STJs' power of final decision in

certain classes of cases was critical to the Court's decision" in *Freytag*. *Landry*, 204 F.3d at 1134; *see Tucker*, 676 F.3d at 1134 ("absence of any authority to render final decisions" was "fatal" to the Appointments Clause challenge in *Landry*). Taking *Landry* on its own terms, SEC ALJs are different from FDIC ALJs in the way that matters most: SEC ALJs issue "initial decisions" that can and often do become final without review, 15 U.S.C. §78d-1(c), whereas FDIC ALJs issue only a "*recommended* decision" and a "*proposed* order" that cannot become final without the FDIC's review, *Landry*, 204 F.3d at 1133. If finality makes all the difference, then this case should be decided differently from *Landry*.

Moreover, extending *Landry* to SEC ALJs by placing dispositive emphasis on the SEC's discretion to review ALJ decisions cannot be reconciled with *Freytag*. A close reading of *Freytag* makes clear that the Court expressly rejected the Government's argument that "special trial judges may be deemed employees [under one provision] because they lack authority to enter a final decision." *Freytag*, 501 U.S. at 881. Only after rejecting that argument did the Court add that its (just stated) "conclusion" would not be altered if the duties of STJs under the provision in question "were not as significant" as the Court had found because other provisions gave the STJs authority to enter final decisions. *Id.* at 882.

*Landry* reasoned that "this explanation would have been quite unnecessary if the purely recommendatory powers were fatal in themselves" and accordingly

concluded that "the STJs' power of final decision in certain classes of cases was critical to the Court's decision." *Landry*, 204 F.3d at 1134.  But *Landry*'s conclusion simply does not follow from its premise.  *Freytag*'s discussion of finality was in fact "quite unnecessary," but that just makes it an alternative holding, not a part of the principal holding that the Supreme Court explicitly reached without consideration of the finality element.  *Id.*; *see id.* at 1142 (Randolph, J., concurring).  Moreover, to the degree that any doubt remains about the significance of authority to enter final judgment in the Appointments Clause analysis, *Edmond* makes clear that such authority speaks to the difference between a principal officer and an inferior officer, not the difference between an officer and an employee.  *Edmond*, 520 U.S. at 665 (concluding that military appellate judges were inferior officers *because* they "have no power to render a final decision … unless permitted to do so by other Executive officers").

Thus, whatever the proper classification of ALJs that can issue only "recommendatory" decisions, extending *Landry* to ALJs who can and often do have the final word for the agency, just based on the possibility of review, would render *Landry* inconsistent with *Freytag* and *Edmond*.  Indeed, this Court's decision in *Tucker*—which, as noted above, outlines a three-factor test for distinguishing officers from employees—already took a step away from *Landry*'s exclusive focus on authority to enter final decisions.

**D.    Because SEC ALJs Are Officers, They May Not Adjudicate Cases Unless They Are Appointed Pursuant to the Appointments Clause.**

Because SEC ALJs exercise significant authority pursuant to the laws of the United States and are therefore officers of the United States, they may not adjudicate cases unless they are appointed pursuant to the Appointments Clause.  Adopting that position here need not cause any great disruption to either the SEC or administrative adjudication more generally.  Although there are some 1,600 ALJs in the federal government, this case concerns only the 5 ALJs at the SEC.  *See* Br. for SEC at 29, *Hill v. SEC*, No. 15-12831 (11th Cir. Aug. 4, 2015).  Arrangements at different agencies that select ALJs in a different manner or assign them different responsibilities may present different constitutional considerations.  The Federal Trade Commission, for example, recently decided to directly appoint its ALJs.  *In re LabMD, Inc.*, No. 9357, 2015 WL 5608167, at *2 (F.T.C. Sept. 14, 2015).  Yet the SEC, for reasons it has never explained, steadfastly refuses to take similar responsibility.  Appointing ALJs is of course not the only option; the SEC may also bring its enforcement actions before Article III judges in district court.  But what it may not do is subject litigants like petitioners and *amici* to administrative proceedings before officers who do not satisfy one of "the significant structural safeguards of the constitutional scheme."  *Edmond*, 520 U.S. at 659.  If the SEC seeks to hold individuals accountable before its own tribunals, it must make itself accountable for those who decide the cases.

## CONCLUSION

For the reasons set forth above, this Court should grant the petition for review.

Respectfully submitted,

s/Paul D. Clement
PAUL D. CLEMENT
 *Counsel of Record*
JEFFREY H. HARRIS
CHRISTOPHER G. MICHEL
BANCROFT PLLC
500 New Jersey Avenue, NW
Seventh Floor
Washington, DC 20001
(202) 234-0090
pclement@bancroftpllc.com

*Counsel for Amici Curiae*

February 29, 2016

28

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(d) because it contains 6,650 words—less than one-half the maximum of 14,000 words authorized by Fed. R. App. P. 32(a)(7)(B)(i) for a party's principal brief—excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Circuit Rule 32(a)(1).

2. This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point font.

Dated: February 29, 2016

s/Christopher G. Michel
Christopher G. Michel

## CERTIFICATE OF SERVICE

I hereby certify that on February 29, 2016, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/Paul D. Clement</u>
Paul D. Clement