_____

No. 15-12831
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

**CHARLES L. HILL, JR.,**

*Plaintiff – Appellee*,

v.

**SECURITIES AND EXCHANGE COMMISSION,**

*Defendant – Appellant.*

_____

On Appeal from the United States District Court
Northern District of Georgia, Atlanta Division
District Court Docket No. 1:15-cv-01801-LMM
The Honorable Leigh Martin May
_____

**APPELLEE'S PETITION FOR PANEL REHEARING AND
REHEARING EN BANC**
_____

Ross A. Albert
MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia  30326
Telephone: (404) 233-7000
Facsimile:  (404) 365-9532

Stephen E. Hudson
Hillary D. Rightler
Akash R. Desai
Josh C. Hess
KILPATRICK TOWNSEND &
  STOCKTON LLP
1100 Peachtree Street, N.E., Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

*Attorneys for Appellee Charles L. Hill, Jr.*

Court of Appeals Docket No. 15-12831
*Charles L. Hill, Jr. v. Securities and Exchange Commission*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fed. R. App. P. 26.1 and Local Rule 26.1-1, the undersigned certifies that the following is a complete list of all trial judge(s), attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular case or appeal, and includes subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

- Albert, Ross A.

- Barbero, Megan

- Berns, Matthew J.

- Brinkman, Beth S.

- Desai, Akash R.

- Forstein, Samuel M.

- Freeman, Mark R.

- Grimes, Hon. James E., Administrative Law Judge

- Grogg, Adam

- Hartnett, Kathleen R.

- Hill, Charles L., Jr.

- Horn, John Andrew

- Hudson, Stephen E.

- Humes, Richard M.

- Kilpatrick Townsend & Stockton LLP

- Lin, Jean

- Loomis, M. Graham

- May, Hon. Leigh Martin, U.S. District Judge

- Mayes, Joshua A.

- Mizer, Benjamin C.

- Morris, Manning & Martin, LLP

- Myers, Steven A.

- Ricketts, Jennifer D.

- Rightler, Hillary D.

- Roback, Harry B.

- Rudy, Susan K.

- Sandberg, Justin M.

- Securities and Exchange Commission

- Sommerfield, Lawrence R.

- Spencer, Elissa

- Stern, Mark B.

Respectfully submitted,

 /s/ Ross A. Albert
Ross A. Albert
Georgia Bar No. 007749

*Attorney of record for Appellee Charles L. Hill, Jr.*

## <u>RULE 35 STATEMENT OF COUNSEL</u>

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decision(s) of the Supreme Court of the United States:

- *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126 (2012)

- *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 130 S. Ct. 3138 (2010)

- *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 114 S. Ct. 771 (1994)

Consideration by the full Court is necessary to secure and maintain uniformity of decisions in this Court.

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves the following question of exceptional importance: whether a federal district court has jurisdiction to consider a constitutional challenge to the Securities and Exchange Commission's appointment of administrative law judges.

Respectfully submitted,

/s/ Ross A. Albert
Ross A. Albert

*Attorney of Record for Charles L. Hill, Jr.*

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS ........................................................i

RULE 35 STATEMENT OF COUNSEL.................................................................iv

TABLE OF CONTENTS.....................................................................................v

TABLE OF AUTHORITIES ............................................................................. vii

STATEMENT OF ISSUES WARRANTING EN BANC CONSIDERATION.......1

I.   STATEMENT OF THE CASE .....................................................................2

    A.   STATEMENT OF THE FACTS..........................................................2

    B.   COURSE OF PROCEEDINGS AND DISPOSITION OF THE
        CASE.....................................................................................3

II.   ARGUMENT AND AUTHORITIES .............................................................5

    A.   Section 78y does not divest federal courts of jurisdiction to hear
        an Article II challenge .........................................................7

    B.   The panel failed to follow binding Supreme Court precedent by
        giving undue weight to the "meaningful judicial review" factor..........8

C.    The panel's consideration of "meaningful judicial review"

conflicts with *Free Enterprise*.............................................................10

III.    CONCLUSION...............................................................................................15

CERTIFICATE OF COMPLIANCE.........................................................................17

CERTIFICATE OF SERVICE ................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Duka v. SEC*,

　　__ F.3d __, No. 15-2732 (2d Cir. June 13, 2016)................................................4

*Duka v. U.S. SEC*,

　　No. 15 CIV. 357 RMB SN, 2015 WL 4940057 (S.D.N.Y. Aug. 3,

　　2015) ....................................................................................................................6

*Elgin v. Dep't of Treasury*,

　　132 S. Ct. 2126 (2012)..................................................................................*passim*

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,

　　561 U.S. 477, 130 S. Ct. 3138 (2010)...........................................................*passim*

*Freytag v. C.I.R.*,

　　501 U.S. 868, 111 S. Ct. 2631 (1991)....................................................................6

*Hill v. SEC*,

　　114 F. Supp. 3d 1297 (N.D. Ga. 2015), *vacated and remanded on*

　　*other grounds by* __ F.3d __, 2016 WL 3361478 (11th Cir. June

　　17, 2016) ...............................................................................................................6

*Hill v. SEC*,

  No. 15-12831 (11th Cir.) ...................................................................2, 3

*Thunder Basin Coal Co. v. Reich*,

  510 U.S. 200, 114 S. Ct. 771 (1994)............................................*passim*

*Tilton v. SEC*,

  __ F.3d __, No. 15-2013, 2016 WL 3084795 (2d Cir. June 1, 2016) ..4, 9, 11, 15

*U.S. Army Corps of Engineers v. Hawkes Co.*,

  578 U. S. ____, ___ S. Ct. __ (May 31, 2016) ..................................11

**Constitutional Provisions**

U.S. Const., art. II, § 2, cl. 2 ...........................................................*passim*

**Statutes**

15 U.S.C. § 78d-1(a)-(b) .............................................................5

15 U.S.C. § 78y .......................................................................*passim*

28 U.S.C. § 1331 ....................................................................1, 3

Dodd-Frank Wall Street Reform and Consumer Protection Act ..............................5

Military Selective Service Act .......................................................13, 14

Mine Act, 30 U.S.C. § 816(a) ...................................................................12

Securities Exchange Act of 1934 Section 14(e) .......................................2

**Regulations**

17 C.F.R. § 201.110 ...................................................................................5

**Other Authorities**

Jean Eaglesham, *SEC Wins with In-House Judges*, WALL ST. J., May

6, 2015, Supp. App. ...............................................................................5

## STATEMENT OF ISSUES WARRANTING EN BANC CONSIDERATION

The question presented on appeal is whether the district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over Mr. Hill's challenges asserted under Article II of the U.S. Constitution.  The panel vacated the district court's decision and ruled that the court did not have subject matter jurisdiction over Mr. Hill's Article II challenge, declining to follow *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 130 S. Ct. 3138 (2010), as binding U.S. Supreme Court precedent, and misreading *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 114 S. Ct. 771 (1994) and *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126 (2012).  Instead, the panel held that:

> the district court lacked jurisdiction over the respondents' collateral attacks. We find it "fairly discernable" from the review scheme provided in 15 U.S.C. § 78y that Congress intended the respondents' claims to be resolved first in the administrative forum, not the district court, and then, if necessary, on appeal to the appropriate federal court of appeals.  *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994) (internal quotation marks omitted).  We see no indication that Congress intended to exempt the type of claims the respondents raise here from the review process it created. *See id.*; *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2136-40 (2012).

The panel's decision conflicts with *Free Enterprise*, a case that decided virtually the same issue, under the same statute (15 U.S.C. § 78y), and under nearly identical facts.  Rehearing is thus necessary to correct the panel's decision, which stands in direct conflict with these decisions of the U.S. Supreme Court.

# I.    STATEMENT OF THE CASE

## A.    STATEMENT OF THE FACTS

The facts are recited in the panel's decision and in Mr. Hill's appellate brief. *See* Op. at 7-9; Hill Appellee's Br. 11-13, *Hill v. SEC*, No. 15-12831 (11th Cir.). In short, Mr. Hill is a self-employed commercial real estate developer. He is not registered with the Securities and Exchange Commission ("SEC"); nor is he required to register as he is not a securities professional nor is he otherwise employed in the securities industry. In June and early July of 2011, Mr. Hill purchased shares of stock in Radiant Systems, Inc. ("Radiant"), which subsequently merged with NCR Corporation. Mr. Hill sold his Radiant shares after the announcement of the merger and enjoyed a profit of about $744,000.

After a two-year investigation by the SEC into the trades, during which Mr. Hill fully cooperated with the SEC, the SEC served Mr. Hill with an Order Instituting Proceedings, accusing him of committing insider trading in violation of Section 14(e) of the Securities Exchange Act of 1934. The SEC chose to bring an administrative proceeding against Mr. Hill, delegating the action to an Administrative Law Judge ("ALJ"), rather than sue Mr. Hill in federal court. In response, Mr. Hill first presented his constitutional challenge to the ALJ. Once Mr. Hill's challenge was denied by the ALJ, Mr. Hill sought to enjoin the administrative proceeding by filing an action in the United States District Court for

the Northern District of Georgia on May 19, 2015.  Mr. Hill's action challenged the constitutionality of the SEC's administrative scheme under the Appointments Clause of the U.S. Constitution, arguing that ALJs should be considered "inferior officers" of the United States.  U.S. Const., art. II, § 2, cl. 2.

## B.    COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE

The parties actively litigated in federal court.  On June 8, 2015, the district judge (the Hon. Leigh Martin May) granted an injunction to Mr. Hill that enjoined the SEC from conducting its administrative proceeding before an ALJ who was not appointed in accordance with the Appointments Clause, and finding that Mr. Hill had shown a likelihood of success on the merits of his Appointments Clause claim. *See* App. Tab 28.

Following binding Supreme Court precedent, including *Free Enterprise*, Judge May found no restriction on the district court's statutory grant of jurisdiction to hear Mr. Hill's claims under 28 U.S.C. § 1331.  This appeal followed.

The parties briefed the appeal and presented oral argument on February 24, 2016.   During oral argument, Chief Judge Carnes noted the challenge of reconciling the Supreme Court's decisions in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 114 S. Ct. 771 (1994) and *Elgin v. U.S. Dep't of Treasury*, 132 S. Ct. 2126 (2012) with *Free Enterprise*.  Oral Argument at 02:56, *Hill v. SEC*, No. 15-12831 (11th Cir. June 17, 2016).  Nonetheless, the panel vacated the district court's

preliminary injunction order and remanded with instructions to dismiss the action for lack of jurisdiction.[1]  Contrary to the district court's well-reasoned decision, the panel found the court did not have subject matter jurisdiction because it was fairly discernable "that Congress's general intent to channel all objections to a final Commission order—including challenges to the constitutionality of the SEC ALJs or the administrative process itself—into the administrative forum and to preclude parallel federal district court litigation."  Op. at 37.

The panel further held that Mr. Hill's constitutional challenges are not "outside the type of claim that Congress intended to be reviewed within this statutory scheme" of 15 U.S.C. §78y, and accordingly, jurisdiction was lacking.  *Id.*   As explained below, the panel's application of the law directly conflicts with binding Supreme Court precedent.  *See also Tilton v. SEC*, __ F.3d __, No. 15-2013, 2016 WL 3084795 (2d Cir. June 1, 2016), *petition for panel rehearing or rehearing en banc filed* July 15, 2016; *Duka v. SEC*, __ F.3d __, No. 15-2732 (2d Cir. June 13, 2016), *petition for panel rehearing or rehearing en banc filed* July 27, 2016.[2]

Because the panel's decision conflicts with binding Supreme Court precedent, en banc review is warranted.

---

[1] The panel's opinion is attached to this Petition as Addendum A.

[2] Mr. Hill respectfully incorporates by reference the reasons in support of rehearing set forth in the *Duka* petition, which is attached hereto at Addendum B.

## II.    ARGUMENT AND AUTHORITIES

The passage of the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act") greatly expanded the authority of the Securities and Exchange Commission ("SEC") to use administrative proceedings to bring actions against individuals that previously could only be brought in federal district court.  Pub. L. No. 111-203, 124 Stat. 1376 (2010).

SEC administrative actions differ from district court cases in several material ways.  The administrative action begins with an Order Instituting Proceedings instituted by the Commission, which presides over the action but typically delegates initial review to an Administrative Law Judge ("ALJ").  *See* 15 U.S.C. § 78d-1(a)-(b); 17 C.F.R. § 201.110.  The administrative action is not governed by the Federal Rules of Civil Procedure or the Federal Rules of Evidence.  In addition, the respondent has no right to a jury trial.  Once the Commission delegates review, the ALJ holds an evidentiary hearing and renders a decision with factual findings and conclusions of law.  Since the passage of the Dodd-Frank Act, the SEC announced plans to abrogate its traditional practice of bringing all insider trading cases in federal court in favor of its own administrative forum in which the SEC has always enjoyed a significantly higher success rate.[3]

---

[3] From October 2010 through March 2015 the SEC won 90% of cases before its in-house administrative law judges ("ALJs"), compared to the 69% success rate in federal court for the same period.  *See* Jean Eaglesham, *SEC Wins with In-House*

Because ALJs have significant authority to conduct hearings, make factual findings, and issue subpoenas, the ALJs are properly characterized as "inferior officers" of the United States and are thus subject to the Appointments Clause of the U.S. Constitution.  U.S. Const., art. II, § 2, cl. 2.  But the SEC's ALJs have not been appointed by the President, the Judiciary, or the Head of a Department as the Appointments Clause requires.  *See Freytag v. C.I.R.*, 501 U.S. 868, 881, 111 S. Ct. 2631, 2640 (1991); U.S. Const., art. II, § 2, cl. 2.

District courts that have considered the merits of the Appointments Clause issue have concluded that federal courts have jurisdiction to consider whether the SEC's administrative scheme is constitutional.  Furthermore, these courts found that the plaintiffs would most likely succeed on the merits of their claims.  *See Duka v. U.S. SEC*, No. 15 CIV. 357 RMB SN, 2015 WL 4940057, at *2-3 (S.D.N.Y. Aug. 3, 2015); *Hill v. SEC*, 114 F. Supp. 3d 1297, 1316-19 (N.D. Ga. 2015), *vacated and remanded on other grounds by* __ F.3d __, No. 15-12831, 2016 WL 3361478, (11th Cir. June 17, 2016).

The U.S. Supreme Court has determined that certain administrative bodies may have jurisdiction over constitutional challenges or claims if such intent is "fairly discernible in the statutory scheme" and the claims at issue are "of the type

---

*Judges*, WALL ST. J., May 6, 2015, Supp. App. Tab 2-9.

Congress intended to be reviewed within th[e] statutory structure." *Thunder Basin*, 510 U.S. at 207, 212, 114 S. Ct. at 776, 779.

In *Thunder Basin*, the Supreme Court outlined a framework to determine whether such claims were intended to be limited by Congress to hearings before the administrative body. The factors are: (1) whether the claims are wholly collateral to a statute's review provisions, (2) whether the claims are outside of the agency's expertise, or (3) whether a finding of preclusion could foreclose all meaningful judicial review. *Id.* at 212-13, 114 S. Ct. at 779. The Supreme Court applied these factors in *Free Enterprise*, 561 U.S. 477, 130 S. Ct. 3138, and *Elgin*, 132 S. Ct. 2126, which provided further guidance on discerning statutory intent. Properly applied to this case, the factors require that the panel's decision be overturned.

## A.    Section 78y does not divest federal courts of jurisdiction to hear an Article II challenge

The Supreme Court in *Free Enterprise* held that § 78y "does not expressly limit the jurisdiction that other statutes confer on district courts. Nor does it do so implicitly." 561 U.S. at 489, 130 S. Ct. at 3150. While a seemingly clear statement of the law, the panel misconstrued *Free Enterprise*.

For example, the panel incorrectly cast Mr. Hill's constitutional challenges as "essentially objections to forthcoming Commission orders" to distinguish Mr. Hill from the *Free Enterprise* petitioners. Op. at 16-17. However, Mr. Hill's

general challenge to the SEC ALJs, including the methods by which they are appointed, is not a challenge to a final Commission order. The panel's erroneous characterization glossed over Mr. Hill's objection to the SEC ALJs authority even to issue orders without proper appointment. Challenging whether an ALJ has the authority to issue orders is a far different challenge than objecting to the substance of any orders the ALJ may issue, and is not precluded from review in federal court.

**B.** **The panel failed to follow binding Supreme Court precedent by giving undue weight to the "meaningful judicial review" factor.**

Federal court jurisdiction is proper (1) when a finding of preclusion could foreclose all meaningful judicial review, (2) when the suit is "wholly collateral to a statute's review provisions," and (3) when the claims are "outside the agency's expertise." *Free Enterprise*, 561 U.S. at 489-90, 130 S. Ct. at 3150. The panel indicated that the "meaningful judicial review" factor alone "strongly favors the procedure [§78y] provides." Op. at 21. In contrast, the panel diminished the importance of the other two factors, concluding that the "wholly collateral" and "agency expertise" factors "do not cut strongly either way." *Id.* at 32. To the contrary, both factors cut strongly in Mr. Hill's favor.

The panel went on to conclude that the first factor is "the most critical thread in case law." The ruling is error and is inconsistent with *Free Enterprise*. *See* 561 U.S. at 490-91, 120 S. Ct. at 3150 (analyzing all three factors before finding

subject matter jurisdiction); *Elgin*, 132 S. Ct. at 2136 (rejecting jurisdiction where "none of those [three] characteristics are present").

Furthermore, the Supreme Court has already determined that an Article II challenge is wholly collateral to any "Commission orders or rules from which review might be sought" under §78y. *Free Enterprise*, 561 U.S. at 490, 130 S. Ct. at 3150. Nonetheless, the panel did not fairly or correctly apply this binding precedent. As in *Free Enterprise*, Mr. Hill's constitutional claims have no relation to the federal securities laws; and Mr. Hill is not seeking to reverse an adverse SEC action, nor challenge any securities statute or SEC regulation. Under *Free Enterprise*, Mr. Hill's Article II challenge is wholly collateral.

The panel also did not properly apply *Free Enterprise*'s holding that an Appointments Clause challenge was "outside the Commission's competence and expertise." *Free Enterprise*, 561 U.S. at 491, 130 S. Ct. at 3151. Instead, the panel stated this factor was "of no moment" because the agency can decide "the merits of an underlying substantive claim and thus 'obviate the need to address the constitutional challenge.'" Op. at 33-34 (citing *Elgin*, 132 S. Ct. at 2140). Following the panel's logic, however, the "agency expertise" factor is meaningless. *See Tilton*, 2016 WL 3084795, at *12 (Droney, J., dissenting) (explaining "the majority's application of the *Thunder Basin* factors has stripped the 'wholly collateral' and 'outside the agency's expertise' factors of any significance: in its

view, as long as administrative proceedings have been initiated, those two factors are always satisfied"). The panel made no attempt to reconcile this apparent inconsistency with *Free Enterprise*. Correctly applied, the *Free Enterprise* precedent stands for the proposition that no one factor alone is sufficient to divest the district courts of jurisdiction.

**C.    The panel's consideration of "meaningful judicial review" conflicts with *Free Enterprise*.**

In *Free Enterprise,* the Supreme Court held that "meaningful judicial review" was not possible without district court jurisdiction over plaintiffs' claims because they objected to the Board's existence, not to any of the Board's standards, applications of the substantive law, or actions. 561 U.S. at 490, 130 S. Ct. at 3150. In the absence of district court jurisdiction, the *Free Enterprise* plaintiffs could only have challenged the constitutionality of the Board's existence by petitioning for review in federal court after potentially already incurring a sizeable fine. The Supreme Court concluded that this circuitous route to federal court was not a meaningful avenue of relief. While the panel in this case concluded that Mr. Hill still has access to meaningful judicial review through the appeals process, the Supreme Court has already made it clear in *Free Enterprise* that the mere possibility of "win[ning] access to a court of appeals" by losing in an administrative proceeding does not provide "meaningful review" when plaintiffs

— 10 —

are challenging the procedures of appointment or removal of an agency's officials.

*Id.*

One example of a lack of meaningful judicial review is when a party must "bet the farm" before it can bring a district court challenge. The Supreme Court recently reaffirmed that challengers should not have to wait and see whether an agency "'drop[s] the hammer' in order to have their day in court." *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U. S. ____, ___ S. Ct. __ , at *7 (May 31, 2016). Similarly, Mr. Hill should not be required to wait-and-see whether an adverse agency decision follows an "arduous, expensive, and long" administrative process before challenging the constitutionality of the process itself. *Hawkes*, at *7; *see Tilton*, 2016 WL 3084795, at *17 (Droney, J., dissenting) (finding the inability of a challenger to obtain an injunction until after a final Commission order is vacated "diminishes the weight of this factor, for while there may be review, it cannot be considered truly 'meaningful' at that point").

Mr. Hill challenges the validity of any ALJ order because all SEC ALJs are unconstitutionally appointed. Under the panel's ruling, the administrative proceeding will be complete, mooting any chance of obtaining an injunction, even if the final Commission order is vacated. A result rendering the constitutional issue moot can hardly be characterized as "meaningful" review. If Mr. Hill loses

in the SEC administrative proceeding and reaches a court of appeals, he will have already suffered the injury that he is trying to prevent.

Moreover, the panel relied on but misread *Thunder Basin*. In *Thunder Basin*, the statutory scheme at issue was the Federal Mine Safety and Health Review Commission, which is authorized to impose civil monetary penalties for, among other infractions, violations of the regulations promulgated under the Mine Act. 30 U.S.C. § 816(a). The Court determined that "[p]etitioner's statutory claims at root require interpretation of the parties' rights and duties under [the Mine Act and accompanying regulations], and as such arise under the Mine Act and fall squarely within the Commission's expertise." *Thunder Basin*, 510 U.S. at 213-14, 114 S. Ct. at 780. However, *Thunder Basin* involved two distinct constitutional claims: one due process claim premised on the Mine Act and its regulations, and a "second [due process] constitutional challenge" against preclusion. *Thunder Basin*, 510 U.S. at 221, 114 S. Ct. at 783 (Scalia, J., concurring in part and concurring in judgment). The Supreme Court rejected district court jurisdiction over the first challenge, but decided the "alternative" due process claim on the merits. *Id.* at 216, 219, 114 S. Ct. at 781, 782 (due process claim attacking preclusion itself was "rejected not on preclusion grounds, but on the merits") (Scalia, J., concurring in part and concurring in judgment); *see Elgin*,

132 S. Ct. at 2137 n.6 (explaining the *Thunder Basin* two constitutional claims and different results).

The panel, however, erred in conflating the two *Thunder Basin* constitutional challenges and incorrectly concluded that *Thunder Basin* "held that the petitioner could obtain meaningful judicial review through the administrative process, even though the petitioner challenged as unconstitutional that very process itself."  Op. at 23.

Furthermore, the panel improperly looked to *Elgin*'s result as applying to the statute governing the SEC administrative scheme in this case, 15 U.S.C. § 78y(a), which the panel stated "makes it clear that Congress intended to preclude parallel federal district court litigation involving challenges to final Commission orders." Op. at 16.  Applying *Elgin*, in the panel's view, because of the detail included in § 78, Congress could not have intended the federal courts to have parallel jurisdiction involving challenges to the Commission's orders, even a constitutional challenge.  *Id.*

In *Elgin*, plaintiffs challenged their dismissal from federal employment for failing to comply with the Military Selective Service Act by not registering for the draft.  132 S. Ct. 2126.  Plaintiffs brought suit in federal court rather than using the available vehicle to challenge their dismissals through the administrative hearings created by the Merit Systems Protection Board ("MSPB").  Their specific

constitutional arguments were that the Selective Service Act discriminated on the basis of sex.  Plaintiffs did not challenge the available administrative process, the creation or structure of the MSPB, or any other claim which could be considered "wholly collateral."  Instead, their argument was that the substance of the laws that the MSPB routinely administered and that were being enforced against plaintiffs was unconstitutional.  Therefore, the Supreme Court considered these claims to not be "wholly collateral," and found in favor of exclusive jurisdiction before the MSPB.

The panel incorrectly determined that *Elgin* controls in this case, and weighs in the SEC's favor, because "[i]n *Elgin*, the Supreme Court held that, if the agency can decide the merits of an underlying substantive claim and thus 'obviate the need to address the constitutional challenge,' its expertise sufficiently 'could be brought to bear' on the constitutional issues."  Op. at 33, quoting *Elgin*, 132 S. Ct. at 2140. This interpretation ignores that the MSPB in *Elgin* was designed specifically to address the merits of the underlying substantive claim, whereas here the SEC has no expertise in determining whether the administrative scheme violated the Appointments Clause.  Nonetheless, the panel determined that even if the constitutional claim falls outside of the agency's expertise, there may be no need to decide the constitutional question because the SEC could determine there was no substantive violation, and the constitutional question would become moot.  But

under this analysis, Mr. Hill would still be forced to undergo an unconstitutional hearing simply because the constitutional issue may become moot after the fact. To read *Elgin* as the panel did would mean that the Supreme Court did not intend for any substantive analysis of the "wholly collateral" or "outside the agency's expertise" factors as long as a proceeding is ongoing.  *See Tilton*, 2016 WL 3084795, at *17 (Droney, J., dissenting).

The panel provided no explanation for why a constitutional challenge to the SEC's appointment scheme for its ALJs should be treated the same as a substantive challenge to an SEC order.  The Supreme Court's lengthy analyses of the substance of the various plaintiffs' claims in *Thunder Basin*, *Free Enterprise* and *Elgin*, require distinct and differing treatment for the two types of claims.  The panel's interpretation renders large portions of the relevant Supreme Court decisions *obiter dictum*.  That is not what a proper reading of Supreme Court precedent requires.  Accordingly, the panel misapplied controlling Supreme Court precedent.  Rehearing should be granted to correct these errors of law.

### III.    CONCLUSION

For these reasons, panel rehearing or rehearing en banc should be granted to correct the panel's misreading and misapplication of Supreme Court precedent.

Respectfully submitted,

 /s/ Ross A. Albert
Ross A. Albert
Georgia Bar No. 007749
raa@mmmlaw.com

MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia  30326
Telephone: (404) 233-7000
Facsimile:  (404) 365-9532

Stephen E. Hudson
Hillary D. Rightler
Akash R. Desai
Josh C. Hess
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, N.E., Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

*Counsel for Plaintiff/Appellee*

August 1, 2016

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this Petition for Panel Rehearing and Rehearing En Banc complies with the type-volume limitations of 11th Circuit Rule 32-4.

I further certify that this application complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ Ross A. Albert

Ross A. Albert

*Counsel for Plaintiff-Appellee*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 1, 2016, I filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit via the Court's Electronic Case Filing (ECF) system, and that the document was served on all parties' counsel of record through the ECF system.

 /s/ Ross A. Albert                    
Ross A. Albert
Georgia Bar No. 007749
raa@mmmlaw.com

MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia  30326
Telephone: (404) 233-7000
Facsimile:  (404) 365-9532

*Counsel for Plaintiff-Appellee*

**ADDENDUM A**

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12831
_____

D.C. Docket No. 1:15-cv-01801-LMM

CHARLES L. HILL, JR.,

Plaintiff - Appellee,

versus

SECURITIES AND EXCHANGE COMMISSION,

Defendant - Appellant.

_____

No. 15-13738
_____

D.C. Docket No. 1:15-cv-00492-LMM

GRAY FINANCIAL GROUP, INC.,
LAURENCE O. GRAY,
ROBERT C. HUBBARD, IV,

Plaintiffs - Appellees,

versus

U.S. SECURITIES AND EXCHANGE COMMISSION,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(June 17, 2016)

Before ED CARNES, Chief Judge, JILL PRYOR and RIPPLE,[*] Circuit Judges.

JILL PRYOR, Circuit Judge:

Congress authorized the Securities and Exchange Commission ("SEC" or the "Commission") to bring civil actions to enforce violations of the Securities Exchange Act of 1934 (the "Exchange Act") and regulations promulgated thereunder. The Commission is empowered to bring such an action either in federal district court or in an administrative proceeding before the Commission. *See* 15 U.S.C. §§ 78u(d), 78u-1, 78u-2, 78u-3. An SEC administrative enforcement action culminates in a final order of the Commission, which in turn is reviewable exclusively by the appropriate federal court of appeals. 15 U.S.C. § 78y.

---

[*] Honorable Kenneth F. Ripple, United States Circuit Judge for the Seventh Circuit, sitting by designation.

2

The issue presented in this consolidated appeal is whether respondents in an SEC administrative enforcement action can bypass the Exchange Act's review scheme by filing a collateral lawsuit in federal district court challenging the administrative proceeding on constitutional grounds. In both now-consolidated cases, the district court held that it had jurisdiction to entertain such challenges. The court further concluded that at least one of the constitutional claims presented was substantially likely to succeed on the merits. To avoid what it determined would be irreparable harm, the district court enjoined the administrative proceedings. The Commission appealed.

After consideration of the parties' briefs and with the benefit of oral argument, we conclude that the district court lacked jurisdiction over the respondents' collateral attacks. We find it "fairly discernible" from the review scheme provided in 15 U.S.C. § 78y that Congress intended the respondents' claims to be resolved first in the administrative forum, not the district court, and then, if necessary, on appeal to the appropriate federal court of appeals. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994) (internal quotation marks omitted). We see no indication that Congress intended to exempt the type of claims the respondents raise here from the review process it created. *See id.*; *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2136-40 (2012). Accordingly, we vacate the

3

district court's preliminary injunction orders and remand with instructions to

dismiss the actions for lack of jurisdiction.

## I.   BACKGROUND

### A.    SEC Administrative Proceedings and Judicial Review

SEC administrative actions differ from cases brought in federal district court

in several respects.  The administrative action begins when the Commission serves

the respondent with an Order Instituting Proceedings ("OIP").  The Commission

then presides over the action, but it typically delegates review to an Administrative

Law Judge ("ALJ").  *See* 15 U.S.C. § 78d-1(a)-(b); 17 C.F.R. § 201.110.  Unlike

an action brought in federal court, in a proceeding before the Commission the

Federal Rules of Civil Procedure and Evidence do not apply, and the respondent

does not enjoy the right to a jury trial.  Instead, the SEC's Rules of Practice, 17

C.F.R. § 201.100 *et seq.*, govern administrative proceedings.  Among other

differences, the Rules of Practice provide for more limited discovery.  For

example, the Rules of Practice allow the taking of depositions at the Commission's

discretion, only upon a finding that the prospective witnesses will be unavailable to

testify at the hearing.  *Id.* §§ 201.233(b), 201.234(a).  The Rules of Practice also do

not provide for routine document production, instead requiring parties to request

that the ALJ issue subpoenas.  *See id.* § 201.232.  Administrative actions proceed

relatively quickly along fixed timelines set by the rules.  *See id.* § 201.360(a)(2).

4

When the Commission delegates review to an ALJ, the ALJ holds an evidentiary hearing and then renders an initial decision with factual findings and conclusions of law. *Id.* § 201.360(a)(1), (b). Either party may appeal the initial decision to the Commission, *id.* § 201.410, or the Commission may review it on its own initiative. *Id.* § 201.411(c). The Commission's review authority is broad. "[It] may affirm, reverse, modify, set aside or remand for further proceedings, in whole or in part, an initial decision by a hearing officer and may make any findings or conclusions that in its judgment are proper and on the basis of the record." *Id.* § 201.411(a). Conversely, if there is no appeal to the Commission, and the Commission declines to exercise its right to review *sua sponte*, the ALJ's initial decision becomes the final decision of the Commission for all purposes. 15 U.S.C. § 78d-1(c). Regardless of whether the initial decision is appealed, the administrative process culminates in a final order of the Commission.

The aggrieved party may then seek review in the United States Court of Appeals either for the circuit in which she resides or has her principal place of business or for the District of Columbia Circuit. 15 U.S.C. § 78y(a)(1). The aggrieved party may request that the Commission stay enforcement of its order pending judicial review. 17 C.F.R. § 201.401. Section 78y then provides a detailed scheme for appellate court review of final Commission orders.

The process of obtaining judicial review begins with the filing of a petition in the court of appeals that triggers the court's jurisdiction.  15 U.S.C. § 78y(a)(1), (3).  Upon the filing of the record in the court of appeals, the court's jurisdiction becomes exclusive.  *Id.* § 78y(a)(3).  Although other provisions of the Exchange Act provide limited district court jurisdiction over some types of securities-related claims,[1] the Act contains no express authorization for district court review of a final Commission order.

Section 78y then details how the court of appeals reviews a final order of the Commission.  The statute grants the reviewing court broad authority "to affirm or modify and enforce or to set aside the [final Commission] order in whole or in part."  *Id.* § 78y(a)(3).  The reviewing court must accept the Commission's factual findings that are supported by substantial evidence, but, if appropriate, the court may remand to the Commission for additional fact finding.  *Id.* § 78y(a)(4)-(5). The statute prohibits the reviewing court from considering a newly-raised objection to a final Commission order unless there was "reasonable ground" for failing to raise the objection first before the Commission.  *Id.* § 78y(c)(1).  The statute generally authorizes the reviewing court to stay enforcement of the

---

[1] *See, e.g.*, *id.* §§ 78u(d), 78u-1, and 78u-3 (authorizing the Commission to seek, in federal district court, injunctive relief, civil penalties, or a temporary escrow order).

Commission's order pending judicial review "to the extent necessary to prevent irreparable injury." *Id.* § 78y(c)(2).

## B.    Factual Background

### 1.    Charles L. Hill, Jr.

The respondent in the first case in this consolidated appeal is Charles L. Hill, Jr., a real estate developer in Georgia who is not registered with the SEC. In June and early July, 2011, Mr. Hill purchased several thousand shares of stock in a company called Radiant Systems, Inc. ("Radiant"). On July 11, 2011, after the markets closed, Radiant announced a merger agreement with NCR Corporation. The next day, Mr. Hill sold all of his Radiant shares, profiting in the amount of approximately $744,000. Mr. Hill maintained that he was unaware of the merger before its public announcement. Nonetheless, in February 2015, after a two-year investigation in which Mr. Hill cooperated fully with the SEC, the Commission served him with an OIP. The SEC sought a cease and desist order, a civil penalty, and disgorgement, alleging that Mr. Hill unlawfully profited from non-public information.

The ALJ scheduled a hearing on the OIP for June 15, 2015. In the meantime, Mr. Hill filed two motions for summary disposition, the first challenging the merits of the claims against him and the second raising as affirmative defenses constitutional arguments going to the heart of the

administrative process itself. Specifically, in the second motion Mr. Hill argued that (1) the administrative proceeding violates the removal protections of Article II of the United States Constitution because ALJs are protected by two layers of tenure, (2) administrative enforcement actions before an ALJ violate the non-delegation doctrine under Article I of the Constitution, and (3) the grant of discretion to the Commission to bring this action in an administrative forum violates his Seventh Amendment right to a jury trial. In separate orders, the ALJ denied both motions. As regards the constitutional issues, the ALJ concluded that he lacked authority to rule on the constitutionality of a particular provision of the Exchange Act and thus could not resolve Mr. Hill's second and third arguments. The ALJ also expressed doubt that he had the authority to reach Mr. Hill's first argument, but nonetheless rejected it on the merits.

Five days after the ALJ issued his order on Mr. Hill's constitutional challenges, Mr. Hill filed in federal district court a complaint and motion for a temporary restraining order seeking to enjoin the SEC proceedings. Mr. Hill raised the same constitutional arguments in the district court that he had raised before the ALJ and, in an amended complaint, added an additional claim under the Appointments Clause of Article II of the Constitution. This new claim asserted that, as constitutional inferior officers, the ALJs must be appointed by the President, department heads, or courts of law. Because the SEC conceded that

8

ALJs are not appointed in that manner, Mr. Hill contended that the appointment of the ALJ in his case was unconstitutional.  The SEC countered that the district court lacked jurisdiction over these claims because Congress designated the administrative forum and appeal procedure of § 78y as the exclusive avenue for deciding them.  The SEC also disputed the merits of Mr. Hill's claims.

After oral argument, the district court issued a thorough order rejecting the SEC's jurisdictional argument and holding that the Commission's ALJs were inferior officers subject to the Appointments Clause.  Because the ALJ was not appointed by the President, department heads, or courts of law, the district court held, the ALJ's appointment likely was unconstitutional.[2]  On this basis, the court granted Mr. Hill's motion for a temporary restraining order.  *Hill v. SEC*, 114 F. Supp. 3d 1297, 1320 (N.D. Ga. 2015).  The Commission appealed.

## 2.    The Gray Respondents

The second case in this consolidated appeal was brought by Gray Financial Group, Inc. ("Gray Financial"), its founder and principal Laurence O. Gray, and its Co-Chief Executive Officer Robert C. Hubbard (collectively the "Gray respondents").  Gray Financial is an investment advisory firm registered with the SEC and the States of Georgia and Michigan.  The firm provides financial

---

[2] The court declined to reach whether the ALJ's two-layer tenure system violated Article II's removal protections and rejected Mr. Hill's remaining arguments.

consulting services to a variety of public and private entities.  In August 2013, the

Commission began investigating whether Gray Financial complied with the

Georgia Public Retirement Systems Investment Authority Law ("Georgia Pension

Law"), O.C.G.A. § 47-20-87.  After about a year, the SEC reached a preliminary

conclusion that the Gray respondents had violated federal securities laws by

offering an investment fund not in compliance with the Georgia Pension Law.  The

SEC urged the Gray respondents to settle or else they would risk an enforcement

action brought in an administrative proceeding.

Based on the SEC's threat, in February 2015 the Gray respondents filed a

complaint in federal district court seeking to enjoin the impending SEC

administrative proceeding and requesting a declaratory judgment that the dual

layer of tenure for SEC ALJs violates the removal protections of Article II.  In

May 2015, the Commission served the Gray respondents with an OIP, initiating an

administrative enforcement action against them.  The Gray respondents then filed

an amended complaint, adding the allegation that the appointments process for

SEC ALJs also violates Article II.  Then, on June 15, 2015, the Gray respondents

filed a motion for preliminary injunction.

After oral argument, the district court—with the same judge presiding as in

Mr. Hill's case—again concluded that it had subject matter jurisdiction and that the

hiring of SEC ALJs violated the Appointments Clause because the ALJs were

10

inferior officers under the Constitution. The district court thus granted the Gray respondents' motion for a preliminary injunction. *Gray Fin. Grp., Inc. v. SEC*, No. 1:15-cv-0492-LMM, 2015 WL 10579873, at *16 (N.D. Ga. Aug. 4, 2015). The Commission appealed. Upon the respondents-appellees' consent motion, we consolidated the Commission's two appeals.

## II. ANALYSIS

We review the district court's determination of subject matter jurisdiction *de novo*. *Doe v. FAA*, 432 F.3d 1259, 1261 (11th Cir. 2005). Federal district courts generally have jurisdiction over claims raising constitutional challenges that seek declaratory and injunctive relief. *See* 28 U.S.C. §§ 1331, 2201. Congress may allocate initial review of such claims to an administrative body, however. *See Thunder Basin*, 510 U.S. at 207. To determine whether Congress has done so, we first decide whether its intent to preclude initial review in the district court is "fairly discernible in the statutory scheme." *Id.* (internal quotation marks omitted); *see also Elgin*, 132 S. Ct. at 2133-33. We then ask whether the litigants' "claims are of the type Congress intended to be reviewed within this statutory structure." *Thunder Basin*, 510 U.S. at 212; *accord Elgin*, 132 S. Ct. at 2136-40. The second part of our analysis focuses on whether the litigant's claims will receive meaningful judicial review within the statutory structure. *See Thunder Basin*, 510 U.S. at 212-14; *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S.

11

477, 490-91 (2010).  We also consider whether "agency expertise could be brought to bear on the . . . questions presented" and the extent to which the litigants' claims are "wholly collateral to [the] statute's review provisions."  *Thunder Basin*, 510 U.S. at 212, 214-15 (alteration adopted and internal quotation marks omitted).

The Supreme Court applied this framework in three cases that guide our analysis here.  In the first, *Thunder Basin Coal Company v. Reich*, the Court held that a statutory review procedure applicable to regulations promulgated under the Federal Mine Safety and Health Amendments Act of 1977, 30 U.S.C. § 801 *et seq.* (the "Mine Act"), which is nearly identical to the review procedure under the Exchange Act at issue here, precluded preenforcement judicial review in the district court of a constitutional challenge to a Mine Act regulation.  *Thunder Basin*, 510 U.S. at 218.  The Court reached a contrary conclusion in *Free Enterprise Fund v. Public Company Accounting Oversight Board*, however.  561 U.S. 477.  There, the Supreme Court held that 15 U.S.C. § 78y, the same statutory review procedure at issue in this case, did not clearly indicate Congressional intent to preclude initial review in the district court of a challenge to the existence of the Public Company Accounting Oversight Board (the "PCAOB"), a private nonprofit corporation under the SEC's oversight, whose actions do not necessarily result in a final Commission order or rule.  *Id.* at 489-91.  And finally, in *Elgin v. Department of the Treasury*, the Court held that it was fairly discernible from the review

process in the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1101 *et seq.*, that Congress intended to preclude district court jurisdiction over a constitutional challenge to a statute authorizing the termination of federal employees who failed to register for the Selective Service.  132 S. Ct. at 2140.

Applying the *Thunder Basin* two-part framework based on our reading of these three Supreme Court cases, discussed in more detail below, persuades us that the respondents' claims in this case must proceed initially in the administrative forum and then through the judicial review scheme Congress established in § 78y. We therefore conclude, consistent with three of our sister circuits, that the district court lacked subject matter jurisdiction.  *See Tilton, et al. v. SEC*, __ F.3d__, No. 15-2103, 2016 WL 3084795 (2d Cir. June 1, 2016); *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015); *Bebo v. SEC*, 799 F.3d 765 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1500 (2016).[3]

A.    **Whether Congressional Intent to Preclude District Court Review of SEC Administrative Proceedings Is "Fairly Discernible in the Statutory Scheme"**

Applying the test established in *Thunder Basin*, we first must decide whether it is "fairly discernible" from the "text, structure, and purpose" of § 78y that Congress intended this statute to provide the exclusive means for judicial review of

---

[3] The decisions in *Bebo* and *Jarkesy* were unanimous.  The Fourth Circuit is also considering this jurisdictional issue.  *See Bennett v. SEC*, No. 15-2584 (4th Cir. appeal docketed Dec. 28, 2015).

an SEC administrative action. *Elgin*, 132 S. Ct. at 2133 (internal quotation marks omitted). We discern from the text of the statute that Congress sought to foreclose district court review of administrative proceedings. *See id.*; *Thunder Basin*, 510 U.S. at 207-09.

*Thunder Basin* is particularly instructive. At issue there was 30 U.S.C. § 816(a), the statutory scheme Congress provided for reviewing decisions of the Federal Mine Safety and Health Review Commission (the "Mine Safety Commission"). *Id.* at 207-12. The Mine Safety Commission is authorized to impose civil monetary penalties for, among other infractions, violations of the regulations promulgated under the Mine Act. *Id.* at 204, 208. The petitioner, Thunder Basin Coal Company ("Thunder Basin"), filed a lawsuit in federal district court to challenge one such regulation, arguing among other points that requiring it to undergo a statutory review process similar to the process set forth in § 78y violated its rights under the Due Process Clause of the Fifth Amendment. *Id.* at 204-05. The Court held that the text and structure of the Mine Act demonstrated Congress's intent to preclude the petitioner's challenge in federal district court. *Id.* at 207-09.

As the District of Columbia Circuit recognized in *Jarkesy*, the text of the Mine Act's judicial review provisions at issue in *Thunder Basin* are "nearly identical" to those governing SEC final orders at issue here. *Jarkesy*, 803 F.3d at

14

16-17.  Both schemes provide exclusive jurisdiction upon the filing of the record in the appropriate court of appeals and grant broad authority to that court to affirm, modify, enforce, or set aside a final agency order in whole or in part.  *Compare* 15 U.S.C. § 78y(a)(1)-(3), *with* 30 U.S.C. § 816(a)(1).  The Mine Act and the Exchange Act both also circumscribe, in essentially the same manner, the appellate court's authority to consider new arguments, reject findings of fact, remand for additional fact finding, or issue a stay.  *Compare* 15 U.S.C. § 78y(a), *with* 30 U.S.C. § 816(a).  We agree with *Jarkesy* that § 78y is materially indistinguishable from § 816(a) and thus evinces Congressional intent to resolve challenges to Commission orders first in the administrative forum and then on appeal to the appropriate courts of appeal.

We find *Elgin* similarly helpful.  In *Elgin*, the Supreme Court considered the CSRA's "comprehensive system for reviewing personnel action taken against federal employees."  *Elgin*, 132 S. Ct. at 2130 (internal quotation marks omitted).  The CSRA set forth in "painstaking detail" the method for covered employees to obtain review of adverse employment actions, first before the Merit Systems Protection Board ("MSPB") and then on appeal exclusively to the United States Court of Appeals for the Federal Circuit.  *Id.* at 2134; *see also id.* at 2130-31 (citing 5 U.S.C. §§ 7513(d), 7701(a)(1)-(2), 7703(b)(1); 28 U.S.C. § 1295(a)(9)).  The CSRA's review provision applies to "[a]ny employee or applicant for

15

employment adversely affected or aggrieved by a final order or decision of the [MSPB]." 5 U.S.C. § 7703(a)(1). The Supreme Court held that given the comprehensive and detailed statutory review scheme set forth in the CSRA, it was "fairly discernible that Congress intended to deny [covered] employees an additional avenue of review in district court." *Elgin*, 132 S. Ct. at 2134.

Likewise, § 78y makes it clear that Congress intended to preclude parallel federal district court litigation involving challenges to final Commission orders. Although perhaps not painstaking, the detail in § 78y indicates that Congress intended to deny aggrieved parties another avenue for review. Moreover, like the CSRA, § 78y is comprehensive, covering all final Commission orders without exception. We are thus convinced that Congress intended any challenge to a final Commission order, even one framed as a constitutional challenge to the administrative process itself, to receive judicial review under § 78y.

The Supreme Court's decision in *Free Enterprise Fund*, which construed § 78y's reach, does not require a contrary conclusion. There, the PCAOB began a formal investigation into the auditing practices of an accounting firm. *Free Enter. Fund*, 561 U.S. at 487. The firm and an associated nonprofit organization then sued the PCAOB in federal district court, arguing that the PCAOB's existence was unconstitutional because, among other reasons, its members were not properly appointed pursuant to the Appointments Clause. *Id.* The PCAOB responded that

16

§ 78y governed the petitioner's challenge, and therefore the case must be dismissed for lack of jurisdiction.  The Supreme Court disagreed.  "Section 78y provides only for judicial review of *Commission* action," the Court reasoned, "and not every [PCAOB] action is encapsulated in a final Commission order or rule."  *Id.* at 490.  In other words, although the text of § 78y covered all final Commission orders, it did not cover all PCAOB action.  Thus, the Supreme Court summarily rejected the government's argument that § 78y indicated Congressional intent to direct the petitioner's challenge into the administrative forum.  *Id.* at 489.

Here, in contrast, the respondents do challenge Commission action—action which, if allowed to proceed, necessarily will result in a final Commission order.  Section 78y provides that respondents must raise *all* objections to an order of the Commission before it becomes final or risk waiving the objection on appeal.  *See* 15 U.S.C. § 78y(c)(1).  The respondents' constitutional challenges are essentially objections to forthcoming Commission orders; thus, they fall within the fairly discernible scope of § 78y's review procedures.

The respondents argue, and the district court concluded, that because the Exchange Act contemplates that some SEC violations may be resolved in district court rather than administrative proceedings, we cannot fairly discern Congressional intent to foreclose the respondents' challenges in this case.  *See Hill*, 114 F. Supp. 3d at 1306 ("There can be no 'fairly discernible' Congressional intent

17

to limit jurisdiction away from district courts when the text of the statute provides the district court as a viable forum."). We disagree.

Most of the provisions on which the respondents rely expressly grant the government, not the respondent, the discretion to bring the action in the district court. *See, e.g.*, 15 U.S.C. §§ 78u(d), 78u-1, 78u-3 (the Commission); *Id.* §§ 78dd-2(d), 78dd-3(d) (the Attorney General). We agree with the D.C. Circuit in *Jarkesy* that "Congress granted the choice of forum to the [government], and that authority could be for naught if respondents . . . could countermand the [government's] choice by filing a court action." *Jarkesy*, 803 F.3d at 17; *see also Tilton*, 2016 WL 3084795, at *3 n.3 ("Congress's decision to vest the SEC with a choice between forums does not imply that the chosen forum should not be exclusive of the other. To the contrary—without such exclusivity, the SEC's statutory power to choose would be illusory.").

The remaining provisions the respondents highlight grant limited district court jurisdiction in special circumstances, standing in sharp contrast to § 78y's broad scope. As two examples, § 78u-3(d) grants the federal district courts narrow jurisdiction to review and, if appropriate, set aside, limit, or suspend a temporary cease-and-desist order entered by the Commission, and § 78u-6(h)(1)(B) authorizes a whistleblower to file a civil action in district court. *See also* 15 U.S.C. § 78bb(f)(2) (authorizing removal of securities class actions from state court to

18

federal district court).  That Congress carved out limited instances in which the

district courts have jurisdiction over actions under the Exchange Act does not

persuade us that Congress also intended for challenges to forthcoming Commission

orders in administrative enforcement actions to be heard in district court.

We also find unpersuasive the respondents' reliance on *Abbott Laboratories*

*v. Gardner* and the Exchange Act's savings clause, 15 U.S.C. § 78bb(a)(2).  In

*Abbott Laboratories*, the Supreme Court held that a preenforcement challenge to

regulations promulgated under one section of the Federal Food, Drug, and

Cosmetic Act, as amended, 21 U.S.C. § 301 *et seq.* ("FDCA"), could be brought in

federal district court despite a statutory review procedure applicable to a different

section of the FDCA.  *Abbott Labs. v Gardner*, 387 U.S. 136, 144-45 (1967),

*abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  This

decision rested on the narrow nature of the review statute at issue, which provided

"*special*-review procedures," *id.* at 142 (emphasis added), only for "certain

enumerated kinds of regulations, not encompassing those of the kind involved" in

that case, *id.* at 141 (footnote omitted).  Based on this limiting language, the Court

concluded that the "special-review procedures" should be read narrowly; only

those special agency decisions covered by the statute must be resolved under the

review scheme.  *Id.* at 144-145.  And the FDCA's savings clause—which stated

that "'[t]he remedies provided for in this subsection shall be in addition to and not

19

in substitution for any other remedies provided by law,'"—"buttressed" the Court's

conclusion. *Id.* at 144 (quoting 5 U.S.C. § 701(f)(6) (1966)).

The respondents assert that, like the savings clause in *Abbott Laboratories*,

the savings clause in the Exchange Act, 15 U.S.C. § 78bb(a)(2),  supports the

conclusion that Congress intended to preserve the district court's authority to hear

constitutional challenges like the ones they raise here.  It is true that the two

savings clauses are substantially similar.[4]  But unlike the narrow review statute in

*Abbott Laboratories*, § 78y covers all timely-raised objections to a Commission's

final order, without qualification.  By its terms, § 78y includes the constitutional

objections respondents raise here.  *Abbott Laboratories* is therefore inapposite.[5]

Finally, we are unpersuaded by Mr. Hill's argument that had Congress

wanted to preclude judicial review of his claims in the district court, it could have

been clearer.  Under the first step of our analysis, we do not require absolute

clarity.  Instead, we simply ask whether Congress's intent to preclude district court

---

[4] Section 78bb(a)(2) states, "Except as provided in subsection (f), [which is inapplicable here,] the rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity."

[5] *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), also does not compel a different conclusion.  In *McNary*, the Supreme Court held that the limited judicial review provision of § 210(e) of the Immigration and Nationality Act, U.S.C. § 1160(e), which applies only to "'a determination respecting an application for adjustment of status,'" did not preclude "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications." *McNary*, 498 U.S. at 492 (quoting 8 U.S.C. § 1160(e)(1)).  The text of the statute indicated that it was meant to cover a "single act rather than a group of decisions or a practice or procedure." *Id.*  Conversely, as noted above, § 78y contemplates review of any objection to a final Commission order, without limitation.  *See* 15 U.S.C. § 78y(c)(1).

review of the administrative proceeding is "fairly discernible in the statutory scheme." *Thunder Basin*, 510 U.S. at 207 (internal quotation marks omitted). We conclude that it is.

**B.    Whether the Respondents' Claims "Are of the Type Congress Intended to Be Reviewed within the Statutory Structure"**

We next turn to whether the specific claims the respondents raise "are of the type Congress intended to be reviewed within this statutory structure." *Id.* at 212. To make this determination, we first consider whether "a finding of preclusion could foreclose all meaningful judicial review" of the respondents' claims. *Id.* at 212-13; *see also Free Enter. Fund*, 561 U.S. at 489. We agree with the Second and Seventh Circuits that the first factor—meaningful judicial review—is "the most critical thread in the case law." *Bebo*, 799 F.3d at 774; *accord Tilton*, 2016 WL 3084795, at *4. Thus, we focus our inquiry there. We conclude without doubt that the respondents' claims can receive meaningful judicial review under § 78y; thus, this first factor strongly favors the procedure the statute provides. We then briefly consider the remaining two factors:  whether the claims are "outside the agency's expertise" and "wholly collateral to a statute's review provisions." *Thunder Basin*, 510 U.S. at 212 (internal quotation marks omitted). Although these two factors are less conclusive, neither of them convinces us that Congress intended to exempt from the statutory review scheme the type of claims respondents raise.

## 1.    Availability of Meaningful Judicial Review

The respondents argue that § 78y fails to offer meaningful judicial review of their claims.  Their primary contention is that § 78y only comes into play after the allegedly unlawful administrative process has run its course, at which time they will have suffered the very injury they seek to avoid, and no amount of postdeprivation relief can remedy it.  Obviously, a court cannot enjoin a process that has already been completed.  Thus, the argument goes, because § 78y cannot cure the injury they will suffer—enduring an unconstitutional administrative process—the respondents are entitled to bring their claims in the district court.

The respondents' argument fails at the outset.  Enduring an unwanted administrative process, even at great cost, does not amount to an irreparable injury on its own.  *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (holding that the substantial burden of defending oneself in an unlawful administrative proceeding does not constitute irreparable injury); *see also Bebo*, 799 F.3d at 775 ("Every person hoping to enjoin an ongoing administrative proceeding could make this argument, yet courts consistently require plaintiffs to use the administrative review schemes established by Congress.").

The respondents do not contest this point.  They instead assert that the administrative process here is not just unlawful—as the petitioner in *Standard Oil* had contended—but unconstitutional.  We fail to see what difference that makes

22

here. Whether an injury has constitutional dimensions is not the linchpin in determining its capacity for meaningful judicial review. *See Thunder Basin*, 510 U.S. at 213-215. In *Thunder Basin*, the Supreme Court held that the petitioner could obtain meaningful judicial review through the administrative process, even though the petitioner challenged as unconstitutional that very process itself. *Id.* at 215. At issue was a provision of the Mine Act granting "'[a] representative of the [mine] operator and a representative authorized by his miners . . . an opportunity to accompany the Secretary [of Labor] . . . during the physical inspection of any coal or other mine.'" *Id.* at 203 (quoting 30 U.S.C. § 813(f)). The representatives were also entitled to "certain health and safety information" and could "promote health and safety enforcement." *Id.* A Mine Act regulation then authorized the miners to designate "'[a]ny person or organization'" to serve as their representative to participate in the "walk-around" physical inspection when it occurs. *Id.* (quoting 30 C.F.R. § 40.1(b)(1)). A related regulation required that the mine post the names, addresses, and telephone numbers of the designees. *Id.* at 203-204 (citing 30 C.F.R. § 40.4).

The miners at Thunder Basin designated employees of their union to represent them; Thunder Basin believed this designation violated collective-bargaining principles and its right to exclude union organizers from the property. *Id.* at 204. Thunder Basin thus objected to posting the names of the designees. *Id.*

23

at 204-05.  Thunder Basin apparently could have complied with the posting

regulation and then sought review of the regulation.  *See id.* at 221 (Scalia, J.,

concurring in part and concurring in the judgment).  Or it could have refused to

comply, begun to incur daily penalties, and meanwhile challenged the regulation

through the statutory review process.  *Id.* at 217-18 (majority opinion).  Instead,

Thunder Basin filed a lawsuit in federal district court raising its collective-

bargaining arguments and adding a claim that requiring it to challenge the

regulation through the statutory review process would violate due process.  *Id.* at

205.

    The Supreme Court held that even if the claims could not be addressed by

the agency, the "petitioner's statutory and constitutional claims . . . [could] be

meaningfully addressed in the Court of Appeals" under 30 U.S.C. § 816(a).  *Id.* at

215.  The Court rejected the argument that due process required initial review in

the district court because "neither compliance with, nor continued violation of, the

statute [would] subject [Thunder Basin] to a serious prehearing deprivation."  *Id.* at

216.  In particular, the Court determined that the alleged harm was "entirely

hypothetical," in part because the designees would not receive advance notice of

the physical inspection, and thus the nonemployee union representatives—

individuals who were unlikely to be on site when the unannounced inspection

occurred—were unlikely to be present to exercise walk-around rights.  *Id.* at 217.

And to the extent the petitioner would suffer any prehearing deprivation, the petitioner failed to "ma[ke] a colorable showing that full postdeprivation relief could not be obtained."  *See id.* at 213.

Likewise, the respondents here have failed to show they will suffer any serious deprivation that the court of appeals cannot remedy under § 78y.  For one thing, the Commission might decide that the respondents violated no securities laws and thus grant the SEC no relief.  But even if the Commission imposes sanctions in its final order, the respondents will have two opportunities to obtain a stay of the Commission's final order pending judicial review, once before the Commission, 17 C.F.R. § 201.401, and a second time before the court of appeals, 15 U.S.C. § 78y(c)(2).  It is therefore entirely possible the respondents will suffer no deprivation before receiving judicial review.  Like the petitioner in *Thunder Basin*, the respondents' alleged pre-review injury is speculative at best.  Moreover, even if the respondents are unable to obtain a stay pending judicial review, they have made no showing that full relief cannot be obtained after judicial review.  To the contrary, § 78y grants the court of appeals the power to vacate a Commission order in whole, relieving the respondents of any liability.  15 U.S.C. § 78y(a)(3).  This case simply does not present a situation where the respondents are likely to suffer irreparable injury while awaiting judicial review.  *See Thunder Basin*, 510 U.S. at 218; *Tilton*, 2016 WL 3084795, at *6 ("Subsequent judicial review cannot

25

restore [financial and emotional resources of litigation], but it can vacate the

resulting judgment and remand for a new proceeding.  That post-proceeding relief,

although imperfect, suffices to vindicate the litigant's constitutional claim.").

The respondents' reliance on *Mathews v. Eldridge*, 424 U.S. 319 (1976), and

its progeny is misplaced.  In *Eldridge*, the Supreme Court held that a recipient of

Social Security disability benefits was permitted to raise in federal district court a

due process challenge to the administrative exhaustion requirements under 42

U.S.C. § 405(g)—providing judicial review for adverse social security benefits

determinations—in part because the plaintiff otherwise would suffer irreparable

injury.  *Id.* at 331-32.  The Court reached its conclusion in *Eldridge* based not on

the constitutional nature of the plaintiff's claims but instead on his "physical

condition and dependency upon the disability benefits."  *Id.* at 331.  The Court

observed that an "erroneous termination would damage [the plaintiff] in a way not

recompensable through retroactive payments."  *Id.*; *accord Bowen v. City of N.Y.*,

476 U.S. 467, 483-84 (1986) (crediting the district court's finding that disabled

claimants, like the plaintiff in *Eldridge*, would suffer irreparable injury not only

because they were denied the benefits they sought, but also because they would

experience the "ordeal of having to go through the administrative appeal process[,]

[which] may trigger a severe medical setback," and thus "[i]nterim benefits

[would] not adequately protect [the] plaintiffs from this harm" (internal quotation

26

marks omitted)); *Kreschollek v. S. Stevedoring Co.*, 78 F.3d 868, 873-75 (3d Cir. 1996) (concluding that despite Congress's fairly discernible intent to preclude district court jurisdiction over ordinary challenges to a worker's compensation decision, the administrative process was insufficient to provide full relief to a person whose benefits had been terminated). The respondents have made no showing that they will suffer a similar irreparable injury here.

Contrary to their assertions, the respondents are not in the type of precarious position the Supreme Court found unacceptable in *Free Enterprise Fund*. 561 U.S. at 489-90. There, the petitioners sought to bring a constitutional challenge to the existence of the PCAOB, which, among other tasks, "promulgates auditing and ethics standards, performs routine inspections of all accounting firms, demands documents and testimony, and initiates formal investigations and disciplinary proceedings." *Id.* at 485. The government argued that rather than bring a challenge in federal district court, the petitioners should simply ignore a request by the PCAOB, voluntarily "*incur* a sanction (such as a sizeable fine)," and then challenge that sanction in the administrative forum. *Id.* at 490. The Court held that this process did not offer a "meaningful avenue of relief." *Id.* at 490-91 (internal quotation marks omitted). Plaintiffs should not be required "to bet the farm by taking the violative action before testing the validity of the law." *Id.* at 490 (alteration adopted and internal quotation marks omitted).

27

Unlike the petitioners in *Free Enterprise Fund*, however, the respondents here need not bet the farm to test the constitutionality of the ALJs' appointment process.  On the contrary, the respondents have already taken the actions that allegedly violated securities laws.  *See Jarkesy*, 803 F.3d at 20 ("Jarkesy is already properly before the Commission by virtue of his alleged violations of those laws. Indeed, the existence of the enforcement proceedings gave rise to Jarkesy's challenges."); *Bebo*, 799 F.3d at 774 (observing that the "key factor in *Free Enterprise Fund* that rendered § 78y inadequate is missing" where the plaintiff does not "need to risk incurring a sanction voluntarily just to bring her constitutional challenges before a court of competent jurisdiction"); *McNary*, 498 U.S. at 496-97 (holding that because most undocumented aliens would need to "voluntarily surrender themselves for deportation" in order to ensure judicial review through the statutory review process, their claims escaped meaningful judicial review).  In other words, to challenge the constitutional adequacy of the appointments of the SEC ALJs before the Commission, as opposed to the district court, the respondents must take no additional risks.

We are also unmoved by the Gray respondents' contention that the timing of their complaint in federal court—before the Commission initiated an administrative enforcement proceeding—grants them license to bypass the review procedures set out in § 78y.  We rejected a similar argument in *Doe v. FAA*.  432

F.3d 1259.  There, aircraft mechanics received certification from a school that,

according to the Federal Aviation Administration ("FAA"), had fraudulently

examined and certified some of its applicants.  *Id.* at 1260.  Because the FAA

could not determine which mechanics had received fraudulent certificates, the

agency decided to reexamine all mechanics who received their certificates from the

school during the relevant time.  *Id.*  The respondents filed a federal lawsuit,

seeking an injunction instructing the FAA how to reexamine the mechanics.  *Id.*

 We found meritless the mechanics' argument that the administrative review

process was inapplicable because the plaintiffs filed their lawsuit before the FAA

took any certification action.  *Id.* at 1262-63.  "The mechanics," we concluded,

"simply cannot avoid the statutorily established administrative-review process by

rushing to the federal courthouse for an injunction preventing the very action that

would set the administrative-review process in motion."  *Id.* at 1263; *see also*

*Thunder Basin*, 510 U.S. at 208, 216 (recognizing that the "[p]etitioner's claims

are 'pre-enforcement' only because the company sued before a citation was issued"

and noting that the statutory judicial review procedure "does not distinguish

between preenforcement and postenforcement challenges").  Similarly, here, it

makes no difference that the Gray respondents filed their complaint in the face of

an impending, rather than extant, enforcement action.[6]  The critical fact is that the

Gray respondents can seek full postdeprivation relief under § 78y.

Finally, we reject the Gray respondents' contention that their claims will

escape meaningful judicial review because of the "paltry discovery" available to

them in the administrative forum.  Gray Respondents' Br. at 26.  On this point,

*Elgin* is instructive.  The petitioners in *Elgin* were former federal competitive

service employees who wished to challenge in federal court the constitutionality of

a law under which they were fired for failing to register for the Selective Service.

*Elgin*, 132 S. Ct. at 2131.  They asserted that the agency could not develop a

sufficient factual record because it lacked the authority to decide the legal question

---

[6] Unlike the Gray respondents, we do not read the conclusions drawn in *Bebo*, *Jarkesy*, and *Tilton* as resting on the timing of the respondents' federal lawsuit.  In *Bebo*, the court simply stressed that as a "respondent in a pending enforcement proceeding, [the plaintiff] does not need to risk incurring a sanction voluntarily just to bring her constitutional challenges before a court of competent jurisdiction."  *Bebo*, 799 F.3d at 774.  As explained above, the same is true for a person who faces an *impending* enforcement proceeding.  The courts in *Jarkesy* and *Tilton* tangentially addressed the timing of the plaintiff's complaint when they considered the "wholly collateral" factor.  But in *Jarkesy*, the court merely theorized in dicta that "[t]he result might be different if a constitutional challenge were filed in court before the initiation of any administrative proceeding (and the plaintiff could establish standing to bring the judicial action)."  *Jarkesy*, 803 F.3d at 23.  Likewise, in *Tilton*, the court simply observed that unlike the Appointments Clause claim in *Free Enterprise*, which "was not moored to any proceeding that would provide for an administrative adjudication and subsequent judicial review," the analogous claim in *Tilton* targeted an aspect of an ongoing proceeding.  *Tilton*, 2016 WL 3084795, at *8. We are confident that the outcome would not have been different in *Jarkesy* or *Tilton* had the Appointments Clause claim challenged an aspect of a specific, forthcoming proceeding.  In any event, we disagree with *Jarkesy* and *Tilton* to the extent they suggest that a district court might have jurisdiction to hear a constitutional challenge simply because it was filed before an impending administrative enforcement action.

and that the appellate court lacked any factfinding capabilities whatsoever. *Id.* at 2138. The Supreme Court was unpersuaded. "Even without factfinding capabilities," the Court reasoned, "the [appellate court] may take judicial notice of facts relevant to the constitutional question." *Id.* Moreover, the CSRA "empowers the [agency] to take evidence and find facts for [appellate] review." *Id.* As the Court explained, it made no difference if the agency lacked the authority to rule on the legal question because there was "nothing extraordinary in a statutory scheme that vests reviewable factfinding authority in a non-Article III entity that has jurisdiction over an action but cannot finally decide the legal question to which the facts pertain." *Id.*

We are equally confident that the respondents here can develop a sufficient factual record for meaningful appellate review under § 78y of their constitutional claims. The administrative process includes adequate tools for the Gray respondents to draw out the facts necessary to mount their constitutional challenge relating to the ALJs' status as inferior officers. The Gray respondents may call witnesses to testify, for example, and if a witness is unavailable to testify, the respondents may seek leave to take that witness's deposition at the Commission's discretion. *See* 17 C.F.R. §§ 201.233, 201.234. The respondents may also request that the ALJ issue subpoenas when appropriate. *See id.* § 201.232. These tools, although less robust than those provided by the Federal Rules of Civil Procedure,

do not leave the Gray respondents without a meaningful avenue to develop the record.

Moreover, to the extent the Commission fails to develop a sufficient factual record, the reviewing court not only may take judicial notice of facts relevant to the constitutional questions, *see* Fed. R. Evid. 201, but under § 78y(a)(5) it may also remand to the Commission for further factfinding.  Section 78y(a)(5) provides that if the appellate court determines, on a party's motion, that "additional evidence is material and that there was reasonable ground for failure to adduce it before the Commission, the court may remand the case to the Commission for further proceedings, in whatever manner and on whatever conditions the court considers appropriate."  15 U.S.C. § 78y(a)(5).  The combined effect of these mechanisms adequately allows for the development of a sufficient factual record.  In sum, we are without doubt that under § 78y the respondents can receive meaningful judicial review of their claims.

### 2.    The "Wholly Collateral" and Agency Expertise Factors

The remaining two factors do not cut strongly either way and thus do not persuade us that the respondents claims fall outside the scope of § 78y's review scheme.  *See Tilton*, 2016 WL 3084795, at *4 ("[A]lthough [the wholly collateral and agency expertise factors] present closer questions in this case, they do not persuasively demonstrate that the Appointments Clause claim falls outside the

scope of the SEC's overarching scheme."). We first consider whether "agency expertise [could] be brought to bear on the . . . questions presented." *Thunder Basin*, 510 U.S. at 215 (internal quotation marks omitted). *Elgin* tells us that it can here. *See Elgin*, 132 S. Ct. at 2140. In *Elgin*, the Supreme Court held that, if the agency can decide the merits of an underlying substantive claim and thus "obviate the need to address the constitutional challenge," its expertise sufficiently "could be brought to bear" on the constitutional issues. *Id.* (internal quotation marks omitted); *see also Thunder Basin*, 510 U.S. at 215 (holding that even if the agency is powerless to address the constitutional question, so long as the claims "can be meaningfully addressed in the Court of Appeals," the Court will not disregard the fairly discernible intent of Congress).

As in *Elgin*, here the Commission might decide that the SEC's substantive claims are meritless and thus would have no need to reach the constitutional claims. *See Tilton*, 2016 WL 3084795, at *10 ("[T]he Commission could rule that the appellants did not violate the Investment Advisers Act, in which case the constitutional question would become moot.").[7] We are thus satisfied that the

---

[7] In his dissenting opinion in *Tilton*, Judge Droney argued that unlike the constitutional claim at issue in *Elgin*, the Appointments Clause challenge is similar to a jurisdictional one, and thus should precede a decision on the merits. *Tilton*, 2016 WL 3084795, at *15 (Droney, J., dissenting). In other words, he suggests that the ALJ cannot simply punt on the Article II issue and go straight to the merits of the alleged securities law violations. Even if this were true, we don't think it matters. Perhaps the ALJ cannot obviate the need to decide the Article II question, but she can obviate the need for a court of appeals to decide it. Indeed, if a respondent wins on

Commission's expertise could be brought to bear in this way, even if its expertise could offer no added benefit to the resolution of the constitutional claims themselves.  Thus, it is of no moment that respondents' Article II claims themselves are outside the agency's expertise.  *See Free Enter. Fund*, 561 U.S. at 491 (holding that an Appointments Clause challenge to the PCAOB, which challenge was materially similar to the constitutional challenges raised here, did not require the type of "fact-bound inquir[y]" that called for agency expertise).[8]  In short, the agency expertise factor gives us "no reason to conclude that Congress intended to exempt [the respondents'] claims from exclusive review before" the Commission and the appropriate court of appeals.  *Elgin*, 132 S. Ct. at 2140.

Nor does the final factor—whether the respondents' claims are wholly collateral to the statute's review provisions—tip the scales in favor of judicial review outside of the procedures set forth in § 78y.  As the court in *Bebo*

_____

the merits before the Commission, the respondent has not suffered an adverse decision entitling him to appellate review.  *See* 15 U.S.C. § 78y(a)(1) (authorizing only "aggrieved" persons to appeal an adverse order of the Commission).  This point "dovetails with our analysis of the availability of meaningful judicial review."  *Tilton*, 2016 WL 3084795, at *10 (majority op.)  We agree with the majority opinion in *Tilton* that "a favorable Commission order, including one on statutory grounds, would provide an acceptable resolution of the Appointments claim and obviate any need for judicial review."  *Id.*

[8] We note that during oral argument in this case, the SEC conceded that *Free Enterprise Fund* compels the conclusion that the respondents' Appointments Clause challenge is outside the Commission's expertise.

34

recognized, there are several ways to understand this factor. *Bebo*, 799 F.3d at 773; *see Tilton*, 2016 WL 3084795, at *8. We could simply compare the merits of the respondents' constitutional claims to the substance of the charges against them. *See Eldridge*, 424 U.S. at 330 (concluding that the petitioner's assertion that the Due Process Clause entitled him to a hearing before the termination of his disability benefits was "entirely collateral to his substantive claim of entitlement"). This approach arguably supports the respondents' position: even if the respondents were to prevail on their constitutional claims challenging the status of ALJs, they could still face a civil enforcement action in federal district court. *See Gupta v. SEC*, 796 F. Supp. 2d 503, 513 (S.D.N.Y. 2011) ("These allegations . . . would state a claim even if [the respondent] were entirely guilty of the charges made against him in the OIP."). In this sense, the respondents' claims are collateral to the SEC's substantive allegations.

We could focus instead on whether the respondents' claims are "wholly collateral to [the] *statute's review provisions*." *Elgin*, 132 S. Ct. at 2136 (emphasis added) (internal quotation marks omitted). The Court took this approach in *Elgin*, where federal employees did not dispute the merits of the charges against them but instead challenged their removal by attacking the statute under which they were terminated. *Id.* at 2139-40. The Court observed that the constitutional claims were "the vehicle by which they [sought] to reverse the removal decisions, to return to

35

federal employment, and to receive the compensation they would have earned but for the adverse employment action." *Id.* Their "challenge to [a] CSRA-covered employment action brought by CSRA-covered employees requesting relief that the CSRA routinely affords," therefore, was not wholly collateral to the CSRA review scheme. *Id.* at 2140.

Viewed through this lens, it is less clear whether the respondents' constitutional claims are wholly collateral to the review procedure set forth in § 78y. The respondents attack the constitutionality of the ALJs and the administrative process as a vehicle to challenge the SEC's decision to bring the case before the Commission, suggesting that their constitutional challenges are not wholly collateral to the SEC's review provisions. But the respondents' challenge is not a means to avoid liability altogether; as explained above, even if they prevail on their constitutional claims, they could face a civil enforcement action in federal district court. Thus, their constitutional arguments are not a "vehicle by which they seek" to prevail on the merits. In any event, whether we characterize the respondents' claims as wholly collateral, this factor does not convince us that Congress intended to grant the respondents a license to bypass § 78y in the face of our conclusion that the statute guarantees meaningful judicial review. *See Thunder Basin*, 510 U.S. at 215 (deciding the jurisdictional issue without concluding that the claims were wholly collateral). We agree with the Seventh Circuit that "it is

'fairly discernible' that Congress intended [the respondents] to proceed exclusively through the statutory review scheme established by § 78y because that scheme provides for meaningful judicial review in 'an Article III court fully competent to adjudicate petitioners' claims.'"  *Bebo*, 799 F.3d at 774 (quoting *Elgin*, 132 S. Ct. at 2137)).  We thus conclude that the respondents' claims are of the type Congress intended § 78y to govern.

### III. CONCLUSION

Congress set forth a detailed process for exclusive judicial review of final Commission orders in the federal courts of appeals.  15 U.S.C. § 78y.  From the text of the statute, we fairly discern Congress's general intent to channel all objections to a final Commission order—including challenges to the constitutionality of the SEC ALJs or the administrative process itself—into the administrative forum and to preclude parallel federal district court litigation.  We find no indication that the respondents' constitutional challenges are outside the type of claims that Congress intended to be reviewed within this statutory scheme.  Accordingly, the district court erred in exercising jurisdiction.  We vacate the district court's preliminary injunction orders and remand with instructions to dismiss each case for lack of jurisdiction.

**VACATED AND REMANDED WITH INSTRUCTIONS TO DISMISS FOR LACK OF JURISDICTION.**

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

June 17, 2016

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 15-12831-CC  ; 15-13738 -CC
Case Style: Charles Hill, Jr. v. Securities and Exchange Commis
District Court Docket No: 1:15-cv-01801-LMM

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Joe Caruso, CC at (404) 335-6177.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion

**ADDENDUM B**

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

## MOTION INFORMATION STATEMENT

Docket Number(s): **15-2732**                              Caption [use short title]

Motion for: **Reconsideration or Reconsideration**

**En Banc**

Set forth below precise, complete statement of relief sought:

**Plaintiff-Appellee Barbara Duka respectfully**

**requests reconsideration or reconsideration**

**en banc of the June 13 Order (ECF No. 79),**

**which was based on Tilton v. SEC,**

**No. 15-2103, 2016 WL 3084795 (2d Cir. June 1, 2016)**

**Duka v. U.S. Securities and Exchange Commission**

---

**MOVING PARTY:**                                   **OPPOSING PARTY:** U.S. Securities and Exchange Commission

- [✓] Plaintiff            [ ] Defendant
- [ ] Appellant/Petitioner  [✓] Appellee/Respondent

**MOVING ATTORNEY:** Guy Petrillo                **OPPOSING ATTORNEY:** Megan Barbero

[name of attorney, with firm, address, phone number and e-mail]

Petrillo Klein & Boxer LLP                         United States Department of Justice

655 Third Avenue, 22nd Floor, New York, NY 10017    950 Pennsylvania Avenue, NW, Washington, DC 20530

(212) 370-0331 gpetrillo@pkbllp.com                 (202) 532-4631 megan.barbero@usdoj.gov

Court-Judge/Agency appealed from: **Southern District of New York, Honorable Richard M. Berman**

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
- [✓] Yes [ ] No (explain):_____

Opposing counsel's position on motion:
- [ ] Unopposed [✓] Opposed [ ] Don't Know

Does opposing counsel intend to file a response:
- [ ] Yes [ ] No [✓] Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has request for relief been made below?            [ ] Yes [ ] No
Has this relief been previously sought in this Court?  [ ] Yes [ ] No
Requested return date and explanation of emergency:_____

Is oral argument on motion requested?  [ ] Yes [✓] No  (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  [ ] Yes [✓] No  If yes, enter date:_____

**Signature of Moving Attorney:**

/s/ Guy Petrillo _____ Date: July 27, 2016    Service by: [✓] CM/ECF  [ ] Other [Attach proof of service]

---

**Form T-1080** (rev. 12-13)

# 15-2732

**IN THE**
# United States Court of Appeals for the Second Circuit

BARBARA DUKA,

Plaintiff-Appellee,

v.

U.S. SECURITIES AND EXCHANGE COMMISSION,

Defendant-Appellant.

On Appeal from the United States District Court for the Southern District of New York,
No. 15-cv-357 (Berman, J.)

---

## MOTION FOR PANEL RECONSIDERATION OR RECONSIDERATION EN BANC OF PLAINTIFF-APPELLEE

---

PETRILLO KLEIN & BOXER LLP
655 Third Avenue, 22nd Floor
New York, New York 10017
(212) 370-0330

*Counsel for Plaintiff-Appellee*
*Barbara Duka*

# TABLE OF CONTENTS

Page

RULE 35(B) STATEMENT ......................................................1

BACKGROUND ..................................................................3

REASONS FOR GRANTING RECONSIDERATION ...........................7

CONCLUSION ..................................................................15

## TABLE OF AUTHORITIES

**Cases**                                                                **Page**

*Altman v. SEC*,
    687 F.3d 44 (2d Cir. 2012) (*per curiam*)........................................................2, 11

*Altman v. SEC*,
    768 F. Supp. 2d 554 (2011) ..................................................................11

*Bebo v. SEC*,
    799 F.3d 765 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1500 (2016) .....................8

*Elgin v. Department of Treasury*,
    132 S. Ct. 2126 (2012)............................................................. 2, 10-14

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
    06 Civ. 217 (JR), 2007 WL 891675 (D.D.C. Mar. 21, 2007). ............................10

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
    561 U.S. 477 (2010),....................................................................... *passim*

*FTC v. Standard Oil Co. of California*,
    449 U.S. 232 (1980)........................................................................9, 15

*Hill v. SEC*, 114 F. Supp. 3d 1297 (N.D. Ga. 2015),
    *vacated on other grounds*, 2016 WL 3361478 (11th Cir. 2016)............................1

*Hill v. SEC*,
    No. 15-12831, 2016 WL 3361478 (11th Cir. June 17, 2016) ..........................8, 13

*Jarkesy v. SEC*,
    803 F.3d 9 (D.C. Cir. 2015)..................................................................8

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994)..................................................................... *passim*

*Tilton v. SEC*, No. 15 Civ. 2472 (RA),
2015 WL 4006165 (S.D.N.Y. June 30, 2015) ........................................5

*Tilton v. SEC*, No. 15-2103,
2016 WL 3084795 (2d Cir. June 1, 2016).................................... *passim*

*Williams v. Pennsylvania*,
136 S. Ct. 1899 (2016)...........................................................3

*Williams v. Phillips*,
482 F.2d 669 (D.C. Cir. 1973)..................................................9

**Statutes**

15 U.S.C. § 7217.............................................................10

15 U.S.C. § 77i.............................................................3, 7

15 U.S.C. § 78y.............................................................3

15 U.S.C. § 80a-42..........................................................3

**Other Authorities**

Brief for Plaintiff-Appellee, *Duka v. SEC*,
No. 15-2732 (2d Cir. Dec. 4, 2015) (ECF No. 47)..................... 1, 7, 15

Brief for Respondents, *Sackett v. EPA*,
No. 10-1062, 2011 WL 5908950 (U.S. Nov. 23, 2011) ........................8

Brief for the United States, *Free Enterprise Fund v.
Public Co. Accounting Oversight Board*,
2009 WL 3290435 (U.S. Oct. 13, 2009).......................................10

Complaint, *Tilton v. SEC*, No. 15 Civ. 2472 (RA)
(S.D.N.Y. Apr. 1, 2015) (ECF No. 1)........................................5

Jean Eaglesham, *SEC Appeals Process on the Slow Track*,
WALL ST. J., Dec. 21, 2015.................................................2

Mohammed Riad & Kevin Timothy Swanson,
   Exchange Act Release No. 4446, 2016 WL 3648316 (July 8, 2016).....................8

Notice of Civil Appeal, *Duka v. SEC*, No. 15-2732
   (2d Cir. Aug 27, 2015) (ECF No. 1).........................................................................4

Order, *Duka v. SEC*, No. 15-2732
   (2d Cir. July 8, 2016) (ECF No. 94).........................................................................6

Order, *Duka v. SEC*, No. 15-2732
   (2d Cir. June 13, 2016) (ECF No. 79) ......................................................... 2, 6, 15

Order, *Duka v. SEC*, No. 15-2732
   (2d Cir. Feb 29, 2016) (ECF No. 70).......................................................................4

Raymond J. Lucia Cos.,
   Exchange Act Release No. 76241, 2015 WL 6352089 (Oct. 22, 2015) ...............8

Second Circuit Local Rule 40.2 ......................................................................................2

*Tilton v. SEC*, No. 15-2103
   (2d Cir. July 18, 2016) (ECF No. 150)....................................................................6

## RULE 35(B) STATEMENT

As every court to have considered the issue has held, the SEC's administrative law judges ("SEC ALJs") are inferior officers, and under the Appointments Clause, must be appointed by the Commissioners of the SEC. *See* Brief for Plaintiff-Appellee, *Duka v. SEC*, No. 15-2732, at 36-51 (2d Cir. Dec. 4, 2015) (ECF No. 47) ("Duka Br."). *See* SPA25-27;[1] *Hill v. SEC*, 114 F. Supp. 3d 1297, 1316-19 (N.D. Ga. 2015), *vacated on other grounds*, 2016 WL 3361478 (11th Cir. 2016).   In connection with an administrative proceeding brought against her by the SEC, Plaintiff-Appellee Barbara Duka sought an injunction barring the proceeding because it was assigned to an unconstitutionally appointed ALJ.  The District Court issued the injunction, and the SEC appealed.

While the SEC's appeal was pending and before argument, a panel of this Court ruled in a separate case in a 2-1 decision that a party to an SEC administrative proceeding assigned for adjudication to an SEC ALJ may raise an Appointments Clause challenge only *after* the proceeding has concluded. *Tilton v. SEC*, No. 15-2103, 2016 WL 3084795 (2d Cir. June 1, 2016) ("*Tilton*").   As a result, the panel assigned to the SEC's appeal in this matter issued an order vacating the injunction, and remanded "for further proceedings consistent with

---

[1]     "JA__" and "SPA__" refer to page numbers of the joint appendix and special appendix, respectively.

*Tilton*." Order, *Duka v. SEC*, No. 15-2732 (2d Cir. June 13, 2016) (ECF No. 79)
("June 13 Order"). Because the June 13 Order was based exclusively on the
decision in *Tilton*, Duka, in moving for reconsideration or reconsideration en banc
of the June 13 Order,[2] moves for rehearing of *Tilton*.

    *Tilton* (and thus the June 13 Order) should be reheard, because it is in
material conflict with the Supreme Court's decisions in *Thunder Basin Coal Co. v.
Reich*, 510 U.S. 200 (1994), *Free Enterprise Fund v. Public Co. Accounting
Oversight Board*, 561 U.S. 477 (2010), and *Elgin v. Department of Treasury*, 132
S. Ct. 2126 (2012), and this Court's decision in *Altman v. SEC*, 687 F.3d 44 (2d
Cir. 2012) (*per curiam*). Under *Tilton*, Duka must (1) defend herself before the
very SEC ALJ whose appointment she submits was unconstitutional, (2) in the
event of an adverse ruling, incur sanctions and proceed through the glacial
appellate process of the SEC,[3] (3) then raise an Appointments Clause challenge
before a Court of Appeals, and (4) when she prevails on the merits, undergo a
second proceeding that accords with the Appointments Clause. As recognized by
Judge Droney in dissent, *see Tilton*, at \*17-\*18, this is not "meaningful judicial
review" under the established test for determining district jurisdiction in the

---

[2]    *See* Second Circuit Local Rule 40.2.

[3]    Jean Eaglesham, *SEC Appeals Process on the Slow Track*, WALL ST. J., Dec. 21, 2015
("Since . . . April 2013, the median time for the agency to decide appeals of its in-house judges'
decisions has increased to 19 months, the [Wall Street Journal's] analysis found.").

context of a statutory scheme that provides for judicial review of final agency actions.

Moreover, as Judge Droney explained, the Panel majority's ruling concerning the other two factors of the jurisdictional test – whether the challenge presented is "wholly collateral" to the administrative proceeding and whether "agency expertise" exists to address the specific claim – also contravenes precedent by rendering these factors devoid of substance. *Id*. at *12-*13.

Rehearing is amply warranted not only to harmonize the law of this Circuit with Supreme Court precedent, but also because the majority opinion in *Tilton* would effectively mean that the SEC (or a similarly empowered agency) would have unbounded authority to subject respondents to patently unconstitutional proceedings or unauthorized charges. Respondents would be left with no choice but to patiently endure an administrative proceeding where, for example, the SEC assigned its Division of Enforcement to preside over the proceeding, *see Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016), or where the SEC alleged violations of the commodities futures laws. Such a peculiar and unfair regime was not intended by Congress when it enacted 15 U.S.C. §§ 77i, 78y, 80a-42, as is clear from the plain language of those laws.

## BACKGROUND

From 1998 to March 2012, Duka, an employee of Standard & Poor's

Rating Services ("S&P"), was assigned to the S&P group that rated commercial mortgage-backed securities.  On January 21, 2015, the SEC commenced an administrative proceeding against Duka ("Administrative Proceeding") by issuing an Order Instituting Proceedings ("OIP") alleging violations of, among others, Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act arising out of S&P's rating of certain commercial mortgage-backed securities.  *See* JA204-215.  The OIP ordered that a "public hearing for the purpose of taking evidence" be convened "before an Administrative Law Judge."  *See* JA214.

Also in January 2015, Duka filed a Complaint against the SEC, and later an Amended Complaint, seeking, *inter alia*, to enjoin the Administrative Proceeding on the ground that the SEC ALJ assigned to preside over the same was not appointed by the SEC Commissioners in accordance with the Appointments Clause.  *See* JA216-40.  The district court found subject matter jurisdiction, SPA24-25, and issued a preliminary injunction on the ground that, as set forth in the Amended Complaint, the SEC's ALJs were not lawfully appointed under the Appointments Clause, SPA30-32.  The SEC appealed.  Notice of Civil Appeal, *Duka v. SEC*, No. 15-2732 (2d Cir. Aug 27, 2015) (ECF No. 1).

On February 29, 2016, after the appeal had been briefed and scheduled for oral argument, this Court "adjourned" the appeal pending a decision in *Tilton*.  Order, *Duka v. SEC*, No. 15-2732, at 1 (2d Cir. Feb 29, 2016) (ECF No. 70).

There, respondents (collectively, "Patriarch") in a separate, unrelated SEC administrative proceeding also challenged their SEC administrative proceeding under the Appointments Clause.  Complaint, *Tilton v. SEC*, No. 15 Civ. 2472 (RA) (S.D.N.Y. Apr. 1, 2015) (ECF No. 1).  The district court dismissed that action, ruling that the court lacked subject matter jurisdiction.  *Tilton v. SEC*, No. 15 Civ. 2472 (RA), 2015 WL 4006165 (S.D.N.Y. June 30, 2015).

On June 1, 2016, the Panel issued its opinion in *Tilton*, ruling that "[b]y enacting" 15 U.S.C. §§ 77i, 78y, 80a-42, "Congress implicitly precluded federal district court jurisdiction" over Appointments Clause challenges to SEC ALJs. Applying the factors set forth in *Thunder Basin*, 510 U.S. at 212-13, the Panel ruled that (1) Patriarch would receive "meaningful judicial review" "by first awaiting a final Commission order" and petitioning for appellate review, *Tilton*, at *10; (2) Patriarch's claim was not "wholly collateral" because the Appointments Clause claim served as "a vehicle by which" Patriarch sought to prevail in their administrative proceeding, *id*. at *8; and (3) the SEC could "bring its expertise to bear in . . . by resolving the statutory charges against" Patriarch.  *Id*. at *10.

Judge Droney dissented.  He reasoned that the case is "nearly indistinguishable" from *Free Enterprise, Id.* at *12, controlling precedent.  He further explained that "[t]he majority's application of the *Thunder Basin* factors has stripped the 'wholly collateral' and 'outside the agency's expertise' factors of

any significance," because they would "always" be "satisfied" "as long as administrative proceedings have been initiated." *Id*. These factors, however, "have precisely the same weight as they did in *Free Enterprise*"—where the Supreme Court held that the federal securities laws did not preclude district court jurisdiction over an Appointments Clause challenge—"and the application of the remaining factor does not change the result." *Id*.

The Duka panel then issued the June 13 Order. Absent a grant of this motion, reconsideration of the June 13 Order, and affirmance of Judge Berman's ruling, Duka's complaint will be dismissed for lack of jurisdiction, and the Administrative Proceeding before the unconstitutionally appointed SEC ALJ will proceed.

On July 18, 2016, Patriarch filed a Petition for Rehearing or Rehearing En Banc, *see Tilton v. SEC*, No. 15-2103 (2d Cir. July 18, 2016) (ECF No. 150) ("Patriarch Petition"). Duka respectfully incorporates by reference the reasons in support of rehearing set forth therein and further submits that *Tilton* should be reheard on the additional grounds set forth below.[4]

---

[4]     On July 8, 2016, this Court denied Duka's motion for permission to file a joint petition, with Patriarch, for rehearing or rehearing en banc. Order, *Duka v. SEC*, No. 15-2732 (2d Cir. July 8, 2016) (ECF No. 94).

## REASONS FOR GRANTING RECONSIDERATION

1.    The Panel's ruling that parties like Duka, raising structural constitutional claims, can "adequately vindicate their Appointments Clause claim[s]" by "petitioning for judicial review" following an unconstitutional Administrative Proceeding, is inconsistent with the Supreme Court's rulings in *Thunder Basin* and *Free Enterprise. See Tilton*, at *10.  "Provisions for agency review do not restrict judicial review unless the 'statutory scheme' displays a 'fairly discernible' intent to limit jurisdiction, and the claims at issue 'are of the type Congress intended to be reviewed within th[e] statutory structure.'" *Free Enterprise*, 561 U.S. at 489 (quoting *Thunder Basin*, 510 U.S. at 200, 207, 212 (1994)).  "Whether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, and purpose, [and] its legislative history." *Thunder Basin*, 510 U.S. at 207.  Furthermore, it is "presume[d]" that "Congress does *not* intend to limit jurisdiction if 'a finding of preclusion could foreclose all meaningful judicial review'; if the suit is 'wholly collateral to a statute's review provisions'; and if the claims are 'outside the agency's expertise.'" *Free Enterprise*, 561 U.S. at 489 (quoting *Thunder Basin*, 510 U.S. at 212-13) (emphasis added).

Concerning the first of these factors, Duka would be deprived of "meaningful judicial review" if compelled to proceed before a constitutionally

unauthorized hearing officer because the SEC is empowered to impose sanctions

on Duka *prior* to appellate review.  *See* 15 U.S.C. § 77i(b); Duka Br. at 18-21.  The

SEC has recently twice refused to stay orders imposing employment bars pending

appellate review of Appointments Clause challenges to SEC ALJs.  *See*

Mohammed Riad & Kevin Timothy Swanson, Exchange Act Release No. 4446,

2016 WL 3648316 (July 8, 2016); Raymond J. Lucia Cos., Exchange Act Release

No. 76241, 2015 WL 6352089 (Oct. 22, 2015).  Any sanctions imposed by the

SEC on Duka would almost certainly take effect prior to appellate review of her

Appointments Clause claim.  This factor distinguishes this case from *Thunder*

*Basin*, where the Court observed that sanctions could only take effect *after*

appellate review.  510 U.S. at 218 ("[a]lthough the Act's civil penalties

unquestionably may become onerous if petitioner chooses not to comply, the

Secretary's penalty assessments become final and payable only after full review by

both the Commission *and the appropriate court of appeals*.") (emphasis added).[5]

Notably, neither the Panel nor any of the other Courts of Appeal that have recently

addressed district court jurisdiction to hear challenges to SEC administrative

---

[5]    The Government cited this portion of *Thunder Basin* in arguing that EPA compliance
orders issued under the Clean Water Act were not subject to immediate judicial review.  *See*
Brief for Respondents, *Sackett v. EPA*, No. 10-1062, 2011 WL 5908950 (U.S. Nov. 23, 2011)
(urging Supreme Court to require exhaustion because "Petitioners cannot be subjected to civil
penalties for violating the order *unless and until a court* determines that a CWA violation has
occurred and considers the statutory factors bearing on the appropriate penalty amount.")
(emphasis added).

-8-

proceedings, including *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015), *Bebo v. SEC*, 799 F.3d 765 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1500 (2016), and *Hill v. SEC*, No. 15-12831, 2016 WL 3361478 (11th Cir. June 17, 2016), have considered or addressed this argument.

In addition, the Panel majority's analogy to *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 244 (1980), is inapt.  Compelling Patriarch and Duka to participate in unconstitutionally structured administrative proceedings does not merely cause "expense and disruption before the administrative proceeding" concludes, *see Tilton*, at *7.  Rather, it generates independent, cognizable harm.[6] *Id*. at *18 (Judge Droney explaining that *Free Enterprise* "suggests that the Supreme Court considers the very process of enforcement by an unconstitutional body to be an injury that can be relevant to the determination of whether post-proceeding review is 'meaningful.'").  The Panel's ruling would require Duka to "suffer[] the injury that [she is] attempting to prevent," to wit, participation in a proceeding before an unconstitutionally appointed ALJ, "rendering the possibility

---

[6]    Taken to its logical conclusion, the Panel's reasoning would mean that a court could never enjoin an unconstitutionally appointed officer from acting in an official capacity because there could never be a showing of irreparable harm.  *Cf. Williams v. Phillips*, 482 F.2d 669, 670 (D.C. Cir. 1973) (*per curiam*) (refusing to lift injunction preventing unconstitutionally appointed principal officer from "taking any further action" as Acting Director of the Office of Economic Opportunity).

of obtaining an injunction moot even if the final Commission order is vacated." *Id*. at *17.

The Panel decision, in distinguishing this case from *Free Enterprise*, *id*. at *5, where a pre-hearing Appointments Clause challenge was recognized as within the jurisdiction of the lower court,[7] *see Free Enterprise*, 561 U.S. at 489-91, is also not consistent with *Thunder Basin*. There, as the Supreme Court framed the jurisdictional question, the issue is whether the "*claims are of the type* Congress intended to be reviewed within this statutory structure," *Thunder Basin*, 510 U.S. at 212 (emphasis added). The Panel, however, rather than focusing on whether the claim is of a type that Congress meant to see reviewed within the administrative statutory process, rests its decision solely on whether administrative proceedings have been formally commenced.

2**.**    The Panel majority's ruling that the Appointments Clause challenge was not "wholly collateral" because it "arose directly from [the SEC administrative proceeding] and serves as an affirmative defense within the proceeding," *see*

---

[7]     When the complaint was filed by Beckstead and Watts ("BW") in district court, the PCAOB had "released a report critical of [BW's] auditing procedures," *Free Enterprise*, 561 U.S. at 487, and BW was "the subject of an ongoing disciplinary investigation." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 06 Civ. 217 (JR), 2007 WL 891675, at *2 (D.D.C. Mar. 21, 2007). BW filed a complaint seeking to "bar[] the [PCAOB] from taking any further action against [BW] and an order nullifying and voiding any prior adverse action against the firm." Brief for the United States, *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 2009 WL 3290435, at *16 (U.S. Oct. 13, 2009) (internal quotation marks omitted). The PCAOB declined to take any "further action" against BW, *id*. at *7 n. 5, which could have included the imposition of sanctions reviewable by the SEC pursuant to 15 U.S.C. § 7217(c)(2).

-10-

*Tilton,* at *8, is also out of step with precedent.  In each of *Thunder Basin*, *Free Enterprise*, and *Elgin*, the Supreme Court analyzed this factor by "focus[ing] on the substance of the claims," *Tilton*, at *13, and not, as the Panel suggests, on the "binary" question of whether a proceeding had been instituted.  *Id*. at *14.  Indeed, in *Altman*, decided one day after the Supreme Court issued its decision in *Elgin*, this Court adopted the district court's analysis in that case, *see Altman*, 687 F.3d at 46, which focused on whether the claim was "substantively intertwined with the merits dispute that the proceeding was commenced to resolve," *see Tilton*, at *8; *see Altman v. SEC*, 768 F. Supp. 2d 554, 560 (2011), not whether the claim "arose directly," *see Tilton*, at *8, from the proceeding.  Nor is it significant under precedent that a structural constitutional claim may be interposed as an affirmative defense in the flawed proceeding.  Even if dubbed a "defense," the issue nevertheless remains wholly collateral to the proceeding.

The Panel majority's reading of *Elgin* in this regard is flawed.  It cited the following passage of that opinion:

> As evidenced by their district court complaint, petitioners' constitutional claims are the vehicle by which they seek to reverse the removal decisions, *to return to federal employment, and to receive the compensation they would have earned but for the adverse employment action.  A challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme.  Likewise, reinstatement, backpay, and attorney's fees are precisely the kinds of relief that the CSRA empowers the MSPB and the Federal Circuit to provide.  Far from a suit wholly collateral to the CSRA scheme, the case before us is a challenge to*

-11-

> *CSRA-covered employment action brought by CSRA-covered employees*
> *requesting relief that the CSRA routinely affords.*

*Elgin*, 132 S. Ct. at 2139-2140 (internal citations omitted) (emphasis added).   The

Panel effectively ignores the italicized portions of the above-quoted paragraph.  As

recognized by Judge Droney, *Elgin* "held only that a claim involving the substance

of the very act entrusted to the agency for implementation and requesting the types

of relief that the agency regularly gives—a far cry from the present case, where the

constitutional claim has no relation to the securities laws entrusted to the SEC and

the requested remedy of disallowing the proceedings before the ALJ is obviously

not a routine outcome—cannot be considered 'wholly collateral' to the

administrative scheme." *Tilton*, at *14.  Notably, as further explicated by the *Elgin*

dissent, the "wholly collateral" factor asks "whether the claim is legally or

factually related to the type of dispute the agency is authorized to hear."  *See Elgin*,

132 S. Ct. at 2142 (Alito, J., dissenting, joined by Ginsburg, J., Kagan, J.).  Thus,

the *Elgin* majority did not silently intend to re-define the "wholly collateral" factor,

as the Panel suggests.  And, here, the constitutional claim has no connection

whatsoever with the securities law allegations made in the Administrative

Proceeding.

> 3.      The Panel also erred in ruling that the "agency expertise" factor

weighed against district court jurisdiction because the SEC could "resolv[e]

accompanying potentially dispositive issues[, such as the sufficiency of statutory

-12-

allegations,] in the same proceeding." *Tilton*, at *9. As with the Panel's analysis of the "wholly collateral" factor, this interpretation transforms the expertise factor from the substantive question of whether an agency has special expertise to determine an issue "into a purely procedural" and "binary" one, namely, whether the agency has instituted proceedings. *Id*. at *15. It also conflicts with *Free Enterprise*, which held that Appointments Clause challenges are "outside the Commission's competence and expertise," 561 U.S. at 491, *see Hill v. SEC*, No. 15-12831, 2016 WL 3361478, at *12 n. 8 (11th Cir. June 17, 2016) ("the SEC conceded that *Free Enterprise Fund* compels the conclusion that the respondents' Appointments Clause challenge is outside the Commission's expertise."), and, by implication, with *Thunder Basin*, 510 U.S. at 214 ("Petitioner's statutory claims at root require interpretation of the parties' rights and duties under § 813(f) and 30 CFR pt. 40, and as such arise under the Mine Act and fall squarely within the Commission's expertise.").

The Panel supports its analysis based on the following paragraph from *Elgin*:

> Relatedly, petitioners argue that their constitutional claims are not the sort that Congress intended to channel through the MSPB because they are outside the MSPB's expertise. But petitioners overlook the many **threshold** questions that may accompany a constitutional claim and to which the MSPB can apply its expertise. Of particular relevance here, preliminary questions unique to the employment context may obviate the need to address the constitutional challenge. For example, petitioner Henry Tucker asserts that his resignation amounted to a constructive discharge. That issue falls squarely within the MSPB's expertise, and its resolution against Tucker would avoid the need to reach his constitutional claims. In addition, the

-13-

challenged statute may be one that the MSPB regularly construes, and its statutory interpretation could alleviate constitutional concerns.  Or, an employee's appeal may involve other statutory or constitutional claims that the MSPB routinely considers, in addition to a constitutional challenge to a federal statute.  The MSPB's resolution of those claims in the employee's favor might fully dispose of the case. Thus, because the MSPB's expertise can otherwise be "brought to bear" on employee appeals that challenge the constitutionality of a statute, we see no reason to conclude that Congress intended to exempt such claims from exclusive review before the MSPB and the Federal Circuit.

*Elgin*, 132 S. Ct. at 2140 (emphasis added).  In holding that the expertise factor will weigh against jurisdiction as long as there is any question – threshold or otherwise – to which the SEC can apply its expertise, the Panel reads the word "threshold" out of the above-quoted paragraph.[8]  As explained by Judge Droney, the above-cited paragraph, including the phrase "other statutory or constitutional claims," discusses examples of "threshold questions" that, unlike the Appointments Clause claim, could benefit from the agency's expertise. *See Tilton*, at *15 n. 3. There is no threshold issue here that could benefit from or pretermit the constitutional question presented by Duka – *i.e.*, whether the very forum to which the Administrative Proceeding was assigned is constitutionally defective.

---

[8]     The Panel's reading of *Elgin* also renders the Panel's decision internally inconsistent. Although the Panel states at the outset of the opinion that "*[g]enerally* . . . persons responding to SEC enforcement actions are precluded from initiating lawsuits in federal courts as a means to defend against them," *Tilton*, at *3 (emphasis added), the reasoning in the opinion that follows forecloses district court jurisdiction entirely to "persons responding to SEC enforcement actions."

-14-

# CONCLUSION

Jurisdiction in the district court to hear Appointments Clause claims will serve as a much-needed check on the SEC's power. *See id.* at *17 n. 5 (dissent). At the same time, permitting review of Duka's Appointments Clause challenge will not "undermine," *see Elgin*, 132 S. Ct. at 2135, "thwart," *Thunder Basin*, 510 U.S. at 212, or "interfere[] with," *Standard Oil*, 449 U.S. at 24, the statutory scheme established by Congress,[9] a consequence that the Supreme Court identified in each of the cases cited by the Panel where it found district court jurisdiction to be implicitly precluded.  Accordingly, for the reasons set forth above and in the Patriarch Petition, Barbara Duka respectfully requests that this Court order reconsideration or reconsideration *en banc*.

Dated:      July 27, 2016
            New York, New York

                                    Respectfully submitted,

                                    PETRILLO KLEIN & BOXER LLP

                                    By: */s/  Guy Petrillo*

                                    Guy Petrillo
                                    (gpetrillo@pkbllp.com)

                                    Daniel Goldman

---

[9]      Duka also urged on appeal that this Court exercise original jurisdiction to review the merits of the Appointments Clause claim under the collateral order doctrine.  Duka Br. at 34-36. We read the June 13 Order to have silently rejected this argument.  Duka respectfully requests reconsideration of this determination as well.

-15-

(dgoldman@pkbllp.com)

Leonid Sandlar
(lsandlar@pkbllp.com)

655 Third Avenue, 22nd Floor
New York, New York 10017
Telephone: (212) 370-0330
Facsimile: (212) 370-0391

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE
## AND TYPE STYLE REQUIREMENTS

This motion complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of

Appellate Procedure 32(a)(6) because this motion has been prepared in a

proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New

Roman font.

PETRILLO KLEIN & BOXER LLP


By: */s/  Guy Petrillo*

Guy Petrillo
(gpetrillo@pkbllp.com)

655 Third Avenue, 22nd Floor
New York, New York 10017
Telephone: (212) 370-0330
Facsimile: (212) 370-0391

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July, 2016, I caused the foregoing

Motion for Reconsideration or Reconsideration En Banc to be filed with the Clerk

of the Court for the U.S. Court of Appeals for the Second Circuit via the Court's

CM/ECF system.  I further certify that service was accomplished on all parties via

electronic filing or first class mail.

PETRILLO KLEIN & BOXER LLP


By: */s/  Guy Petrillo*

Guy Petrillo
(gpetrillo@pkbllp.com)

655 Third Avenue, 22nd Floor
New York, New York 10017
Telephone: (212) 370-0330
Facsimile: (212) 370-0391

# ADDENDUM

# United States Court of Appeals

FOR THE
SECOND CIRCUIT

————————

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of June, two thousand sixteen.

Present:        Rosemary S. Pooler,
                Richard C. Wesley,
                            *Circuit Judges*.
                Janet C. Hall, [1]
                            *Chief District Judge*.

_____

Barbara Duka,

                        *Plaintiff - Appellee*,

                v.                                      No. 15-2732

U.S. Securities and Exchange Commission,

                        *Defendant - Appellant*.

_____

The Securities and Exchange Commission appeals from the August 12, 2015 order of the United States District Court for the Southern District of New York (Berman, *J.*), granting Barbara Duka's motion for a preliminary injunction. IT IS HEREBY ORDERED that the order of the district court is VACATED, and the case is REMANDED for further proceedings consistent with *Tilton v. SEC*, __ F.3d __, 2016 WL 3084795 (2d Cir. June 1, 2016).

                        FOR THE COURT:
                        Catherine O'Hagan Wolfe, Clerk



_____

[1] The Honorable Janet C. Hall, of the United States District Court for the District of Connecticut, sitting by designation.